1 | TOWNSEND AND TOWNSEND AND CREW LLP
2 | Mark T. Jansen (State Bar No. 114896)
Anthony Malutta (State Bar No. 193587)
Two Embarcadero Center, 8th Floor
3 | San Francisco, California  94111
Telephone: 415.576.0200
4 | Facsimile: 415.576.0300

5 | Attorneys for Defendants
AMAZON, INC., A9.COM, INC. AND
6 | ALEXA INTERNET, INC.

7

8

9 | UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA
10
WESTERN DIVISION
11

12 | PERFECT 10, INC., a California corporation,

13 |                              Plaintiff,

14 |             v.

15 | AMAZON, INC., a corporation;
A9.COM, INC., a corporation; ALEXA
16 | INTERNET, INC., a corporation, and
DOES 2 through 10, inclusive
17

18 |                              Defendants.

19

20

21

22 | PERFECT 10, INC., a California corporation,

23 |                              Plaintiff,

24 |             v.

25 | GOOGLE, INC., a corporation, and
DOES 1-100, inclusive,
26 |                              Defendants.

27

28

Case No.  CV05-4753 AHM (SHx)
Consolidated with Case No. CV04-9484 AHM (SHx)

**NOTICE OF MOTION AND MOTION OF DEFENDANT A9.COM, INC. FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; [PROPOSED] STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW; [PROPOSED] ORDER GRANTING DEFENDANT A9.COM, INC.'S MOTION FOR SUMMARY JUDGMENT**

**DECLARATIONS OF MATTHEW AMACKER AND MARK T. JANSEN IN SUPPORT THEREOF FILED CONCURRENTLY**

Date:  October 6, 2008
Time:  10:00 a.m.
The Hon. A. Howard Matz
Courtroom 14

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................... 1

II.   SUMMARY OF UNDISPUTED MATERIAL FACTS
      REQUIRING ENTRY OF JUDGMENT IN A9.COM'S FAVOR ................ 2

      A.    The A9.com Internet Research Functionality ............................... 2

      B.    Perfect 10's Claims Against A9.com .......................................... 4

III.  ARGUMENT ............................................................................................ 5

      A.    Applicable Standards For Grant Of Summary Judgment ............... 5

      B.    A9.com Is Entitled To Judgment On Plaintiff's Claim Of
            Direct Copyright Infringement Because It Has Not Copied,
            Distributed Or Displayed Any Of Plaintiff's Copyrighted
            Works .................................................................................... 6

      C.    A9.com Cannot Be Liable For Vicarious Copyright
            Infringement As A Matter Of Law ............................................ 8

      D.    A9.com Is Immune From Copyright Infringement Liability
            Under Section 512(a) Of The DMCA ...................................... 10

            1.    The Section 512(a) Safe Harbor ................................... 10

            2.    Section 512(a) Provides A "Broad Grant Of
                  Immunity" .................................................................. 12

            3.    The A9.com Search Functionality Is Immune From
                  Copyright Liability Under Section 512(a) ..................... 13

                  a)    The A9.com Search Functionality Meets The
                        Specific Requirements Under Sections 512(i)
                        and 512(k) ......................................................... 13

                  b)    A9.com Meets The Five Requirements For
                        Section 512(a) Immunity .................................... 14

IV.   CONCLUSION ....................................................................................... 15

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

3

**Cases**

4

*Anderson v. Liberty Lobby, Inc.*
   477 U.S. 242 (1986) ..................................................... 6

5

*Cusano v. Klein*
   280 F. Supp. 2d 1035 (C.D. Cal. 2003) ............................ 6

6

7

*Ellison v. Robertson*
   357 F.3d 1072 (9th Cir. 2004) ................................. 8, 10, 11

8

*Fonovisa, Inc. v. Cherry Auction, Inc.*
   76 F.3d 259 (9th Cir. 1996) ............................................ 9

9

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*
   545 U.S. 913 (2005) ..................................................... 8

10

11

*Miller v. Glenn Miller Productions*
   318 F. Supp. 2d 923 (C.D. Cal. 2004) ............................ 6

12

*Online Policy Group v. Diebold, Inc.*
   337 F. Supp. 2d 1195 (N.D. Cal. 2004)............................ 12

13

14

*Perfect 10, Inc.  v. Visa Int'l Serv. Ass'n*
   494 F.3d 788 (9th Cir. 2007), *cert denied*, 128 S.Ct. 2871 (2008) ............ 5, 9

15

*Perfect 10, Inc. v. Amazon.com, Inc.*
   508 F.3d 1146 (9th Cir. 2007) ....................................... passim

16

17

*Perfect 10, Inc. v. CCBill*
   488 F.3d 1102 (9th Cir. 2007) *cert. denied*, 128 S.Ct. 709 (2007) .............. passim

18

*Perfect 10, Inc. v. Google, Inc.*
   416 F. Supp. 2d 828 (C.D. Cal. 2006), *aff'd in part, rev'd in part and remanded on other grounds*, 508 F.3d 1146 (9th Cir. 2007) ........................ passim

19

20

**Statutes**

21

22

17 U.S.C. § 512(a)......................................................... 11, 16

23

17 U.S.C. § 512(a) (1)-(5)................................................ 11

24

17 U.S.C. § 512(i) .......................................................... 11, 12

25

17 U.S.C. § 512(k)(1)(A) ................................................ 11

26

17 U.S.C. §§ 512(a)-(d) .................................................. 10

27

28

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on October 6, 2008, at 10:00 a.m. or as soon thereafter as the Court may hear this motion, in the courtroom of Judge A. Howard Matz, Courtroom 14, located at Spring Street Courthouse, 312 N. Spring Street, Los Angeles, CA 90012, Defendant A9.com, Inc. ("A9.com") shall and hereby does move this Court for an order granting summary judgment for Defendant A9.com, Inc. and against Plaintiff Perfect 10, Inc. on all of Plaintiff's claims, or alternatively for partial summary judgment as to Perfect 10's claims for direct and vicarious copyright liability and that A9.com is immune from copyright liability since it qualifies for the "safe harbor" in 17 U.S.C. § 512(a).

This motion is based on this Notice of Motion, the accompanying memorandum of points and authorities, the Declarations of Matthew Amacker and Mark T. Jansen, [Proposed] Statement of Uncontroverted Facts and Conclusions of Law, and [Proposed] Order in support of this motion, and on all additional evidence and oral argument to be presented at the hearing of this motion.

Counsel for the parties have met and conferred in compliance with Local Rule 7-3 before bringing this motion.

DATED:  August 25, 2008                    Respectfully submitted,

                                           TOWNSEND AND TOWNSEND AND CREW LLP


                                           By: _____/s/ Mark T. Jansen_____
                                               MARK T. JANSEN
                                               ANTHONY MALUTTA

                                               Attorneys for Defendants
                                               AMAZON, INC., A9.COM, INC. AND
                                               ALEXA INTERNET, INC.

## I.      INTRODUCTION

This motion concerns the Internet research functionality offered by defendant A9.com, Inc. ("A9.com") beginning in Fall 2004.  A9.com's affiliate, defendant Amazon.com, Inc. ("Amazon.com"), also briefly offered A9.com functionality on the Amazon.com website, beginning in Fall 2004, but no longer does so.

When this Court examined the A9.com functionality and denied Plaintiff Perfect 10, Inc.'s ("Perfect 10") motion for a preliminary injunction against Amazon.com and A9.com (jointly "Amazon"), it recognized that a number of key undisputed facts established that Amazon could not be held liable for direct or vicarious copyright infringement.  Specifically, the Court found it undisputed that "Amazon does not create, store, or serve either full-size or thumbnail copies of P10's copyrighted images." (2/21/06 Order, Docket No. 68.)  Amazon.com and A9.com merely passed on to users in-line links, supplied to it automatically by Google, in response to particular user Internet search queries.  Specifically, A9.com submitted "search queries received from Users to Google without editing" and Google sent its search "results back to A9 in XML format."  *Id.*, n. 2.  A9.com automatically forwarded the image server results directly to the user without any additions or deletions, and without ever transmitting either a "thumbnail" or "full-size" image.  A9.com never made or stored a copy of any of Perfect 10's images.  A9.com never transmitted, distributed or displayed any such image, nor did A9.com ever have any control over or involvement with any non-party websites that might display Perfect 10's images.  *Id.*  Significantly, although A9.com no longer uses Google to supply its web search services, the undisputed evidence establishes that the facts this Court found in 2006 with regard to A9.com's Internet research functionality remain true today.

The Ninth Circuit's affirmance of this Court's denial of preliminary injunction against Amazon, in *Perfect 10, Inc. v. Amazon.com, Inc.,* 508 F.3d 1146 (9th Cir. 2007) ("*Amazon.com*"); the Ninth Circuit's decision in another Perfect 10 case, *Perfect 10, Inc. v. CCBill*, 488 F.3d 1102 (9th Cir. 2007) *cert. denied*, 128 S.Ct. 709 (2007) ; and

other decisions require that judgment be entered for A9.com on all of the remaining

claims brought against it.[1]  More specifically, in *Amazon.com*, the Ninth Circuit

affirmed this Court's "server test," under which A9.com may not be liable for direct

copyright infringement.  The Ninth Circuit also affirmed that A9.com may not be liable

for vicarious copyright infringement because it does not enjoy the requisite right to

control any  unrelated web sites that Plaintiff alleges are infringing its copyrights.

As a separate basis for granting summary judgment, the undisputed material facts

establish that the Digital Millennium Copyright Act ("DMCA") immunizes A9.com

from any possible copyright liability.  A9.com's data transmissions challenged by

Plaintiff qualify as "transitory digital network communications" under Section 512(a)

of the DMCA, meaning that A9.com may not be punished for any copyright

infringements that Internet users might commit in using its functionality.

## II.   SUMMARY OF UNDISPUTED MATERIAL FACTS REQUIRING ENTRY OF JUDGMENT IN A9.COM'S FAVOR

### A.   The A9.com Internet Research Functionality

Amazon.com opened its virtual doors on the Internet in July 1995, as an online

retailer of books and other goods; today it offers the biggest selection of consumer

products in the world.  Amazon subsidiary A9.com operates a site at www.a9.com that

enables Internet research and navigation.  Declaration of Jonathan Leblang ("Leblang

Dec.") ¶ 3, attached as Exhibit 1 to the Declaration of Mark T. Jansen filed herewith.

In order to offer its users the ability to conduct Internet research from one

convenient location, Amazon announced the launch of its A9.com web research

services in September 2004.  Leblang Dec. ¶ 3.  Prior to March 2006, A9.com's web

---

[1]  The Court dismissed Plaintiff's Fourth Claim for Relief in Plaintiff's original
Complaint, for "Circumvention of Copyright Protection Systems," with prejudice on
July 23, 2007 (Docket No. 90). Plaintiff has since been granted leave to file an
Amended Complaint, which contains just one cause of action, lumping together claims
for direct, vicarious and contributory infringement.

NOTICE OF MOTION AND MOTION OF DEFENDANT A9.COM FOR SUMMARY JUDGMENT
Case No. CV05-4753 AHM (SHx) Consolidated with Case No. CV04-9484 AHM (SHx)

2

1   and web image research functionality was provided entirely by Google.  *Id.* ¶¶ 16-17.

2   A9.com did not itself conduct Internet "crawling" or website "indexing" necessary for

3   creation of a comprehensive database of Internet content, so A9.com is not and never

4   was a true "search engine" like Google, Yahoo or Ask.com, for example.  Instead,

5   A9.com submitted the search queries received from its users to Google without editing;

6   Google processed the search terms in Google's Internet data base index (created and

7   updated by Google, and stored on Google servers); Google provided the individual web

8   search results set according to Google's proprietary logic and algorithms, and Google

9   sent those results back to A9.com in XML format (*i.e.*, code language in text format).

10  Leblang Dec. ¶ 16.  Then, A9.com automatically forwarded the resulting set of URLs

11  (uniform resource locators, also commonly known as "links") it received from Google

12  directly to the user.  *Id.* ¶ 17.

13        Image search results were handled the same way.  A9.com automatically

14  transmitted to users the exact URL links that Google determined were responsive to the

15  user's query and sent to A9.com for automatic forwarding to the user.  *Id.* ¶ 19.  No

16  copy of the thumbnail images was made or stored by A9.com.  *Id.* ¶ 20.  Indeed,

17  A9.com never even transmitted a copy of the images; only URLs referencing Google's

18  image server were provided (if relevant to the user's search request).  *Id.* ¶ 24.

19        Although A9.com no longer uses Google to provide web search services, its

20  Internet research functionality operates in basically the same way today.  Declaration of

21  Matthew Amacker ("Amacker Dec.") ¶¶ 2-3.  Under A9.com's current search

22  functionality, a user inputs a research term query on A9.com's graphical user interface

23  ("GUI").  A9.com submits the query to whatever search engine(s) the user selects

24  without any editing.  The search engine then processes the search term on its servers,

25  using its own logic and related algorithms, and sends the search results back to A9.com

26  in XML format.  The search results are generated exclusively by the search engines and

27  A9.com automatically forwards them to the requesting user.  *Id.* ¶ 4.

28        A9.com does not select any of the material that is returned to users in response to

their queries.  A9.com's system employs an automatic technical process to convert the XML to HTML format and transmits the search results to the user that initiated the search query.  This conversion process takes merely a fraction of a second.  It does not involve any logic and does not modify the substance of the search results in any way.  The only purpose of the process is to render the received XML data into a format that will be readable by the user's browser.  Amacker Dec. ¶ 5.  Although the search query and results pass through A9.com's systems, A9.com retains the search results only long enough to translate them and pass them on to the user.  A9.com has no way of knowing what links a user chooses to click on, if any.  A9.com in the past did not, and currently does not, delete from, add to, modify, filter or edit search results.  *Id.* ¶ 6; Leblang Dec. ¶ 21.  The results of the web search are transmitted only to the user who initiated the search, and not to anyone else.  Amacker Dec. ¶ 7.

In the case of an image search, the image itself never passes through A9.com's systems.  The only information that is transmitted from the user to the search engine and back is text and URLs.  If a user chooses to click on a URL, the user's browser will fetch and render the image directly from a third party's server.  Again, A9.com is not involved in that process in any way, and does not store any information about it.  A9.com does not, and never did, store any images (either thumbnail or actual size) on its servers.  *Id.* ¶ 8.

A9.com has a copyright policy that it publishes on its website as part of its Conditions of Use.  The policy provides that "A9.com and its affiliates respect the intellectual property of others."  It instructs copyright holders that they may notify A9.com of any perceived copyright infringements by sending an infringement notice to A9.com's copyright agent, either electronically or by mail to the listed Palo Alto, California address.  *Id.* at ¶ 11 & Ex. A; Leblang Dec. ¶ 4.

### B.   Perfect 10's Claims Against A9.com

According to its own allegations, Perfect 10 is an "adult entertainment" business.  Along with publishing a magazine and operating a website, it claims to own copyright

registrations for certain photographic images of women.  Unidentified third parties --
entirely unrelated to A9.com -- allegedly copy and post these images on their websites.[2]

Perfect 10's original Complaint against Amazon, filed June 29, 2005, claimed
that A9.com should be liable for direct, contributory or vicarious copyright
infringement based on A9.com's operation described above, *i.e.*, the fact that links to
the infringing websites and web images from the websites would appear in response to
highly specialized search queries that might hypothetically be submitted by one or more
hypothetical A9.com users.[3]

On May 8, 2008, Perfect 10 filed an Amended Complaint for copyright
infringement adding Amazon.com affiliate Alexa Internet ("Alexa").  Perfect 10 again
alleged that A9.com is liable for direct, vicarious, and contributory infringement by
virtue of displaying and distributing thumbnails and full-size versions of copyrighted
images; finding third party websites that contain copyrighted images; and linking to
third party websites that contain Perfect 10 passwords.  Amended Complaint ¶¶ 25-35.

## III.   ARGUMENT

### A.    Applicable Standards For Grant Of Summary Judgment

Federal Rule of Civil Procedure 56 provides for summary judgment when "the
pleadings, depositions, answers to interrogatories, and admissions on file, together with
the affidavits, if any, show that there is no genuine issue as to any material fact and that

---

[2]  Instead of going after the infringing websites, or blocking their ability to access and
copy its images, Perfect 10 has repeatedly sued large providers of "content-neutral"
services for such infringements.  *See, e.g., Perfect 10, Inc.  v. Visa Int'l Serv. Ass'n*, 494
F.3d 788 (9th Cir. 2007), *cert denied*, 128 S.Ct. 2871 (2008) (affirming grant of
defendant financial service providers' motion to dismiss); *Perfect 10, Inc. v. CCBill,
LLP*, 488 F.3d 1102 (9th Cir. 2007), *cert. denied*, 128 S.Ct. 709 (2007) (billing
intermediaries immune under DMCA); *see also* Notice of Related Cases (filed
8/22/2005).

[3]  For purposes of this motion only, A9.com does not dispute that Perfect 10 owns
copyrighted images, some of which may have been unlawfully copied by website
operators totally unrelated to A9.com.

1    the moving party is entitled to judgment as a matter of law."  As an initial matter, the

2    moving party must demonstrate the absence of a genuine issue of material fact for trial.

3    *Miller v. Glenn Miller Productions*, 318 F. Supp. 2d 923, 932 (C.D. Cal. 2004) (citing

4    *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986)).  When the moving party

5    meets this burden, the opposing party must provide "specific facts" showing that there

6    is a genuine issue for trial.  *Cusano v. Klein*, 280 F. Supp. 2d 1035, 1038 (C.D. Cal.

7    2003).  If "the record taken as a whole could not lead a rational trier of fact to find for

8    the nonmoving party," there is no genuine issue of material fact.  *Id*. (citation omitted).

9    
   **B.    A9.com Is Entitled To Judgment On Plaintiff's Claim Of Direct
   Copyright Infringement Because It Has Not Copied, Distributed Or
10   Displayed Any Of Plaintiff's Copyrighted Works.**

11       In denying Perfect 10's motions for a preliminary injunction against Google (and

12   against Amazon with respect to the A9.com functionality described in the Leblang and

13   Amacker declarations), this Court declined to adopt the "incorporation test" for direct

14   infringement, instead adopting the "server test" under which "the website on which

15   content is stored and by which it is served directly to a user, not the website that in-line

16   links to it, is the website that 'displays' the content."  *Perfect 10 v. Google, Inc.*

17   ("*Google*"), 416 F. Supp. 2d 828, 839-43 (C.D. Cal. 2006), *aff'd in part, rev'd in part*

18   *and remanded on other grounds*, 508 F.3d 1146 (9th Cir. 2007).  In accordance with its

19   correct interpretation of the Copyright Act, this Court concluded the next day, when it

20   ruled on Perfect 10's motion for a preliminary injunction against A9.com and

21   Amazon.com, that because "Amazon does not create, store or serve either full-size or

22   thumbnail copies of P10's copyrighted images, . . . it is not likely that Amazon will be

23   held liable for direct infringement."  (2/21/06 Order.)

24       On appeal, the Ninth Circuit affirmed this Court's enunciation of the "server

25   test," and unequivocally affirmed its determination that A9.com could not be liable for

26   direct copyright infringement because A9.com did not copy, store, display, distribute or

27   serve any of Plaintiff's copyrighted images.  *Amazon.com*, 508 F.3d at 1175-77.  The

28   court, in language that also applies to all of A9.com's challenged activities, made clear

1   that Google could not be directly liable for the copying, display or distribution of actual

2   size photographs that it had *not* stored copies of, merely by providing in-line linking

3   services:

4             Providing these HTML instructions is not equivalent to

5             showing a copy.  First, the HTML instructions are lines of

6             text, not a photographic image.  Second, HTML instructions

7             do not themselves cause infringing images to appear on the

8             user's computer screen.  The HTML merely gives the address

9             of the image to the user's browser.  The browser then interacts

10            with the computer that stores the infringing image. . . . [This

11            interaction] does not constitute direct infringement of the

12            copyright owner's display rights.

13   *Id*. at 1160.  The Ninth Circuit also agreed with this Court's decision that Google could

14   not be deemed to have "distributed" full-size images because Google had not engaged

15   in "an 'actual dissemination' of a copy" (416 F. Supp. 2d at 844), holding that this

16   interpretation was "consistent with the language of the Copyright Act" and correct.  508

17   F.3d at 1162.

18         The operative facts regarding A9.com's search functionality remain the same

19   today as they were at the time of this Court's ruling.  *See* Leblang Dec. ¶¶ 19-20;

20   Amacker Dec. ¶¶ 2-3.  Accordingly, the Ninth Circuit's determination that Amazon

21   could not be liable for direct infringement is directly on point and dispositive of this

22   motion.  In language that again applies equally to A9.com, the court stated:

23            We agree that Perfect 10 has not shown a likelihood that it

24            would prevail on the merits of its claim that Amazon.com

25            directly infringed its images.  Amazon.com communicates to

26            its users only the HTML instructions that direct the users'

27            browsers to Google's computers (for thumbnail images) or to

28            a third party's computer (for full-size infringing images).

1          Therefore, Amazon.com does not display or distribute a copy

2          of the thumbnails or full-size images to its users.

3    *Id.* at 1176.

4        Because A9.com never stored or served any of Plaintiff's copyrighted images,

5    but only communicated HTML instructions to its users, it cannot be liable for direct

6    copyright infringement.  This is a clear rule of law already enunciated by this Court and

7    affirmed by the Ninth Circuit.  Summary adjudication should therefore be granted to

8    A9.com on Plaintiff's claim for direct copyright infringement.

9    **C.**    **A9.com Cannot Be Liable For Vicarious Copyright Infringement As A**

10   **Matter Of Law**

11       A9.com does not, and never did, have the contractual or other right or ability to

12   control the content on any third party websites.  Amacker Dec. ¶ 10.  That undisputed

13   material fact requires that summary judgment be entered on Plaintiff's claim for

14   vicarious copyright liability.  "[T]o succeed in imposing vicarious liability, a plaintiff

15   must establish [1] that the defendant exercises the requisite control over the direct

16   infringer <u>and</u> [2] that the defendant derives a direct financial benefit from the direct

17   infringement."  *Amazon.com,* 508 F.3d at 1173 (citing *Metro-Goldwyn-Mayer Studios,*

18   *Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 n.9 (2005)); *see also Ellison v. Robertson*, 357

19   F.3d 1072, 1076 (9th Cir. 2004); *Google*, 416 F. Supp. 2d at 856-57.

20       It is unnecessary to examine whether or not A9.com ever received the requisite

21   "direct financial benefit," because it clearly does not have or exercise the requisite

22   "right of control."  *See Amazon.com*, 508 F.3d at 1175 & n.15.  As the Ninth Circuit

23   explained in this case:

24         *Grokster* further explains the "control" element of the

25         vicarious liability test as the defendant's "right and ability to

26         supervise the direct infringer."  Thus, under *Grokster*, a

27         defendant exercises control over a direct infringer when he

28

1    has both a legal right to stop or limit the directly infringing

2    conduct, as well as the practical ability to do so.

3 *Amazon.com*, 508 F.3d at 1173 (citation omitted).

4        In *Amazon.com*, the Ninth Circuit contrasted the defendant flea market promoter

5 in *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259 (9th Cir. 1996), whose "broad

6 contacts" with lessee-vendors gave it "the right to stop the vendors from selling

7 counterfeit recordings on its premises."  508 F.3d at 1173.  Here, as this Court

8 recognized and the Ninth Circuit affirmed, even "Google does not exercise control over

9 the environment in which it operates -- i.e., the web," and Google lacks any "substantial

10 input into or authority over the decision [of independent websites] to serve or continue

11 serving infringing content."  416 F. Supp. 2d at 857-58.  This Court correctly

12 determined that the requisite partnership or right of control over unrelated "stolen

13 content" websites on the Internet is even more lacking with respect to Amazon (and

14 A9):  "Amazon's right and ability to control the infringing conduct of third-party

15 websites is substantially weaker than Google's."  2/21/06 Order at 2.  The Ninth Circuit

16 affirmed this finding.  *Amazon.com*, 508 F.3d at 1176.

17        The Ninth Circuit reaffirmed, in its recent *Perfect 10 v. Visa Int'l* decision, 494

18 F.3d 788 (9th Cir. 2007), *cert denied* 128 S Ct. 2871 (2008), that a defendant must have

19 the contractual right to control the conduct of the alleged direct infringing "stolen

20 content" websites before it can be vicariously liable.  Since A9.com does not have any

21 such contractual or other rights of control over third party web sites that are alleged to

22 infringe, it cannot be liable vicariously for their infringing conduct.

23        Because it is undisputed that A9.com lacks both the requisite practical ability and

24 contractual or other legal right to stop or limit the direct infringement of unrelated (and

25 largely unidentified) "pirate" websites, A9.com is entitled to judgment on Plaintiff's

26 claim for vicarious copyright infringement.

27 / / /

28 / / /

1

2

**D.    A9.com Is Immune From Copyright Infringement Liability Under Section 512(a) Of The DMCA**

3

**1.        The Section 512(a) Safe Harbor**

4      "Congress enacted Title II of the DMCA 'to provide greater certainty to service

5   providers concerning their legal exposure for infringements that may occur in the

6   course of their activities.'"  *Amazon.com*, 508 F.3d at 1158 (quoting *Ellison*, 357 F.3d

7   at 1076); S. Rep. No. 105-190, at 20 (1998) (striking a balance between the rights of

8   copyright holders and liability for service providers).  Online service providers that

9   qualify for any one of the four statutory safe harbors contained in the DMCA are

10  immune from copyright liability: "[a] service provider that qualifies for such protection

11  is not liable for monetary relief and may be subject only to the narrow injunctive relief

12  set forth in section 512(j)."  *Id.; see also* 17 U.S.C. §§ 512(a)-(d) (setting forth the four

13  safe harbors); *Ellison,* 357 F.3d at 1076; *CCBill,* 488 F.3d. at 1111.

14      Section 512(a) of the DMCA "provides safe harbor for service providers who act

15  as conduits for infringing content."  *CCBill*, 488 F.3d at 1115.  Specifically, the statute

16  limits copyright infringement liability:

17                  by reason of the [service] provider's transmitting, routing, or

18                  providing connections for, material through a system or

19                  network controller or operated by or for the service provider,

20                  or by reason of the intermediate and transient storage of that

21                  material in the course of such transmitted, routing, or

22                  providing connections

23  if the following conditions are met:

24                  (1)    the transmission of the material was initiated by or at the direction

25                          of a person other than the service provider;

26                  (2)    the transmission, routing, provision of connections, or storage is

27                          carried out through an automatic technical process without selection

28                          of the material by the service provider;

(3)     the service provider does not select the recipients of the material except as an automatic response to the request of another person;

(4)     no copy of the material made by the service provider in the course of such intermediate or transient storage is maintained on the system or network in a manner ordinarily accessible to anyone other than anticipated recipients, and no such copy is maintained on the system or network in a manner ordinarily accessible to such anticipated recipients for a longer period than is reasonably necessary for the transmission, routing, or provision of connections; and

(5)     the material is transmitted through the system or network without modification of its content.

17 U.S.C. § 512(a) (1)-(5).

In order to qualify for Section 512(a) safe harbor protection, the service provider must meet the definition of "an entity offering the transmission, routing, or providing of connections for digital online communications, between or among points specified by a user, of material of the user's choosing, without modification to the content of the material as sent or received."  17 U.S.C. § 512(k)(1)(A).  This definition overlaps with the substantive requirements for safe harbor protection outlined above.  *See Ellison v. Robertson*, 189 F. Supp. 2d 1051, 1068 (C.D. Cal. 2002) *aff'd in part, rev'd in part on other grounds and remanded*, 357 F.3d 1072 (9th Cir. 2004) ("In effect, this definition merely restates a number of the requirements that are already set forth in subsection (a).").

Finally, in order to qualify for any type of safe harbor protection, a provider must meet the threshold requirements set forth in 17 U.S.C. § 512(i).  Specifically, immunity applies only if the service provider

(A)  has adopted and reasonably implemented, and informs subscribers and account holders of the service provider's system or network of, a policy that provides for the

1        termination in appropriate circumstances of subscribers and

2        account holders of the service provider's system or network

3        who are repeat infringers; and

4        (B) accommodates and does not interfere with standard

5        technical measures . . . that are be used by copyright owners

6        to identify or protect copyrighted works.

7  17 U.S.C. § 512(i).

8      There is no "notice and takedown" procedure required for a Section 512(a)

9  passive transmitter. *Online Policy Group v. Diebold, Inc.*, 337 F. Supp. 2d 1195, 1201

10  (N.D. Cal. 2004) ("the 'conduit' safe harbor does not require notice and takedown of

11  any content").  Since service providers such as A9.com do not store information, there

12  is nothing to "take down."

13        **2.**      **Section 512(a) Provides A "Broad Grant Of Immunity"**

14      The Ninth Circuit has described Section 512(a) as "a broad grant of immunity to

15  service providers whose connection with the material is transient."  *CCBill*, 488 F.3d at

16  1116.  The statute is designed to exempt storage and transmissions that are "carried out

17  through an automatic technological process that is indiscriminate – i.e., the provider

18  takes no part in the selection of the particular material transmitted – where the copies

19  are retained no longer than necessary for the purpose of carrying out the transmission."

20  H.R. Rep. 105-551(I) at 24.

21      The Ninth Circuit has explained the need for this safe harbor protection:

22        When an individual clicks on an Internet link, his computer

23        sends a request for the information.  The company receiving

24        that request sends that request on to another computer, which

25        sends it on to another.  After a series of such transmissions,

26        the request arrives at the computer that stores the information.

27        The requested information is then returned . . . .  [E]ach

28        intervening computer makes a short-lived copy of the data. . .

1    . Those intervening computers provide transient connections

2    among users.  The Internet as we know it simply cannot exist

3    if those intervening computers must block indirectly

4    infringing content.  We read § 512(a)'s grant of immunity

5    exactly as it is written:  Service providers are immune for

6    transmitting all digital online communications.

7 *CCBill*, 488 F.3d at 1116.  This is exactly what A9.com does (and what Amazon.com

8 did when it offered A9.com search functionality in 2005).

### 3.    The A9.com Search Functionality Is Immune From Copyright Liability Under Section 512(a)

In providing the Internet research services at issue, A9.com qualifies as a

provider of transitory digital network communications under the DMCA, and is thus

immune from copyright liability under Section 512(a).

### a)    The A9.com Search Functionality Meets The Specific Requirements Under Sections 512(i) and 512(k)

As a threshold matter, A9.com meets the requirements of Section 512(i).  The

undisputed evidence establishes that A9.com has adopted, reasonably implemented, and

informs users of its copyright policy as necessary to qualify it for DMCA protection.

*See* Leblang Dec. ¶ 4, Ex. A; Amacker Dec. ¶ 11, Ex. A.  The evidence also establishes

that A9.com has no subscribers or account holders, and that when it did have

subscribers, its policy provided for their termination as required by Section 512(i).

Amacker Dec. ¶ 13 & Ex. B.

A9.com also meets the prerequisite for eligibility as an immunized service

provider because it "accommodates and does not interfere with standard technical

measures" in operation of its search system.  Leblang Dec. ¶¶ 41, 42, 46, 53; Amacker

Dec. ¶ 14.  Indeed, Plaintiff's owner, Dr. Zada, admitted in his declaration supporting

Plaintiff's earlier unsuccessful motion for preliminary injunction that Amazon and

A9.com in no way interfered with Perfect 10's ability to use the A9.com search system

to search for allegedly infringing images on the Internet at large.  *See* Zada Dec. in Support of Plaintiff's Preliminary Injunction Motion, ¶¶ 20-31 (attached as Exhibit 2 to Jansen Dec.).

A9.com also qualifies as a "service provider" under the applicable definition in Section 512(k), *i.e.*, A9.com is "an entity offering the transmission, routing, or providing of connections for digital online communications, between or among points specified by a user, of material of the user's choosing, without modification to the content of the material as sent or received."  *See* Leblang Dec. ¶ 26; Amacker Dec. ¶¶ 4-8.

> **b)     A9.com Meets The Five Requirements For Section 512(a) Immunity**

Because it is undisputed that A9.com's functional operation meets each of the five statutory requirements, A9.com is immune under Section 512(a) based on its transitory digital communication of search results forwarded to it by search engines in response to a user's Internet search query.

<u>First</u>:  the transmission of material (the search query and search results) is initiated by parties other than A9.com: a user formulates and sends the search query, and the selected search engines formulate and transmit the search results back to A9.com.  Leblang Dec. ¶¶ 15-16; Amacker Dec. ¶ 4.

<u>Second</u>:  this is an automatic technical process that does not involve selection of material by A9.com.  Leblang Dec. ¶ 17; Amacker Dec. ¶ 5.

<u>Third</u>:  A9.com does not select the recipients of the material; it only renders an automatic response to the request of another person.  That is, a user submits a query, A9.com automatically forwards the query to the search engine, the search engine executes the search and forwards the search results to A9.com, and A9.com *automatically* forwards the results to the user and no one else.  Leblang Dec. ¶ 22; Amacker Dec. ¶ 4-7.

<u>Fourth</u>:  no copy of the search results, including images, is made or stored by A9.com.  Leblang Dec. ¶ 21; Amacker Dec. ¶¶ 6, 8.

<u>Fifth</u>:  A9.com simply converts and forwards the search results, without modification, to the user.  The search results are not modified by A9.com in any way.  Leblang Dec. ¶ 21; Amacker Dec. ¶¶ 5-6.

The Ninth Circuit's decision in *CCBill* is directly on point with respect to the Section 512(a) safe harbor defense asserted by A9.com on this motion.  Perfect 10 has argued previously in this case that the challenged A9.com functionality cannot qualify for Section 512(a) immunity because A9.com did not itself transmit the infringing material, but only relayed to users HTTP code that allowed the users' web browser software to "in-line link" to infringing images on unrelated websites.  *See* Plaintiff's Reply Br. on Appeal at 22-25 (copy attached as Exhibit 3 to Jansen Dec.).  While the Ninth Circuit did not address this particular argument in this case, it squarely rejected this exact argument in *CCBill.*  The court there explained:

> There is no requirement in [Section 512(a)] that the communications must themselves be infringing, and *we see no reason to import such a requirement.*  It would be perverse to hold a service provider immune for transmitting information that was infringing on its face, but find it contributorily liable for transmitting information that did not infringe.

488 F.3d at 1116 (emphasis added).

## IV.   CONCLUSION

Based on the undisputed evidence, and on prior holdings of this Court and the Ninth Circuit, A9.com cannot be liable for either direct or vicarious copyright

///

///

///

1  infringement.  Moreover, this Court should enter judgment as to all of Plaintiff's

2  copyright infringement claims against A9.com under 17 U.S.C. § 512(a).

3

4

5  DATED:  August 25, 2008            Respectfully submitted,

6                                     TOWNSEND AND TOWNSEND AND CREW LLP

7

8                                     By:_____/s/ Mark T. Jansen_____
                                           Mark T. Jansen
9                                          Anthony Malutta

10                                         Attorneys for Defendants
                                           AMAZON, INC., A9.COM, INC. and
11                                         ALEXA INTERNET, INC.

12  61446451 v1

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF MOTION AND MOTION OF DEFENDANT A9.COM FOR SUMMARY JUDGMENT
Case No. CV05-4753 AHM (SHx) Consolidated with Case No. CV04-9484 AHM (SHx)

16