1   JEFFREY N. MAUSNER (State Bar No. 122385)
2   Law Offices of Jeffrey N. Mausner
    Warner Center Towers, Suite 910
3   21800 Oxnard Street
4   Woodland Hills, California 91367-3640
    Telephone: (310) 617-8100, (818) 992-7500
5   Facsimile: (818) 716-2773

6   Attorneys for Plaintiff Perfect 10, Inc.

7

8                   UNITED STATES DISTRICT COURT

9                  CENTRAL DISTRICT OF CALIFORNIA

10

11  PERFECT 10, INC., a California        Case No.: 05-4753 AHM (SHx)
    corporation,                          Consolidated with Case No:
                                          04-9484 AHM (SHx)
12
              Plaintiff,                  **DECLARATION OF SEAN
13                                        CHUMURA IN SUPPORT OF
         v.                               PERFECT 10'S OPPOSITION TO
14                                        A9.COM'S MOTION FOR
                                          SUMMARY JUDGMENT**
15  AMAZON.COM, INC., a
    corporation; A9.COM, INC., a          [PERFECT 10'S MEMORANDUM OF
16  corporation; ALEXA INTERNET,          POINTS AND AUTHORITIES IN
    INC., a corporation; and DOES 2       OPPOSITION TO A9.COM'S MOTION
17  through 10, inclusive,                FOR SUMMARY JUDGMENT;
                                          DECLARATIONS OF DR. NORMAN
18            Defendants.                 ZADA AND JEFFREY N. MAUSNER
                                          IN SUPPORT THEREOF; STATEMENT
19                                        OF GENUINE ISSUES, FILED
20                                        CONCURRENTLY HEREWITH]

21  AND CONSOLIDATED CASE                 Date:
                                          Time: 10:00 a.m.
22                                        Place: Courtroom 14, Courtroom of the
                                                 Honorable A. Howard Matz
23
                                          Discovery Cut-Off Date:   None Set
24                                        Pretrial Conference Date:  None Set
                                          Trial Date:   None Set
25

26

27

28

I, Sean Chumura, declare as follows:

1.      I am a professional programmer with over 15 years of experience in Computer Security and Computer Forensics.  I was a student and protégé of Michael R. Anderson, a pioneer in the Science of Computer Forensics.  I have testified as an expert in court proceedings in the field of Computer Forensics.  I have an issued patent in which I am a co-inventor, in the field of computer security.   I have worked with the federal, state, and local governments, as well as foreign governments and private industry, in the field of computer security and computer forensics.  I have been certified by NTI, one of the most knowledgeable and respected firms for forensic computer science, for governmental and private sector computer forensics.  I was admitted into the prestigious Washington, D.C. Law Enforcement Association HTCC (High Tech Crime Consortium group) by confirmation from the FBI, and I am a member of numerous task forces and associations.  The following are some of the entities I have done work for over the past three years:  Baseline Control, Biche, City of Beverly Hills, Computer Sciences Corporation, D.I.S.A. (Defense Information Systems Agency), D.H.S. (Department of Homeland Security), F.B.I. (Federal Bureau of Investigations), JFCOMM (Joint Forces Command), LGB Associates Inc., Lockheed Martin, NOW Solutions, Oasis Network LLC, Northrup Grummen, Perfect 10, Inc., Sun Microsystems, Transaction Solutions, VCSY (Vertical Computer Systems), Westinghouse, as well as other government agencies.  For some of the projects that I have worked on, I have had a Top Secret security clearance.

2.      I have consulted for the FBI in the areas of cyberterrorism, forensic computer investigation, and white collar crime.  I have extensive experience writing computer programs, including programs to protect computers from viruses, denial of service attacks, and other malicious acts.  I have also written programs to investigate piracy, to detect financial fraud, and to allow computer networks to identify computers that are no longer functioning properly due to

-1-
Declaration of Sean Chumura in Support of Perfect 10's Opposition to A9.com's Motion for Summary Judgment

software issues and correct those problems in an automated fashion. I also co-founded the first private cyber warfare/terrorism defense center and the technology to identify attacks against infrastructure in near real-time.

3.      I have carefully reviewed statements made by A9.com in its Defendant A9.com's [Proposed] Statement of Uncontroverted Facts and Conclusions of Law ("[Proposed] Statement").  I have also carefully examined the ruling by the Ninth Circuit Court of Appeals in this case, as well as briefs submitted by Google, by Amazon.com, and declarations by Matthew Amacker and Jonathan Leblang in support of A9.com, and a declaration submitted by John Levine in support of Google.  All of the matters stated herein are of my own personal knowledge, except where otherwise stated, and if called as a witness, I could and would testify competently thereto.

4.      In paragraph 4 of the [Proposed] Statement, A9 says: "The search engine … sends the search results back to A9.com in XML format." That means that A9 has to convert the search results into HTML format, as A9 concedes it does in paragraph 7 of the [Proposed] Statement.  That shows that A9 controls what is displayed as its search results, and it can further modify those results.  A9 can determine the output, since it has control over the data to the extent it can convert it to HTML format.  A9 has the capability to remove search results, including links to infringing websites, before sending the results to its users.

5.      In paragraph 7 of the [Proposed] Statement, A9 says:  "A9.com employs an automatic technical process to convert the XML data to HTML format."  While that is likely true, someone wrote the computer code to carry out this function.  A9 can add computer code to this process to modify the search results further, for example, to block infringing search results.

6.      In paragraph 10 of the [Proposed] Statement, A9 says: "A9.com does not delete from, add to, modify, filter or edit search results."  I do not

Declaration of Sean Chumura in Support of Perfect 10's Opposition to A9.com's Motion for Summary Judgment

believe that is correct, since there is much more information available to A9 in a search query and search results, but the users only see what A9 wants them to see.  For example, A9 appears to delete, add to, and otherwise modify text provided by the underlying search provider, to meet A9's formatting requirements.  In some cases A9.com shows less text in its search results than its underlying search result provider.  In some cases A9 shows more text than its underlying search provider.  Furthermore, it appears that A9 adds completely new information to search results that it receives from other search engines, such as user search history (when the last time was that the user visited that website from the A9 search engine).  A9.com's results often appear in a different order, the fonts and colors are different, and the portions of snippets of text from the underlying website are different, when compared with the search results of A9's provider.  Although I cannot say this with certainty, it appears that in 2005 and possibly in 2006, A9 modified the order of its search results based on the search history of the user on A9's search engine.

7.     A9's paragraph 12 is misleading.  A9 claims that it only transmits text and receives text for image searches.  However, A9 could block an image from appearing in its image search results.  One way for A9 to do this would be to take  the URL information it receives from its provider in xml format, and compare that to URLs that are to be blocked, maintained in text form in a database.  That would block an infringing image from appearing in A9's image search results.

8.     Mr. Amacker states in his declaration (paragraph 6), and A9 states in its Motion (page 4 lines 8-9), that "A9.com has no way of knowing what links a user chooses to click on, if any."  However, A9 states in its Privacy Policy that "Examples of the information we collect and analyze include … the full Uniform Resource Locators (URL) clickstream to, through, and from our Web site, including date and time; cookie number; and pages you viewed or searched for."

Declaration of Sean Chumura in Support of Perfect 10's Opposition to
A9.com's Motion for Summary Judgment

(See Exhibit 3 in Dr. Zada's declaration.)  Furthermore, A9 would know if a user clicked on a sponsored link, since A9 would receive payment for such a click.  It is also likely that A9 would know what links a user clicked on, if that user had installed an A9.com toolbar on his computer.

9.     A9 states in its brief:  "Since service providers such as A9.com do not store information, there is nothing to 'take down.'"  That is not correct.  A9 can block access to infringing websites that are contained in the search results that it provides to its users, and which A9 provides links to.  A9 could develop a process that would block access to infringing websites that copyright owners complain about.  A9 can also stop providers of infringing material from incorporating that material in A9's search results.

10.     A9 has control over the search results it provides to its users and over the links from its website.  A9 controls other attributes of its website that can damage copyright holders, such as its "See full-size image" link, its email link, and its links to infringing sponsored advertisers, as well as any link to an infringing search result.  If it wanted to, A9 could certainly block infringing search results that it receives notice of from copyright owners.

11.     From this point forward, my statements will apply to computer programming in Hypertext Markup Language, also known as HTML.  From my reading of the declarations and briefs filed by defendants in this case, I see that defendants tried to confuse the court by stating that they do not transmit images.  For example, Jonathan Leblang, in paragraph 15 of his declaration in support of A9, dated August 22, 2005, stated "Accordingly, the A9 Website only forwards URL references to web images to the User, not any image." Nobody transmits images.  Displays are performed by sequences of HTML instructions that tell the users' browser where to find the image and to display it on the user's screen.  The HTML instructions given by A9 were the same types of instructions as those employed by other webmasters to display images.  Those instructions are all

Declaration of Sean Chumura in Support of Perfect 10's Opposition to A9.com's Motion for Summary Judgment

essentially of the form "display X."  When X is a URL which determines the location of the image, the instructions are the same, independent of that location.

12.     Mr. Leblang also makes a number of statements in paragraphs 31-33 of his declaration which are simply not correct.  A9 could easily implement software to block selected search results and it would not slow down its results much at all, because it would simply have to search several hundred results and compare them to a pre-specified list of infringing URLs.  This would take only a tiny fraction of a second.

13.     From a technical point of view, it is the website that a user is logged onto that causes the image to appear on its user's screen, and therefore causes the display.  In order to cause the display, the website operator must write a sequence of HTML code which instructs its user's browser to display the image on its user's screen.  This code is independent of the specific URL of the image.  There are two entities that are involved in the display of an image, the entity that stores the image, and the entity that writes the code which causes the image to be displayed on its user's screen.  There is, as far as I know, little if any disagreement on these points among computer experts.  The html command that is used to display images instantaneously, once the page loads, is typically of the form <img src = "URL."> The "img" stands for "image."  The src stands for "source."  The "URL" represents the location of the image.  So the command basically says, "display image from this URL."  This command is independent of the location of the image.  Wherever the image may be, this command, or some minor modification, will cause the image to be displayed on the user's screen. Attached as Exhibit 1 are true and correct copies of portions of web pages that I printed from the Internet on September 10, 2008.  The first print screen, from the web site aspnetcenter.com, states near the top, "IMG tag is used to display a picture and SRC is used to define[] the source or location of the picture." Towards the bottom it says, "Display an image from the internet" "Image from

Declaration of Sean Chumura in Support of Perfect 10's Opposition to A9.com's Motion for Summary Judgment

internet page can be displayed on your page by typing the image url in the source but the risk of the image being removed is high.  Here is an example of an image from microsoft website: <img src=…".  The website then shows that it was able to display a Microsoft Enterprise Software logo on its own website.  In this case it is quite clear that the entity forcing the display of Microsoft's logo on the third party website is not Microsoft.  Page 2 of Exhibit 1 is a printout of part of a web page from the website htmlgoodies.com.  In the middle of the page, it states, "IMG stands for 'image.'  It announces to the browser that an image will go here on the page.  Yes, the image will pop up right where you write in the image tag.  SRC stands for 'source.'  ….. It's telling the browser where to go to find the image."  Page 3 of Exhibit 1, from the website htmlcodetutorial.com, says that "SRC tells where to get the picture that should be put on the page."

14.    A search engine that engages in in-line linking or framing of images basically uses HTML code which it creates, which is essentially of the form "frame X" to display a portion X of the third party website onto its user's screen.  Once again, the HTML code used is independent of the "X" which is specified by the search engine.

15.    The search engine is literally the entity that shows the in-line linked image to the user.  The user would not be able to see the image inside the search engine's frame without the search engine.  If a user has an in-line linked image on his screen and bookmarks it, the search engine link will be bookmarked, not the URL of the third-party website.  There is a hyperlink a user can click on a search engine display that will remove the frame. Only then will the user actually be on the third-party website, without the search engine having control over the display.

16.    Infringement on the Internet is becoming more and more rampant.  Many of the third-party websites that are major infringers of images display them by in-line linking to another website, which is often called an image host.  One of

Declaration of Sean Chumura in Support of Perfect 10's Opposition to A9.com's Motion for Summary Judgment

the largest image hosts, imagevenue.com, is located outside the United States. When I visited imagevenue.com, I was not able to view any images at that website.  Imagevenue.com does not display images.  The only way that a user can view an image stored at imagevenue.com (unless they somehow already know the specific URL of the image), is by visiting a website that does know the URL of that image and that in-line links to it, causing the display.

17.     There are a number of incorrect statements made by Google in its briefs, and by John Levine in his declaration in support of Google's opposition to Perfect 10's motion for preliminary injunction.  On page 12 of Google's opposition, dated September 26, 2005, Google states, "Any reproduction or display emanates from the host of the linked or framed Web page."  This statement is not correct.  When the image is being displayed to the Google user via Google's "See full-size image" link, Google controls that display.  It is Google's HTML instructions that cause the image to appear on the Google user's computer screen.  In fact, if the third party website was itself in-line linking to an image from an image host website such as imagevenue.com, then Google would effectively be displaying an image to its user from imagevenue.com, completely independent of the original third party website.  Google cites to paragraph 24 of the Levine declaration for support for its statement.  I have read that paragraph and its associated footnote and I don't see anything in that paragraph that would specifically support the statement which Google made in its brief.

18.     The Ninth Circuit ruling does not mention the functionality of the "See full-size image" link, which differs in a number of significant respects from the in-line link.  The "See full-size image" link created by Google and used by A9, does not take the user to the third party website at all.  Instead the "See full-size image" option basically bypasses the third party website altogether, and simply shows to the Google or A9 user a stripped down image on a blank background.   The third party website most likely does not want Google or

-7-

anyone else displaying their images without giving them any traffic or the opportunity to display ads around such images.  The process that Google uses to display images via its "See full-size image" link is essentially the same process that Perfect 10 uses to display images to its users.  The instructions are independent of the location of the image.

19.    There appear to be a number of inaccuracies in the Ninth Circuit's description of how Google functions.  A)  On page 17, the Ninth Circuit states that "HTML instructions do not themselves cause infringing images to appear on the user's computer screen."  That is just not correct.  Assuming that the user has electricity, an internet connection, and a functioning computer, it is HTML instructions that cause images to appear on that user's screen.  B)  On page 17, the Ninth Circuit also states, "Google's activities do not meet this definition because Google transmits or communicates only an address which directs a user's browser to the location where a copy of the full-size image is displayed.  Google does not communicate a display of the work itself."  This statement is also incorrect.  Once again, Google uses the same process as everyone else to display images.  It is the HTML instructions that Google creates that cause the image to appear on the Google user's computer screen.  C)  On pages 17-18, the Ninth Circuit states that, "For the purposes of this analysis, it is irrelevant whether cache copies direct a user's browser to third party images that are no longer available on the third party's website, because it is the website publisher's computer, rather than Google's computer, that stores and displays the infringing image."  This statement is incorrect because more and more, images are actually stored on image host sites.  When Google directs a user's browser to display an image from an image host site onto the user's screen, it is Google and not the third party website that is responsible for the display.

20.  On page 12 of the opinion, the Ninth Circuit makes another statement that I do not believe is correct.  The Ninth Circuit states that

Declaration of Sean Chumura in Support of Perfect 10's Opposition to A9.com's Motion for Summary Judgment

"Google simply provides HTML instructions directing a user's browser to access a third-party website." I do not believe that this is the case. It is certainly not always the case. Rather, Google appears to provide the user with a Google cached version of the HTML code copied from the third party website. What this means is that the user is never really interacting with the third party website, it is instead always interacting with Google, until such time as the user presses on the Google "remove frame" link which allows it to actually move to the third party website. I verified this fact by clearing all the cookies on my computer and clicking on a Google thumbnail. What I received on my computer were a series of cookies from Google, and no cookies from the third party website. It was not until I pressed on the Google "remove frame" link that actually took me to the third party website, that my computer received a cookie from that website. This means that, contrary to the facts assumed by the Ninth Circuit, Google did not initially connect my computer in any way to the third party website.

21.     Attached as Exhibit 2 are pages that were sent to me by Dr. Norman Zada, and which are discussed in his declaration. They demonstrate some of the points I have made in this declaration. Page 1 of Exhibit 2 is a print screen which shows a typical Google in-line link to an infringing third party website, wallpapers-zone.com. The images at the top and in the middle of the page of Isabelle Funaro are copyrighted by Perfect 10. The webmaster of wallpapers-zone.com has placed ads around the Perfect 10 image in the middle of the page. At the time this printscreen was made, the website was actually down, as shown by page 2 of Exhibit 2. So the display shown on page 1 of exhibit 2 was actually performed using a Google cache of the html code from wallpapers-zone.com. This means that the Google user never actually was connected to wallpapers-zone.com, as Google

////

Declaration of Sean Chumura in Support of Perfect 10's Opposition to
A9.com's Motion for Summary Judgment

claims in its papers.  Page 3 of Exhibit 2 shows what users see who click on the Google "See full-size image" link.  The image has been stripped of all advertising or text.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed on September 11, 2008, at Pittsburgh, Pennsylvania.

Sean Chumura

Declaration of Sean Chumura in Support of Perfect 10's Opposition to A9.com's Motion for Summary Judgment

# Exhibit 1



**Proxy Kit**
($14.95)
Click Here!

**> Advertise Here <**
1,000 Visits/Day!
($14.95/Month!!)
Email: jeff@tensmar.com

**Directory Link**
($4.95)
Click Here!

**HTML Basics**

- ▶ Introduction
- ▶ Hyperlink
- ▶ Image Display
- ▶ Tables
- ▶ Frames
- ▶ Forms
- ▶ Formats

*Pictures*

Adding pictures to your web site is as easy as one line of code. IMG tag is used to display a picture and SRC is used to defines the source or location of the picture.

Image source example
<IMG SRC="myPagePic.gif">
IMG tag has a number of attributes
HEIGHT=nn Changes the height of the picture
WIDTH=nn Changes the width of the picture
ALIGN=top,bottom,center Aligns the text to begin at the top, bottom or center of the image.
Image source example
<IMG SRC="myPagePic.gif" height="200" width="200"> - this will display image name myPagePic in the same directory as this file and make both height and width 200.

**Display an image from the internet**

Image from internet page can be disployed on your page by typing the image url in the source but the risk of the image beign removed is high.
Here is an example of an image from microsoft website: <img src="http://microsoft. com//library/homepage/images/init_enterprise2.gif" height="50"width="70">.

Here is the result of the above example: 



security

vb script keyword ref

webmaster tips

webmaster projects

webmaster toolbox

xml

general reference pieces

the master list

**NEED HELP?**

discussion boards

mentors

technology jobs

**WEB DEVELOPMENT**

earthwebdeveloper.com

javascripts.com

**HTML GOODIES** *Partners*

**Become a Partner**

an **internet.com** site
Tens of Thousands of Jobs!
Post or Look for a Job
Today!

**capterra**
Compare Project
Management Software Now!

**Alpha Five Version 9**
*Database apps done right!*
Data-Driven App
Development - Free Trial

IT Optimization to
Meet Business Goals
Streamline & Strengthen IT
to Meet Demands

The New Information
Agenda. Do You Have One?
Learn how IBM can help!

Article: On the CIO
Innovation Agenda
Spark Innovation & Make
Growth a Reality

**WEB 3.0**
CONFERENCE • EXPO
OCT. 16-17  SANTA CLARA

good idea for you to place whatever images you are going to use in a subdirectory called "images". That means place the image in a directory (to be called "images") under the directory where your web pages are located (which would be the "root" directory for your site). There's more on that coming up in [Primer #7](#).

**Download Now**

Register now for your free Internet.com membership to download your complimentary eBook. Membership will also give you access to:

- eBook Library
- Whitepapers
- Webcasts
- Newsletters
- WinDrivers

Here's the format for placing an image:

**<IMG SRC="image.gif" ALT="some text" WIDTH=32 HEIGHT=32>**

By replacing "image.gif" with "homepage. gif", one of my own graphics, you get this...

**HTML GOODIES TO GO NEWSLETTER**

Your e-mail!

**SIGN-UP**

[Other Related](#)
[Newsletters](#)



## Here's What's Happening

- **IMG** stands for "image." It announces to the browser that an image will go here on the page. Yes, the image will pop up right where you write in the image tag.

- **SRC** stands for "source." This again is an attribute, a command inside a command. It's telling the browser where to go to find the image. Again, it's best for you to place the images you want to use in a subdirectory called "images". This way you can call for the image by name with just the subdir name in front of it, like this: */images/imagename.gif*. Right now, let's just get it to work.

- **image.gif** is the name of the image. Notice it's following the same type of format as your HTML documents. There is a name (image) then a dot and then there is a suffix (gif).

- **ALT** stands for "alternate text". This tells the browser that if it can't find the image, then just display this text. It also tells anyone who can't view your image what the image is about. For example a disabled user using a screen reader, or dare I mention it, Search Engines.

- **"some text"** is where you put the text describing your image.

- **WIDTH** stands for just that, the width of the image in pixels. It can range from 1 pixel to, well, just about any number, but generally will be less than the width of the [web browser](#).

- **HEIGHT** stands for, as you might guess, the height of the image in pixels. Again, the height can be just about anything, but generally will be less than the height of the web browser.

---

## Image Formats

There are four basic formats you will find on the World Wide Web. Each is denoted to the browser by a different suffix. Remember that "name.suffix" discussion from Primer #1?

- **.gif** This is pronounced "jif" or "gif" (hard "G") depending on whom you speak to. I have always said "jif", like the peanut butter. This is an acronym for **G**raphics **I**nterchange **F**ormat.



# Web Design Degrees - A Leader in Online Cr

Education - Art Institute Online. www.aionline.edu

HOME          TUTORIAL ∇     FORUM ∇     QUICK LIST

CSS

Home >> Images >> <IMG ...>

<IMG ...>                                                          <IMG ALT=".

## Attribute for `<IMG ...>`
## `SRC = "text string"`

SRC tells where to get the picture that should be put on the page. SRC is the one required attribute for `<IMG ..` example, suppose that the GIF file "../graphics/pumpkin.gif" is in the same directory as this page. We can place like this:

| this code | produces this |
|---|---|
| `<IMG SRC="../graphics/pumpkin.gif" ALT="pumpkin">` |  |

SRC is a hypertext reference, like the `<A HREF="...">` attribute. The reference can be relative (like the exam it can be a "fully qualified" reference. The most common use for fully qualified references is for the "access cou you see on some web pages. These counters work by calling an image file located on some other web server v specializes in access counters. That server looks at what web page is calling the image (that information is give URL), looks at the record for how many times that image has been called, and generates an image file with the image. Suppose, for example, there is an access counter located at the server of our friends ninthwonder.c isn't really):

| this code | produces |
|---|---|
| `<IMG src="http://www.ninthwonder.com/~miko/counter.gif?name=idocsguide"`<br>`ALT="counter">` | ☒ coun |

Unfortunately, because it is very common to turn images off, many users never see the access counter. In thes the page reads like this: "This page has been accessed [image] times".

**XELODA Official Site**
Learn About A Proven Effective Oral
Chemotherapy. Get More Info.

**Web Hosting**
Why trust your hosting to anyone else?
Fully reliable Shared, VPS, MPS...

**Offshore Development**
Quality Software Developr
.NET/Java/LAMP Experts

# Exhibit 2



Wallpaper Isabelle Funaro 001 [800 x 600] - Mozilla Firefox

File   Edit   View   History   Bookmarks   Tools   Help

http://www.wallpapers-zone.com/800x600/stars_et_top_models_femmes/isabelle_funaro/isabelle_funaro_001.html

Google

Most Visited   Getting Started   Latest Headlines



Email, Rencontre, Love & Chat, avec Lycos / Tout sur les Jeux Vidéo avec Serial Gamer / L'Actu du Cinéma avec Fan de Cinéma

# WALLPAPERS-ZONE.COM

Wallpapers Search

Crédit reconstituable d'un montant maximum de 3 000 € et d'une durée d'un an renouvelable. Remboursement minimum mensuel, hors assurance facultative : 3 % du solde débiteur et au moins égal à 15,24€. Taux Effectif Global révisable au 27/05/2008 de 20,59 % pour un solde débiteur jusqu'à 1 500 € et de 20,04 % au-delà. Le report d'échéances produit des intérêts au taux en vigueur. Le coût total du crédit varie selon le montant et la durée du découvert utilisé. Offre valable jusqu'au 23/09/2008 sous réserve d'acceptation par BNP Paribas Personal Finance. Vous disposez d'un droit de rétractation.

Profitez-en !

Cetelem

Warning: mysql_connect() [function.mysql-connect]: Too many connections in /home/wallpape/www/Connections/sql.php on line 10

Fatal error: Too many connections in /home/wallpape/www/Connections/sql.php on line 10



September 2008

| S | M | Tu | W | Th | F | S |
|---|---|----|----|----|----|----|
|   | 1 | 2 | 3 | 4 | 5 | 6 |
| 7 | 8 | 9 | 10 | 11 | 12 | 13 |
| 14 | 15 | 16 | 17 | 18 | 19 | 20 |
| 21 | 22 | 23 | 24 | 25 | 26 | 27 |
| 28 | 29 | 30 |   |   |   |   |

Done

