O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 04-9484 AHM (SHx) <br> CV 05-4753 AHM (SHx) <br> CV 07-5156 AHM (SHx) | Date | September 25, 2008 |
|---|---|---|---|
| Title | PERFECT 10, INC. v. GOOGLE, INC., *et al.* <br> PERFECT 10, INC. v. AMAZON.COM, INC., *et al.* <br> PERFECT 10, INC. v. MICROSOFT CORPORATION | | |

| Present: The Honorable | A. HOWARD MATZ, U.S. DISTRICT JUDGE | |
|---|---|---|
| Stephen Montes | Not Reported | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys **NOT** Present for Plaintiffs: | Attorneys **NOT** Present for Defendants: | |

**Proceedings:**	IN CHAMBERS (No Proceedings Held)

The Court has considered the parties' responses to the Court's minute order dated August 20, 2008 concerning discovery disputes and the appointment of a discovery master. The Court has also considered the parties' contentions and concerns regarding a variety of issues arising from the August 18, 2008 scheduling conference and the August 27, 2008 telephonic conference, including the setting of trial dates for the *Google* and *Amazon* cases. The Court does not intend to appoint either a technical advisor or a discovery master at this time.

The parties in all these cases somehow have succumbed to the all-too-frequent tendency of litigants and lawyers to get sidetracked. That is particularly regrettable in lawsuits, such as these, that are complicated, technology-driven and potentially far-reaching.[1] For the Court to manage these cases in a standard fashion, such as to treat the pending discovery motions as if they were commonplace disputes, would not advance the goal of enabling the parties either to ready these cases for Rule 56 determinations or for

---

[1] There are other considerations that compound the difficulties. Plaintiff's counsel, for example, often complains about the supposedly unfair burdens that the Goliath-like defendants subject him to. And perhaps he is right that in certain respects their strategy may be to overwhelm him. Yet Perfect 10 may have invited those problems with its sweeping claims and its own conduct in the course of discovery.

O

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 04-9484 AHM (SHx)<br>CV 05-4753 AHM (SHx)<br>CV 07-5156 AHM (SHx) | Date | September 25, 2008 |
|---|---|---|---|
| Title | PERFECT 10, INC. v. GOOGLE, INC., *et al.*<br>PERFECT 10, INC. v. AMAZON.COM, INC., *et al.*<br>PERFECT 10, INC. v. MICROSOFT CORPORATION | | |

meaningful settlement talks.[2]

Given the foregoing problems, as well as the enormous, ever-expanding number of the copyrighted images that Perfect 10 claims were infringed, it is necessary and appropriate for the Court to manage these cases differently. Therefore, in the exercise of its inherent and statutory authority to administer the rules of discovery in a manner that will "secure the just, speedy, and inexpensive determination of every action and proceeding," Fed. R. Civ. P. 1, the Court intends to require the parties to negotiate in good faith a method or approach that will enable them to assess the strengths and weaknesses of their respective overall "cases" and contentions based on a sample of the key pertinent facts. In other words, the parties will take an approach comparable to that of a recognized, impartial expert who uses surveys and statistical analyses to project the extent (if any) of customer satisfaction with a product or, in the trademark context, the extent of confusion among consumers as to the source or origin of goods. From the information that the parties obtain, exchange and organize, they should be able to extrapolate reliable conclusions as to where they think they can go, or want to go, from there.

Accordingly, the Court has determined that a further conference with counsel in all three cases is necessary. Accordingly, the Court ORDERS the parties in all these cases to appear for a status conference on October 6, 2008 at 1:30 p.m.. The broad purpose of the conference is to explore ways for the parties to achieve the foregoing objectives -- i.e., summary judgment and settlement readiness -- without "going the distance" via full-fledged, uncircumscribed discovery.

At the conference, the Court will invite counsel to address the following preliminary or tentative findings and proposals, which will probably be incorporated into a special Case Management Order that will issue at the same time as the scheduling

---

[2] It is highly improbable that there will be a trial in any of these cases. That is so obvious that it need not be belabored.

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 04-9484 AHM (SHx)<br>CV 05-4753 AHM (SHx)<br>CV 07-5156 AHM (SHx) | Date | September 25, 2008 |
|---|---|---|---|
| Title | PERFECT 10, INC. v. GOOGLE, INC., *et al.*<br>PERFECT 10, INC. v. AMAZON.COM, INC., *et al.*<br>PERFECT 10, INC. v. MICROSOFT CORPORATION | | |

orders for the *Google* and *Amazon* cases. The following paragraphs are numbered to facilitate discussion.

1.     Perfect 10 will have to identify each "Perfect 10 Copyrighted Work" it claims was infringed by not later than _____. Thereafter, Perfect 10 will be precluded from seeking damages for the infringement of any work not so identified. It would, however, be entitled to injunctive relief for works identified later.

2.     In this discovery phase, the focus should be on developing information that enables the parties to assess their positions as to the secondary copyright liability claims that the Ninth Circuit addressed in *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1169-76 (9th Cir. 2007). Among the key major factors that should be the focus of their efforts are the following:

> A.    Contributory Liability (see 508 F.3d at 1171-72).
> (1)    What specific infringing material did defendant learn was on or accessible through its "system"?
> (a) When?
> (b) How?
> (i) If by way of a DMCA notice, what did the notice contain?
> (ii) Was the notice in compliance with section 512?
> (2) At the time defendant learned of the infringing image, what simple, reasonable and feasible measures, if any, did defendant have to avoid providing Internet users access to infringing images? (See 508 F.3d at 1172.) *E.g.*, what changes to its operations could defendant have made to avoid assisting infringing websites? (See 508 F.3d at 1174-75.)
>
> B.    Vicarious Liability (see 508 F.3d at 1173-74).
> (1) At the time defendant learned of the infringing image, did defendant have a legal right to stop or limit the directly infringing conduct?
> (a) Did it have the right to terminate websites?
> (b) Did it have the right to block websites' ability to host and serve

O

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 04-9484 AHM (SHx)<br>CV 05-4753 AHM (SHx)<br>CV 07-5156 AHM (SHx) | Date | September 25, 2008 |
|---|---|---|---|
| Title | PERFECT 10, INC. v. GOOGLE, INC., *et al.*<br>PERFECT 10, INC. v. AMAZON.COM, INC., *et al.*<br>PERFECT 10, INC. v. MICROSOFT CORPORATION | | |

      infringing images?
  (2) Did defendant actually decline to exercise that right?
  (3) Does defendant have such a legal right currently?
  (4) At the time defendant learned of the infringing image, did defendant have the practical ability to stop or limit infringement?
      (a) The ability to determine whether there is infringement, in the absence of targeted DMCA notices?
      (b) The ability to block access to infringing images?
  (5) In what manner did defendant derive a direct financial benefit from the directly infringing conduct? (This inquiry seeks a description; it does *not* require a calculation of claimed damages.)

3. In light of the large number of copyright registrations and works that Perfect 10 has placed at issue in all three cases, the Court finds that it would be both fair and feasible for Perfect 10 to create a spreadsheet along the lines contemplated by Google's Interrogatories Nos. 3 and 11, A9.com's Interrogatories Nos. 1 and 6, and Microsoft's Interrogatory No. 1 -- *but only for a selected and relatively small sample of copyrighted works.* Such a limited spreadsheet would reduce or possibly eliminate any requirement that the parties search through all the hard drives and disorganized physical documents that Perfect 10 has provided in discovery thus far. It also would do much to avoid or reduce further discovery disputes, promote the efficient and timely administration of these lawsuits and provide a framework for settlement.

    (a) Based on the joint stipulations in the parties' pending motions to compel responses to those interrogatories, the Court compiled a chart, attached hereto, that displays the categories of information sought in those interrogatories, as well as the information that Perfect 10 contends it has already produced or will produce. The Court realizes that not all those interrogatories seek identical pieces of information. (*E.g.*, Microsoft did not request a list of infringing URLs.) However, they all basically seek a way to enable the parties to gather and access vital identifying information about the copyrighted work in question.

O

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 04-9484 AHM (SHx)<br>CV 05-4753 AHM (SHx)<br>CV 07-5156 AHM (SHx) | Date | September 25, 2008 |
|---|---|---|---|
| Title | PERFECT 10, INC. v. GOOGLE, INC., *et al.*<br>PERFECT 10, INC. v. AMAZON.COM, INC., *et al.*<br>PERFECT 10, INC. v. MICROSOFT CORPORATION | | |

      (b)    The precise information required for the spreadsheet remains to be determined. The Court doubts that all of the disputed categories reflected in the attachment need be included, but at a minimum, it would be necessary to identify the work, the registration number, chain of title information, the URL(s) of infringing websites, and the DMCA notices. At trial Perfect 10 itself would have to introduce such information anyway, because the fact-finder would need it to determine whether the parties proved their claims (or defenses, as the case may be). If at trial Perfect 10 sought to prove these facts through charts and summaries, it would have had to provide the underlying evidence for the charts and summaries sometime before trial. *See* Fed. R. Evid. 1006. The Court finds that it is "reasonable" to require it to do so at this stage, in discovery.

4.    After the entries have been made in the spreadsheet, the Court will either limit discovery to the Perfect 10 Copyrighted Works specified in the spreadsheet or require that discovery be primarily focused on those works. In any event, the Court will order the parties to use the spreadsheet entries to extrapolate facts, based on statistically sound methods, as to the remaining works that Perfect 10 has claimed were infringed. To implement this approach, two issues must be decided.

      (a) First, what categories of information should be placed on the spreadsheet? There are at least two ways to determine this. The first way is for the parties to agree on what information is so vital that it should be reflected on the spreadsheet. The second way is for the Court to make that determination.

      (b) Second, which *works* will be selected for the sample that is the basis for the spreadsheet? Again, the first way to determine this is for the parties to agree. The second is to allow Perfect 10 to select the works that will be entered on the spreadsheet, from the potentially thousands it has pointed to thus far, provided that Dr. Zada file a sworn declaration describing the methodology, including any assumptions, Perfect 10 used to select such works.

5.    What will deter Perfect 10 from skewing the designation of works in an effort to

O

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 04-9484 AHM (SHx)<br>CV 05-4753 AHM (SHx)<br>CV 07-5156 AHM (SHx) | Date | September 25, 2008 |
|---|---|---|---|
| Title | PERFECT 10, INC. v. GOOGLE, INC., *et al.*<br>PERFECT 10, INC. v. AMAZON.COM, INC., *et al.*<br>PERFECT 10, INC. v. MICROSOFT CORPORATION | | |

enlarge or exaggerate the number of infringements and/or damages? Simply this: Defendants will be given the opportunity to establish that the spreadsheet entries Perfect 10 chose are not fairly representative of the entire range of works in question. If they succeed, the Court likely would order Perfect 10 to develop a spreadsheet for literally every work it identified as having been infringed, and would preclude it from pursuing damages for any work not properly incorporated into such spreadsheet. In other words, the Court would return the case to conventional forms of "combat."

At the conference, the Court will also invite counsel to answer the following questions:

(a) For one copyrighted work, how much time would it take to enter all the allegedly infringing URLs onto a spreadsheet? How much time would it take to enter *all* the information tallied in the attached chart?

(b) Assume that the sample discussed above consists of 100 copyrighted works and that discovery of the facts relevant to the claims and defenses for those works has been completed. Looking at those facts in the light most favorable to Perfect 10, assume that at most Perfect 10 may succeed in proving liability for 50 works. Would such a statistical outcome help the parties resolve their dispute? What if the number were 33 out of 100?

                                                                                                                                   _____ : _____

                                                        Initials of Preparer

**Information Sought by Defendants in Motions to Compel**

| Category | Google[1] | A9.com[2] | Microsoft[3] | Already in Perfect 10's production? |
|---|---|---|---|---|
| Unique identifier of the work | ✓ | ✓ | ✓ | |
| Copyright Registration # | ✓ | ✓ | ✓ | Y |
| Page number of document(s) containing the work | ✓ | ✓ | ✓ (just "exemplar") | |
| URLs of allegedly infringing webpage | ✓ | ✓ | | Y |
| Date of DMCA notice sent | ✓ | | ✓ | Y |
| Damages claimed | ✓ | ✓ | ✓ | |
| Date of and particular conduct constituting the infringing act | | ✓ | | Y |
| Search term and other instructions or events used to cause the infringing display | | ✓ | | |
| Indicate thumbnail or full-size image | | ✓ | | |
| Copyright registrations of compilations or derivative works incorporating the work | | | ✓ | |
| Documents showing chain of title | | | ✓ | Y |
| Date of first publication of the work | | | ✓ | Y |
| Persons depicted | | | ✓ | |

---

[1] Google's Interrogatory No. 11. See Joint Stipulation Re. Google Inc.'s Motion to Compel Further Responses to Google's Interrogatories Nos. 3 and 11, p. 52.

[2] A9.com's Interrogatories No. 1 and 6. See Joint Stipulation Re: Defendant A9.com's Motion to Compel Perect 10's Responses to A9.com's First Set of Interrogatories Nos. 1, 2, 4, 5, 6, pp. 7, 41-42.

[3] Microsoft's Interrogatory No. 1. See Joint Stipulation Re Microsoft's Motion to Compel A Response to Interrogatory No. 1 and To Determine the Sufficiency of Responses to Requests for Admission, pp. 7-8.