TOWNSEND AND TOWNSEND AND CREW LLP
MARK T. JANSEN (State Bar No. 114896)
ANTHONY J. MALUTTA (State Bar No. 193587)
VERONICA BESMER (State Bar No. 246560)
Two Embarcadero Center, Eighth Floor
San Francisco, California  94111
Telephone: (415) 576-0200
Facsimile: (415) 576-0300
mtjansen@townsend.com
ajmalutta@townsend.com
vbesmer@townsend.com

Attorneys for Defendant
A9.COM, INC.

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| PERFECT 10, INC., a California corporation,<br><br>                    Plaintiff,<br><br>          v.<br><br>AMAZON.COM, INC., a corporation; A9.COM, INC., a corporation; ALEXA INTERNET, INC., a corporation, and DOES 2 through 10, inclusive,<br><br>                    Defendants. | Case No.  CV05-4753 AHM (SHX) CONSOLIDATED WITH CASE NO. CV04-9484 AHM (SHX)<br><br>**DEFENDANT A9.COM, INC.'S REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**<br><br>Date:  To be set<br>Time:  10:00 a.m.<br>The Hon. A. Howard Matz<br>Courtroom 14 |
| PERFECT 10, INC., a California corporation,<br><br>                    Plaintiff,<br><br>          v.<br><br>GOOGLE, INC., a corporation, and DOES 1-100, inclusive,<br><br>                    Defendants. | |

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................. 1

II.   PERFECT 10 DID NOT MEET ITS BURDEN IN OPPOSING
      THIS MOTION ................................................................. 6

      A.   Perfect 10 Fails To Introduce Admissible Evidence
           Adequate To Create A Genuine Issue Of Material Fact ................ 6

      B.   Jonathan Leblang's Declaration Testimony Is Unchallenged
           And Matthew Amacker's Deposition Does Not Contradict
           Material Statements In His Declaration ............................. 7

      C.   Plaintiff's Evidence Is Either Irrelevant, Lacks Proper
           Foundation Or Both And Is Not Admissible Against
           A9.com ............................................................. 10

III.  THE UNDISPUTED FACTS AND THE NINTH CIRCUIT'S
      PRIOR DECISIONS REQUIRE SUMMARY JUDGMENT ON
      PERFECT 10'S DIRECT AND CONTRIBUTORY
      INFRINGEMENT CLAIMS ....................................................... 11

      A.   A9.com Does Not Directly Infringe ................................. 12

      B.   A9.com Cannot Be Liable For Vicarious Infringement ................ 13

IV.   A9.COM QUALIFIES FOR THE DMCA SECTION 512(A)
      "SAFE HARBOR" AND IS IMMUNE FROM LIABILITY FOR
      COPYRIGHT INFRINGEMENT (DIRECT, CONTRIBUTORY
      OR VICARIOUS) ............................................................. 16

      A.   The Ninth Circuit Has Not Rejected A9.com's Section
           512(a) Defense, "Implicitly" Or Otherwise ........................ 16

      B.   A9.com Can Qualify Under Section 512(a) Even If It Is
           Also A "Search Engine" Or "Information Locator" .................. 17

      C.   Section 512(a) Is Not Limited To "Telephone Companies,"
           "Cable Providers," Or Other Entities That Transmit
           Copyrighted Materials Through Their System ....................... 19

      D.   The A9.com Functionality At Issue Satisfies Every
           Requirement Of Section 512(a) .................................... 20

      E.   A9.com Satisfies Section 512(i), Including Implementation
           Of A Repeat Infringer Program .................................... 22

V.    CONCLUSION ................................................................ 24

# TABLE OF AUTHORITIES

*Page*

**Cases**

*A&M Records, Inc. v. Napster, Inc.*
  54 U.S.P.Q.2d (BNA) 1746 at *19 (N.D. Cal. 2000)..............................................19, 21

*Adickes v. S.H. Kress Co.*
  398 U.S. 144 (1970) ....................................................................................................10

*American Airlines, Inc. v. United States*
  204 F.3d 1103 (Fed. Cir. 2000) .....................................................................................7

*Arrendondo v. Uniroyal Goodrich Tire Co.*
  1995 U.S. Dist. LEXIS 19943 at *19 (D. Ariz. 1995) ..................................................7

*Bertolucci v. San Carlos Elementary School District*
  721 F. Supp. 1150 (N.D. Cal. 1989)...............................................................................7

*Celotex Corp. v. Catrett*
  477 U.S. 317 (1986) .......................................................................................................6

*Cochrane v. Norton*
  2003 U.S. Dist. LEXIS 13089 at *13-14 (N.D. Cal. 2003).........................................7

*Corbis Corp. v. Amazon.com, Inc.*
  351 F. Supp. 2d 1090 (W.D. Wash. 2004) ...................................................................23

*Ellison v. Robertson*
  189 F. Supp. 2d 1051 (C.D. Cal. 2002), *aff'd in part, rev'd in part and
  remanded*, 357 F.3d 1072 (9th Cir. 2004)...............................................................18, 19

*Ellison v. Robertson*
  357 F.3d 1072 (9th Cir. 2004) ......................................................................................19

*Golden Gate Restaurant Ass'n v. City and County of San Francisco*
  535 F. Supp. 2d 968 (N.D. Cal. 2007)...........................................................................6

*In re Charter Communications*
  393 F.3d 771 (8th Cir. 2005) .......................................................................................19

*Keenan v. Allan*
  91 F.3d 1275 (9th Cir. 1996) .........................................................................................6

*Kennedy v. Allied Mutual Insurance Co.*
  952 F.2d 262 (9th Cir. 1991) .........................................................................................8

*Medina v. Multaler, Inc.*
  547 F. Supp. 2d 1099 (C.D. Cal. 2007) .........................................................................6

*Nelson v. Pima Community College*
  83 F.3d 1075 (9th Cir. 1996) .........................................................................................6

*Perfect 10, Inc. v. Amazon.com*

1

# TABLE OF AUTHORITIES (con't)

2

<u>Page</u>

3      508 F.3d 1146 (9th Cir. 2007) ...............................................................passim

4    *Perfect 10, Inc. v. CCBill LLC*
        488 F.3d 1102 (9th Cir.), *cert. denied*, 128 S. Ct. 709 (2007) ...........................passim

5

6    *Perfect 10, Inc. v. Visa International Service Ass'n*
        494 F.3d 788 (9th Cir. 2007), *cert. denied*, 128 S. Ct. 2871 (2008) ...........2, 11, 12, 14

7    *Recording Industry Ass'n of America v. Verizon Internet Services, Inc.*
        351 F.3d 1229 (D.C. Cir. 2003)............................................................11, 19

8

9

**Statutes**

§ 512(i) ...............................................................................................23

10

17 U.S.C. § 512(a)(5) ...............................................................................21

11

17 U.S.C. § 512(h .................................................................................. 19

12

17 U.S.C. § 512(n) .........................................................................4, 18, 19

13

Fed. R. Civ. P. 56(e)(1) ............................................................................. 6

14

Federal Rule of Civil Procedure 56...............................................................11

15

Section 512(d) ......................................................................................18

16

**Other Authorities**

17    *House Commerce Committee Report on the DMCA*, H. Rep. 105-551 at
        63 (105th Cong. 2d Sess.).....................................................................21

18

19

20

21

22

23

24

25

26

27

28

# I.      INTRODUCTION

It is undisputed that Amazon's search engine, A9, operates in the following manner: "A9 submits search queries received from Users to Google without editing. . . . Google sends those results back to A9 in XML format."  Leblang Decl. ¶ 16.  "A9 then retransmits the search results. . . it receives from Google directly to the User, without deleting any of the results provided by Google or adding any additional results."  *Id.* ¶ 17.  "Image search results are returned by Google Image Server directly to the User as 'thumbnail' images.  These images are not transferred through the A9.com Server."  *Id.* ¶ 19.  "No copy of thumbnail images is made by A9.  Indeed, A9 never even transmits a copy of the images, as only URLs referencing Google's Image Server are provided."  *Id.* ¶ 24.  "No image is ever stored on an A9 server pursuant to a User's search request."  *Id.* ¶ 28.  In other words, Amazon in-line links to Google's thumbnails.

February 21, 2006 Civil Minutes (Docket No. 68) at 1-2 n.2 (hereafter the "A9.com Preliminary Injunction Order"), *aff'd*, *Perfect 10, Inc. v. Amazon.com*, 508 F.3d 1146 (9th Cir. 2007).

The undisputed facts established three years ago remain undisputed today.  Although Perfect 10 devotes 25 pages of rhetoric to the effort, it presents the Court with no real evidence to establish a triable issue of fact on any of the matters raised by A9.com's motion.

A9.com has brought a very narrow motion for summary judgment.  There are three straightforward issues presented by this motion, going only to the A9.com Internet search functionality challenged by Plaintiff ("A9 search functionality").  But Perfect 10 attempts to obfuscate the relevant issues by submitting unreliable assumptions, invalid

lay opinions and other "evidence" going to wholly irrelevant issues.  The three propositions established by A9.com's evidence are:

1.      Since it is undisputed that A9.com does not store Perfect 10's images on its servers, and therefore does not and cannot transmit copyrighted images from its servers, A9.com cannot be liable for direct copyright infringement under the "server test" set forth by this Court and established as a rule of substantive law by the Ninth Circuit in *Amazon.com, supra*.

2.      Since it is undisputed that A9.com does not have the legal right or ability to control any of the alleged "hundreds" of infringing third party websites that may store and display Perfect 10's images, A9.com cannot be liable for vicarious infringement, as explained by this Court in the A9.com Preliminary Injunction Order and affirmed by the Ninth Circuit in *Amazon.com*, 508 F.3d at 1173-74; *see also Perfect 10, Inc. v. Visa International Service Ass'n*, 494 F.3d 788, 802-804 (9th Cir. 2007), *cert. denied*, 128 S. Ct. 2871 (2008).  Because this control, a required element of vicarious liability, is lacking, it is irrelevant whether or not A9.com is involved in a "sponsored link" program under which it receives some payment when users link to a participating third party website.  Moreover, as explained below, Perfect 10 has not in its opposition identified any *evidence* that A9.com's entirely separate "Clickriver" program either: (1) influences any results on the challenged A9.com search functionality; or (2) has contracted with any so-called "sponsored" websites that actually infringe plaintiff's copyrights.[1]

3.      Since A9.com's technical operation meets -- and has met at all relevant

---

[1]  In fact, Clickriver is not in any way connected to the A9.com search functionality, and does not have contracts with or provide "sponsored link" placement services for any of the "use nets" which plaintiff <u>implies</u> (without actual evidence) infringe his copyrights.  Along with this reply memorandum, A9.com is filing a motion to strike the irrelevant, speculative and otherwise inadmissible "evidence" that Plaintiff has attempted to introduce through the declarations of Norman Zada and Sean Chumura.

times -- the statutory requirements for the DMCA Section 512(a) safe harbor, A9.com qualifies for immunity from any liability for direct, vicarious or contributory copyright infringement.  This is true whether or not A9.com received DMCA-compliant "infringement notices" from Perfect 10, and whether or not A9.com could have or did undertake to "screen out" search results with links to allegedly infringing websites. Although Perfect 10 argues notice issues and what it claims (without competent evidence) A9.com "could have done" to remove offending links from the search results, these issues are simply irrelevant to A9.com's present motion.

Perfect 10 has not submitted any *evidence* demonstrating a triable issue of fact as to any of these three straightforward issues.  Perfect 10 instead attempts to confuse and avoid the three central issues by, for example: (1) urging that the legal standards established by the Ninth Circuit in *Amazon.com*. and *Visa International* should be ignored as "preliminary;" (2) ignoring altogether the Ninth Circuit's decision in *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1116 (9th Cir.), *cert. denied*, 128 S. Ct. 709 (2007), holding that a service provider does not have to actually transmit copyrighted material to qualify for the Section 512(a) safe harbor; and (3) arguing, incorrectly, that the Ninth Circuit in *Amazon.com* somehow "impliedly" rejected A9.com's Section 512(a) defense.

Plaintiff also attempts to confuse the issues by arguing assumptions and conclusions that are irrelevant and entirely lacking in foundation.  For example, Plaintiff and its declarant Sean Chumura spend substantial energy arguing their unfounded "belief" that A9.com has the "capability to remove search results" or easily could "block infringing search results."  (*See, e.g.*, Chumura Decl. ¶¶ 4, 5; Opp. at 8, 10.)  But the question whether A9.com could "have taken reasonable and feasible steps" to block or prevent linkage to images elsewhere on the Internet goes to contributory liability only, which is not an issue raised by this motion.  *See Amazon.com*, 508 F.3d at 1176.  Whether A9.com received Perfect 10's notices and had "actual knowledge of specific infringing activities available using its system" also is

completely irrelevant to issues in this motion, since a defendant's actual knowledge "of specific infringing material [] available using its system" is an element of contributory infringement only.  *Id.* (emphasis in original).  Similarly, the "evidence" concerning A9.com's alleged receipt of money from so-called "sponsored" links through its "Clickriver" program (even if admissible, which it is not), goes at most solely to the "direct financial interest prong" of vicarious liability and is therefore irrelevant, because the only vicarious liability element at issue is A9.com's lack of any right or ability to control third party websites' direct infringements.

The "evidence" and argument that Perfect 10 advances to support its assertion that A9.com does not qualify as a Section 512(a) provider is equally unavailing.  First, Perfect 10 makes the absurd contention that the Ninth Circuit "implicitly" considered and rejected A9.com's Section 512(a) safe harbor argument.  (Opp. at 3, 13-14.)  This ignores the language of the Ninth Circuit's decision.  The Ninth Circuit expressly declined to consider the asserted DMCA defenses because this Court has not yet considered them, and instructed this Court to do so on remand.  (*Amazon.com*, 508 F.3d at 1172-73.)  That is hardly a rejection of A9.com's DMCA defenses, implicit or otherwise.

Second, Perfect 10 repeatedly argues that A9.com has referred to itself as a "search engine" in public advertising and therefore must be a "search engine."  This argument is contradicted by the undisputed evidence.  In any event, the question whether A9.com is in fact a "search engine" or "information location tool" is, once again, completely irrelevant to this motion and to the question whether A9.com meets all of the conditions for Section 512(a) safe harbor protection.  The DMCA itself makes crystal clear (at 17 U.S.C. § 512(n)) that a service provider can qualify for, and claim the benefits of, multiple statutory safe harbors.  So, A9.com can and does qualify under both Section 512(a) and Section 512(d).

Third, Perfect 10 argues that the Section 512(a) safe harbor only applies to passive "conduit only providers like telephone companies."  (Opp. at 4, 14-15.)  Perfect

10 not only cites no authority for this proposition (the cases it cites are not on point), but attempts to ignore the contrary holding of the Ninth Circuit last year in *Perfect 10 v. CCBill*, *supra* (even though A9.com cited the decision and relevant holding in its opening brief at pages 12-13 and 15).

Fourth:  Perfect 10 claims that A9.com does not have a system or network, but instead transits information over the Internet.  (Opp. at 4, 16.)  This argument is untenable because:  (1) A9.com did explain its system and operation, in adequate detail, in the declarations of Jonathan Leblang and Matt Amacker; and (2) by definition, every Internet service provider necessarily receives and transmits information over the Internet.  Indeed, DMCA immunity is not even an issue *unless* the service provider transmits over the Internet or some other interactive computer network.

Fifth:  Perfect 10 tellingly does not challenge A9.com's satisfaction of the other elements of Section 512(a), but hypothesizes -- without any factual basis -- that A9.com "could" or "must" modify the content received from Google or subsequent search result providers.[2]  But what is relevant to this motion is that the undisputed evidence establishes that A9.com *does not*, in fact, modify the content of the search results it transmits to its users.

Sixth:  Perfect 10 claims that A9.com has not implemented a repeat infringer policy as required by the DMCA.  Again, Perfect 10 contradicts the undisputed evidence, which establishes that A9.com has fully complied with the statutory requirements as interpreted by the Ninth Circuit in *CCBill, supra*.

Finally:  Perfect 10 chose not to depose declarant Jonathan Leblang and therefore cannot contest the accuracy of his declaration.  Perfect 10 argues that the only A9.com witness it bothered to depose, Matthew Amacker, was inconsistent and could not

---

[2]  As A9.com explained in its opening papers, A9.com switched from Google to Microsoft as its search results provider in early 2006.  (Amacker Decl., ¶ 3.)

1   answer Perfect 10's questions.  But those questions were technically incomprehensible,

2   and Perfect 10's counsel made no effort to fix them.  The evidence shows that Mr.

3   Amacker did not contradict any material statements in his declaration.  His declaration

4   is not only admissible, but is uncontroverted by Perfect 10 and establishes that A9.com

5   is entitled to summary judgment on all of Perfect 10's claims.

6   **II.   PERFECT 10 DID NOT MEET ITS BURDEN IN OPPOSING THIS MOTION**

7

8   **A.   Perfect 10 Fails To Introduce Admissible Evidence Adequate To Create A Genuine Issue Of Material Fact**

9   "A principal purpose of the summary judgment procedure is to identify and

10   dispose of factually unsupported claims."  *Golden Gate Restaurant Ass'n v. City and*

11   *County of San Francisco*, 535 F. Supp. 2d 968, 971 (N.D. Cal. 2007) (citing *Celotex*

12   *Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).  In order to defeat A9.com's motion for

13   summary judgment, Perfect 10 must "go beyond the pleadings and . . . 'identify with

14   reasonable particularity the evidence that precludes summary judgment.'"  *Id.* at 972

15   (citation omitted).  It is not the Court's obligation "to scour the record in search of a

16   genuine issue of triable fact."  *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996)

17   (citation omitted).

18         The mere existence of a "scintilla" of evidence is not enough

19         to create a "genuine issue of material fact." . . .  Likewise,

20         mere allegation and speculation do not create a factual dispute

21         for purposes of summary judgment.

22   *Nelson v. Pima Community College*, 83 F.3d 1075, 1081-82 (9th Cir. 1996) (citations

23   omitted).

24         Only admissible evidence may be considered on a motion for summary

25   judgment.  *Medina v. Multaler, Inc.*, 547 F. Supp. 2d 1099, 1121 (C.D. Cal. 2007); Fed.

26   R. Civ. P. 56(e)(1).  In opposing a motion for summary judgment, the opposing party

27   "must offer admissible evidence, and not simply the conclusions of [its] experts lacking

28   any evidentiary foundation."  *Bertolucci v. San Carlos Elementary School District*, 721

1   F. Supp. 1150, 1157 (N.D. Cal. 1989).  Thus for example, if the nonmoving party

2   presents expert testimony that is excluded under Federal Rule of Evidence 702 and

3   therefore inadmissible, and offers no other admissible evidence in opposition to the

4   motion, the motion should be granted.  *See, e.g., Arrendondo v. Uniroyal Goodrich Tire*

5   *Co.*, 1995 U.S. Dist. LEXIS 19943 at *19 (D. Ariz. 1995) (granting summary judgment

6   for defendants where plaintiffs' expert testimony was held inadmissible).

7       "Reliance on mere speculation, conjecture, or fantasy cannot defeat a motion for

8   summary judgment."  *Cochrane v. Norton*, 2003 U.S. Dist. LEXIS 13089 at *13-14

9   (N.D. Cal. 2003).

10              While [Perfect 10] is not required to present its entire case in

11              response to [A9.com's] motion for summary judgment,

12              [Perfect 10] must present sufficient evidence to show an

13              evidentiary conflict exists. . . .  *[Perfect 10's] arguments*

14              *alone are not affirmative evidence to defeat [A9.com's]*

15              *motion.*

16   *American Airlines, Inc. v. United States*, 204 F.3d 1103, 1112 (Fed. Cir. 2000)

17   (emphasis added).

18       As set forth below, Perfect 10 has failed to meet its burden under these

19   authorities.  Because Perfect 10 has not provided or identified any admissible, non-

20   speculative evidence to show that there is any genuine issue of material fact as to its

21   claims against A9.com, A9.com is entitled to summary judgment on all of those claims.

22       **B.    Jonathan Leblang's Declaration Testimony Is Unchallenged And
            Matthew Amacker's Deposition Does Not Contradict Material**

23       **Statements In His Declaration**

24       As a threshold matter, the Amazon defendants submitted Jonathan Leblang's

25   declaration to this Court over three years ago, in opposition to Perfect 10's motion for

26

27

28

1  preliminary injunction. [3]  Perfect 10 has never sought to depose Mr. Leblang, and his
2  declaration testimony is unrebutted.

3        Perfect 10 argues strenuously that Mr. Amacker's declaration cannot support
4  A9.com's motion for summary judgment because he contradicted his own deposition
5  testimony.  Perfect 10 cites *Kennedy v. Allied Mutual Insurance Co.*, 952 F.2d 262, 266
6  (9th Cir. 1991), for this proposition, but significantly, fails to quote the portion of the
7  opinion immediately following.  The Ninth Circuit went on to explain that while the
8  trial court should not consider "'sham' testimony that flatly contradicts earlier
9  testimony in an attempt to 'create' an issue of fact and avoid summary judgment," the
10  trial court *can* consider inconsistent testimony that arises from an honest effort to
11  explain a discrepancy or mistake, or to clarify deposition testimony that was confused.
12  *Id*. at 266-67 (citing cases).

13        In any event, contrary to Perfect 10's attempted distortions, Mr. Amacker's
14  declaration and deposition testimony are entirely consistent.  For example, Mr.
15  Amacker declared that A9.com is not a search engine.  (Amacker Decl., ¶ 9.)  Perfect
16  10 cites one reference in Mr. Amacker's deposition testimony to "A9's search engine,"
17  but ignores the multiple occasions on which Mr. Amacker clearly confirmed that
18  A9.com is <u>not</u> a search engine:

19        Q.     What makes A9 different so that it cannot block search results?
20        A.     We're not a search engine.
21        Q.     It's your testimony that A9.com is not a search engine?
22        A.     Correct.  We aggregate search results from other search engines.
23        Q.     Does A9 advertise itself as a search engine?

24

25  ――――――――――――――――――――
26  [3]  The original Declaration of Jonathan Leblang was resubmitted in support of
    A9.com's pending motion for summary judgment as Exhibit 1 to the Declaration of
27  Mark T. Jansen, filed August 25, 2008 (Docket No. 133).

28

A.     It's what consumers commonly understand as a search engine, but
       it's not – we actually don't crawl sites.  We don't create a database
       of sites.  We don't provide results.  Other folks provide the results.

(Jansen Supp. Decl. Ex. 6, Amacker Depo. at 57:4-15; *see also id.* at 57:19-58:5, 63:13-
18, 94:22-6, 121:16.[4])

Perfect 10 also compares the statement in Mr. Amacker's declaration that
A9.com has no subscribers or account holders, with Mr. Zada's (inadmissible)
conclusion that advertisers with Clickriver and providers of search results to A9.com
constitute A9.com "account holders."  This is not even an inconsistency in Mr.
Amacker's testimony, but simply Perfect 10's own unsupported interpretation of what it
wishes his testimony were.

Perfect 10 argues that Mr. Amacker's statements, that "A9.com retains the search
results only long enough to translate them and pass them on to the user" (Amacker
Decl., ¶ 6), and that A9.com does not create a database (*id.*, ¶ 9), are inconsistent with
his testimony that A9.com kept records of its users' searches and the URL's they
visited.  This is a flat misrepresentation of the deposition testimony.  Mr. Amacker
testified that <u>*when* A9.com had a *"toolbar service*,"</u> it obtained information about the
toolbar's users.  Mr. Amacker made abundantly clear that <u>that is no longer the case</u>:

A.     To be clear, <u>the tool bar is disabled</u>.  In the past it provided sites
       visited, diary information and bookmark information.

Q.     When was the tool bar disabled?

A.     End of September 2006. . . .

---

[4] This explains Mr. Amacker's testimony, also faulted by Perfect 10 (Opp. at 12), that
he does not know how search engines operate.  (Amacker Depo. at 204:20-21.)  Since
A9.com is not a search engine, there is no particular reason for Mr. Amacker to be
familiar with the operations of search engines.

| | |
|---|---|
| 1 | Q. Is there any other method that A9.com uses to obtain information |
| 2 | about users? |
| 3 | A. No. |
| 4 | Q. So since September 2006, A9.com has not been obtaining any |
| 5 | information about users; is that correct? |
| 6 | A. That's correct. |

(Amacker Depo., Jansen Supp. Decl. Ex 6, at 12:22-13:16 (emphasis added).)  This testimony is entirely consistent with Mr. Amacker's declaration, which describes A9.com's current operation.

Finally, Perfect 10 faults Mr. Amacker for purportedly being unable to answer "basic deposition questions."  In fact, Mr. Amacker repeatedly pointed out to Perfect 10's counsel that the terms he was using in his questions could have different meanings in a technical context, and asked him to clarify his questions.  Perfect 10's counsel was unable or unwilling to do so.  (*See, e.g.*, *id.*, Amacker Depo. at 29:12-13 ("Can you define what you mean by system?"), 29:17-18 ("There's a lot of definitions of network. Can you define which one you're after?"), 29:24-30:1, 30:16-20, 32:3-6 ("can you tell me what you're after?"), 34:2-4 ("You still haven't defined systems for me or even the network that you are after, so I can't answer."), 98:17-18 ("You still haven't told me what you mean by locate.  Am I looking for their address?").)  Perfect 10 cannot blame Mr. Amacker, much less exclude his simple declaration, because Perfect 10's counsel was unable to frame a technically clear question.

### C.   Plaintiff's Evidence Is Either Irrelevant, Lacks Proper Foundation Or Both And Is Not Admissible Against A9.com

It is fundamental that evidence sufficient to defeat summary judgment must be competent and admissible. *Adickes v. S.H. Kress Co.*, 398 U.S. 144 (1970).  The sole evidentiary support for Perfect 10's opposition consists of two declarations by Perfect 10's President, Norman Zada, and Sean Chumura.  As demonstrated in A9.com's separate Motion to Strike, filed contemporaneously with this reply, both declarations

1  fail to meet the most basic evidentiary requirements of Federal Rule of Civil Procedure

2  56 and the Federal Rules of Evidence, and should be excluded.  In particular:

3  •  Dr. Zada has not been offered, and does not qualify, as an expert.

4  •  Dr. Zada's testimony as a fact witness is objectionable on a host of grounds

5  (including hearsay, speculation, lacking in foundation, lay opinion, and irrelevant), and

6  therefore is inadmissible in its entirety.

7  •  The testimony of Mr. Chumura, who Plaintiff has said is not being offered

8  as an expert (Joint Stipulation re: Motion for Protective Order, Supp. Jansen Decl., Ex.

9  12 at 3, 4), is not based on personal knowledge, is speculative and unreliable,

10  constitutes improper lay <u>and</u> expert opinion, and also is inadmissible in its entirety.

11  In the absence of any admissible evidence disputing A9.com's showing,

12  A9.com's motion for summary judgment must be granted.

13  **III.  THE UNDISPUTED FACTS AND THE NINTH CIRCUIT'S PRIOR
         DECISIONS REQUIRE SUMMARY JUDGMENT ON PERFECT 10'S**
14  **DIRECT AND CONTRIBUTORY INFRINGEMENT CLAIMS**

15  Perfect 10 defers to the end of its opposition brief a half-hearted, lumped-

16  together argument that this Court should ignore its prior legal rulings, and the Ninth

17  Circuit's subsequent thoroughly researched and published substantive rulings affirming

18  and reiterating the applicable legal standards, as nothing more than "preliminary"

19  rulings on direct and vicarious infringement that should be either ignored or

20  "reconsidered."  (Opp. at pp. 21-25.)  This Court should reject Perfect 10's effort to re-

21  argue legal standards established by the Ninth Circuit, not just in *Amazon.com*, but also

22  in other cases such as the clearly final decision in *Visa International, supra*.  This Court

23  also should decline Perfect 10's implicit request for reconsideration of its prior rulings.

24  The notion that the extensive, thoroughly researched decision and holdings of the

25  Ninth Circuit in this case can be ignored as "preliminary" makes no sense.  The Ninth

26  Circuit published its decision after not just the parties, but literally dozens of amici,

27  ranging from the American Library Association to the Motion Picture Association and

28  Recording Industry of America, submitted briefs and argued in this closely watched

1   case.  *See Amazon.com*, 508 F.3d at 1153-54.  The Ninth Circuit has made clear that

2   conclusions on pure issues of law made at the preliminary injunction stage constitute

3   binding law of the case.  *Ranchers Cattlemen Action Legal Fund v. United States Dept.*

4   *of Agriculture*, 499 F.3d 1108, 1114 (9th Cir. 2007) (citations omitted).

5      Accordingly, the Ninth Circuit's affirmance of this Court's "server test" for

6   direct liability, *Amazon.com*, 508 F.3d at 1159-63, and its clear rule of law that a search

7   engine such as Google cannot be vicariously liable for the infringement even by

8   websites with whom it has direct advertising contracts permitting it to terminate their

9   accounts, *id.* at 1173-74, must be applied here.  Indeed, the Ninth Circuit has cited and

10  followed the relevant *Amazon.com* vicarious liability "control" test in subsequent cases,

11  including *Visa International, supra*.  So clearly, the Ninth Circuit itself believes

12  *Amazon.com* is binding precedent.  When Perfect 10 asks this Court to ignore binding

13  precedent, it is simply rearguing arguments that it and its supporting amici have now

14  lost <u>three</u> times on appeal -- twice in the Ninth Circuit and when the Supreme Court

15  denied Perfect 10's certiorari petition in *Visa International,* 128 S. Ct. at 2871.

16      **A.    A9.com Does Not Directly Infringe**

17      Applying the "server test" adopted by this Court and affirmed by the Ninth

18  Circuit as the correct test for claims of direct infringement over the Internet, A9.com

19  clearly is entitled to summary judgment that it does not directly infringe.  Indeed,

20  plaintiff concedes it is undisputed that "A9.com does not, and never did store any

21  images, either thumbnail or actual size) on its servers."  Perfect 10's Response to

22  A9.com Statement of Undisputed Fact No. 13.

23      In *Amazon.com*, the Ninth Circuit explained that the A9.com functionality at

24  issue and then offered by both A9.com and Amazon.com[5] was not a search engine since

25  _____

26  [5] During 2004-2005, visitors of Amazon.com could use a "A9.com" search window
    located on the Amazon.com website.  Amazon.com discontinued the A9.com search
27  functionality in 2006.

28

1   the A9.com functionality:

2       . . . gave its users the impression that Amazon.com was

3       providing search results, but Google communicated the search

4       results directly to Amazon.com users.  Amazon.com routed

5       users' search queries to Google and automatically transmitted

6       Google's responses (i.e., HTML instructions for linking to

7       Google's search results) back to its users.

8   508 F.3d at 1157.  It is undisputed that A9.com continues to operate this way with

9   respect to its challenged Internet research functionality.  A9.com does not itself search

10  or index the web, nor does it store thumbnail or other images on its servers.  (Leblang

11  Decl., ¶¶ 16-19, 28; Amacker Decl., ¶¶ 4-6, 8-9.)  In response to user queries, A9.com

12  simply relays HTTP code that directs the user's browser to retrieve text and images

13  from other websites' servers.  (Amacker Decl., ¶¶ 4-6.)  Accordingly, since Perfect 10

14  still cannot -- more than three years after this case was filed -- present any evidence that

15  A9.com itself stores and serves any Perfect 10 copyrighted images to any users,

16  A9.com is entitled to judgment on Perfect 10's direct infringement claim.[6]

17       **B.**    **A9.com Cannot Be Liable For Vicarious Infringement**

18      Perfect 10 has lumped so many irrelevant arguments together (Opp. at 21-24), it

19  is virtually impossible to understand why it thinks it has evidence establishing that, as

20  required to impose vicarious liability on A9.com, A9.com has "the right and ability to

21  control the infringing activity" of the alleged third party infringing websites it purports

22  to identify in its opposition declarations.  *Visa International*, 494 F.3d at 803.  A9.com

23  simply does not have (and Perfect 10 therefore has failed to introduce evidence of)

24  _____

25  [6] Perfect 10 has attached, but does not argue, one page from A9's contract with
    Microsoft which provides that "Customer <u>may</u> cache and store any and all Microsoft

26  Search Results."  (Mausner Decl. Ex. H.)  But the fact that A9.com <u>may</u> have been
    entitled to do something does not constitute evidence that A9.com actually did store any

27  Perfect 10 images -- or any other search results from Microsoft -- on its servers.

28

"contracts with third-party [infringing] websites that empower [A9.com] to stop or limit [the websites] from reproducing, displaying and distributing infringing copies of Perfect 10 images on the Internet." *Amazon.com*, 508 F.3d at 1173.  A9.com "ha[s] no absolute right to stop that activity -- [it] cannot stop websites from reproducing, altering or distributing infringing images." *See Visa International*, 494 F.3d at 804-05.

Lacking any evidence of A9.com's necessary contractual right to stop unrelated websites from displaying its copyrighted materials, Perfect 10 makes garbled, incorrect arguments, erroneously claiming, for example, that "the Ninth Circuit concluded that Amazon lacked a direct financial interest in the A9 search engine." (Opp. at 23:7-8, citing *Amazon.com*, 508 F.3d at 1176.)  The Ninth Circuit said no such thing, and the assertion is incoherent.  Nor does Perfect 10's repeated allusions to purported advertising revenue or other financial benefit matter, because this Court and the Ninth Circuit already have recognized that without the requisite control, financial benefit is irrelevant.  *Visa International*, 494 F.3d at 802 (credit card companies might get financial benefit, but no contractual right to control infringing websites); *Amazon.com*, 508 F.3d at 1173-75 (same as to Google search engine); *see also Perfect 10 v. Google, Inc.*, 416 F. Supp. 2d 828, 856-57 (C.D. Cal. 2006), *aff'd in part, rev'd in part and remanded*, 487 F.3d 701 (9th Cir. 2007) (same: plaintiff must prove (1) that A9.com "enjoys a direct financial benefit from the infringing activity of third party websites; and (2) that [A9.com] declined to exercise the right and ability to supervise or control the infringing activity").  In point of fact, although not relevant, A9.com is not and never was "receiving payments from websites that steal or sell virtually every image in Perfect 10's library" (Opp. at 22), and all the purported evidence of Clickriver and related speculation of Norman Zada to that effect is completely unfounded.  *See* Declaration of Gil Sheinfeld in Supp. of Motion to Strike, ¶¶5-9.

Perfect 10 also argues that the "determinative test . . . *should* be whether A9 can limit infringement engaged in by such sites by controlling A9's own premises (in this case A9's own index)."  (Opp. at 23, emphasis added.)  Again, the Ninth Circuit has

1  already rejected this argument in *Amazon.com*, pointing out that this is a *contributory*

2  infringement, not a *vicarious* infringement issue.  508 F.3d at 1174-75.

3      Finally, Perfect 10 appears to assert that A9's Clickriver program contains a form

4  contract that permits A9.com to terminate its agreement with a member advertiser "at

5  any time, with or without cause."  (Zada Decl., Ex. 14 at 23.)  <u>First</u>, A9.com's

6  Clickriver program was never put at issue by Perfect 10 in this case (*see* Jansen Supp.

7  Decl., ¶¶ 3-4 & Exs.7-8).  In any event, Clickriver is a complete red herring.  Perfect 10

8  has not submitted any evidence regarding any Clickriver-affiliated advertisers, that any

9  such advertisers are infringing Perfect 10 copyrights, or that the Clickriver program has

10  any relationship whatsoever to the A9.com Internet search functionality at issue in this

11  case.  Indeed, the Clickriver informational material submitted by Plaintiff states very

12  clearly that "Clickriver Ads lets advertisers place sponsored links *on Amazon.com*," <u>not</u>

13  on the <u>A9.com</u> website.  (Zada Decl., Ex. 12, emphasis added.)  The evidence

14  submitted by Plaintiff also states that sponsored links *may* be provided by Clickriver <u>or</u>

15  <u>by third parties</u> (such as Google) (Zada Decl., Ex. 15), and there is no evidence in the

16  record that the sponsored links came from Clickriver at all.  In fact, they did not.

17  Sheinfeld Decl., ¶¶6-8.

18      But, even if we assumed (without admissible evidence) that Clickriver were

19  A9.com's version of Google's "AdSense" program, the Ninth Circuit, in both *Visa*

20  *International*, 494 F.3d at 803-04, and in this case, already has expressly rejected

21  Plaintiff's argument that the contractual right to terminate such an account is enough to

22  make out the requisite control:

23          Perfect 10 does point to Google's AdSense agreement, which

24          states that Google reserves "the right to monitor and terminate

25          partnerships with entities that violate others' copyright[s]."

26          *Perfect 10*, 416 F.Supp.2d at 858.  However, Google's right to

27          terminate an AdSense partnership does not give Google the

28          right to stop direct infringement by third-party websites.  An

1    infringing third-party website can continue to reproduce,

2    display, and distribute its infringing copies of Perfect 10

3    images after its participation in the AdSense program has

4    ended.

5  *Amazon.com*, 508 F.3d at 1173-74; *see also Visa International*, 494 F.3d at 803-04.

6    Because Perfect 10 has not submitted any relevant evidence of A9.com's right to

7  control, summary judgment should be granted on A9.com's vicarious infringement

8  claim.

9  **IV.   A9.COM QUALIFIES FOR THE DMCA SECTION 512(a) "SAFE HARBOR" AND IS THEREFORE IMMUNE FROM LIABILITY FOR COPYRIGHT INFRINGEMENT (DIRECT, CONTRIBUTORY OR VICARIOUS)**

10

11

12  **A.   The Ninth Circuit Has Not Rejected A9.com's Section 512(a) Defense, "Implicitly" Or Otherwise**

13    Perfect 10 makes the mind boggling assertion that the Ninth Circuit somehow

14  rejected A9.com's DMCA Section 512(a) affirmative defense.  (Opp. at 13-14.)  The

15  Ninth Circuit's decision clearly states exactly the opposite.  The Ninth Circuit

16  recognized that both A9.com and Google had asserted DMCA defenses (*see, e.g.*, 508

17  F.3d at 1158, 1175, 1176, 1177), and recognized that this Court had not reached those

18  defenses (*id.* at 1175, 1176, 1177).  The Ninth Circuit also recognized that the asserted

19  DMCA safe harbors under "sections 512(a) through (d) limit liability," without

20  disparaging A9.com's Section 512(a) immunity defense (*id.* at 1158), and declined to

21  address A9.com's asserted Section 512(a) defense because there was an inadequate

22  record for review (*id.* at 1177).  The Ninth Circuit concluded:

23    [T]he district court did not consider whether Google and

24    Amazon.com are entitled to the limitations on liability set

25    forth in title II of the DMCA.  The question whether Google

26    and Amazon.com are secondarily liable, and whether they can

27    limit that liability pursuant to title II of the DMCA, raise fact-

28    intensive inquiries, potentially requiring further fact finding,

1   and thus can best be resolved by the district court on remand.

2   508 F.3d at 1177.  Clearly the Ninth Circuit did not reject or prejudge A9.com's Section

3   512(a) affirmative defense – implicitly or otherwise; but instead remanded so this Court

4   would have the opportunity to consider the defense.

5           **B.**    **A9.com Can Qualify Under Section 512(a) Even If It Is Also A "Search Engine" Or "Information Locator"**

6

7         A9.com is not a "search engine," no matter how its services were described in the

8   press release issued when it launched in October 2004.  The Ninth Circuit explained

9   that a "search engine," such as Google operates, is web crawling and indexing software,

10   *i.e.*, "a software program that automatically accesses thousands of websites (collections

11   of web pages) and indexes them within a database store on [its] computers."

12   *Amazon.com*, 508 F.3d at 1155.  The A9.com functionality at issue never included this

13   software, so A9.com is not a "search engine" as defined by the Ninth Circuit.  In fact,

14   as the undisputed evidence on this motion shows, and as also summarized by the Ninth

15   Circuit previously, A9.com:

16           . . . gave its users the impression that Amazon.com was

17           providing search results, but Google communicated the search

18           results directly to Amazon.com's users.  Amazon.com routed

19           users' search queries to Google and automatically transmitted

20           Google's responses (i.e., HTML instructions for linking to

21           Google's search results) back to its users.

22   *Id*. at 1157.  A9.com is not a true search engine, like Google or Yahoo, for example,

23   because A9.com does not crawl, search or index the Internet; A9.com does not "cache"

24   or store indexed content on its servers; and A9.com does not apply proprietary

25   algorithm or other techniques to return search results in response to researchers'

26   queries.  (Leblang Decl., ¶¶ 14-25; Amacker Decl., ¶¶ 4-9.)  Mr. Amacker testified

27   repeatedly at his deposition that A9.com is not a search engine.  (Amacker Depo. at

28   57:4-15, 57:19-58:5, 63:13-18, 94:22-6, 121:16, 192:14-19.)

1   But it does not matter, for purposes of determining A9.com's qualifications for

2   the Section 512(a) safe harbor, whether A9.com is a "search engine" or not.  Perfect 10

3   insists, and A9.com agrees, that A9.com definitely is an "information location tool,"

4   and therefore qualifies under the Section 512(d) safe harbor.  But A9.com is not limited

5   to the Section 512(d) safe harbor.  Contrary to Perfect 10's argument, the fact that

6   A9.com qualifies under Section 512(d) does not prevent A9.com from *also* qualifying

7   under Section 512(a).  The DMCA expressly provides that a service provider can

8   qualify for more than one "safe harbor":

9   > Subsections (a), (b), (c) and (d) describe separate and distinct

10  > functions for purposes of applying this section.  Whether a

11  > service provider qualifies for the limitation on liability in any

12  > one of those subsections shall be based solely on the criteria

13  > in that subsection, *and shall not affect a determination of*

14  > *whether that service provider qualifies for the limitations on*

15  > *liability under any other such subsection*.

16  17 U.S.C. § 512(n) (emphasis added).[7]

17  The legislative history, as quoted by this Court in *Ellison v. Robertson*, 189 F.

18  Supp. 2d 1051, 1067 (C.D. Cal. 2002), *aff'd in part, rev'd in part and remanded*, 357

19  F.3d 1072 (9th Cir. 2004), cites the example of a service provider that "provides a

20  hyperlink to a site containing infringing material which it then caches on its system in

21  order to facilitate access to it by its users," and therefore could qualify as a safe harbor

22  under any of (a), (b) and (d).  *Ellison* itself addressed whether America-On-Line

23  ("AOL") qualified under both (a) and (c); the district court granted summary judgment

───────────────────

25  [7] Perfect 10 apparently believes, as a matter of policy, that search engines and
    information location tools *should* not be able to qualify for Section 512(a) immunity.
26  (Opp. at 16 n.8.)  That is not the issue.  Under the clear language of the statute, it is
    clear that they *can* so qualify.  *See* 17 U.S.C. § 512(n).  This Court should not modify
27  the provisions of the DMCA simply because Perfect 10 disapproves of them.

1  for AOL as to Section 512(a) so did not need to reach the Section 512(c) question.  *Id.*

2  at 1067 & n.2.  The Ninth Circuit reversed and remanded for resolution of the question

3  whether AOL's notification procedures were adequate, but did not otherwise alter the

4  district court's conclusions.  *Ellison v. Robertson*, 357 F.3d 1072, 1080-81 (9th Cir.

5  2004); *see also A&M Records, Inc. v. Napster, Inc.*, 54 U.S.P.Q.2d (BNA) 1746 at *19

6  (N.D. Cal. 2000) ("the potential applicability of subsection 512(d) does not completely

7  foreclose use of the 512(a) safe harbor as affirmative defense," citing 17 U.S.C. §

8  512(n)).  Thus, again, Plaintiff's argument is nothing but a red herring to distract the

9  Court from the fact that as set forth below, the undisputed evidence establishes that

10  A9.com meets all of the requirements for DMCA immunity under Section 512(a).

11     **C.    Section 512(a) Is Not Limited To "Telephone Companies," "Cable Providers," Or Other Entities That Transmit Copyrighted Materials Through Their System**

12

13     Perfect 10's argument that Section 512(a) "does not apply to websites" (Opp. at

14  15) is manifestly unsupported by any sort of authority.  Section 512(a) is concerned

15  with conduits, but that does not mean it is limited to just cable and phone services.

16  A9.com is aware of no authority that reads such a limitation into the statute.  To the

17  contrary, courts have held that websites and providers of search and other services *do*

18  qualify for Section 512(a) immunity – including this Court (per Judge Cooper), which

19  held that AOL.com met the requirements of Section 512(a) in *Ellison*, and was upheld

20  in this respect by the Ninth Circuit.  *Ellison*, 357 F.3d at 1080-81; *see also CCBill*, 488

21  F.3d at 1115-16 (provider of service allowing users to pay for subscriptions and

22  memberships over the Internet could qualify for Section 512(a) immunity if statutory

23  requirements were met).[8]

24

---

25

26  [8]  The cases cited by Perfect 10 in support of this argument are completely inapposite; they address the scope of the subpoena power under 17 U.S.C. § 512(h).  *See In re Charter Communications*, 393 F.3d 771 (8th Cir. 2005); *Recording Industry Ass'n of America v. Verizon Internet Services, Inc.*, 351 F.3d 1229 (D.C. Cir. 2003).

27

28

1    Moreover, the Ninth Circuit already has rejected the argument that A9.com

2    cannot qualify for Section 512(a) protection because it does not transmit infringing

3    material itself.  As the Ninth Circuit pointed out, such a result would be "perverse."

4    *CCBill*, 488 F.3d at 1116.  Remarkably, even though A9.com anticipated this argument

5    and therefore quoted extensively from *CCBill* on this issue (*see* Opening Br. at 15),

6    Perfect 10 does not mention or attempt to distinguish the dispositive holding in *CCBill*.

7    **D.     The A9.com Functionality At Issue Satisfies Every Requirement Of
         Section 512(a)**

8

9    As set forth in A9.com's opening brief, A9.com meets all five of the statutory

10   requirements for safe harbor protection under Section 512(a).  Once again, Perfect 10

11   provides the Court with no admissible *evidence* to establish a genuine issue of material

12   fact as to any of those elements.

13   Perfect 10 only even attempts to refute A9.com's showing as to *one* of the five

14   statutory requirements.  <u>First</u>, Perfect 10 argues that A9.com does not transmit material

15   through its system or network because it did not describe the system or network.  This

16   argument is nonsensical on its face.  Mr. Amacker states in his declaration that search

17   queries and results pass through A9.com's systems.  (Amacker Decl., ¶ 6.)  And

18   Jonathan Leblang also described  the operation of A9.com's system at length.  (*See,*

19   *e.g.*, Leblang Decl., ¶¶ 15-29.)  Perfect 10 identifies no evidence to the contrary.  It is

20   true that, as Mr. Amacker testified, the search queries are sent from the user to A9.com

21   and from A9.com to the search provider over the Internet; correspondingly, the search

22   results are transmitted back to A9.com and from A9.com to the user over the Internet.

23   Given that A9.com is an Internet service provider, one would certainly expect it to use

24   the Internet for its communications.  But this does not mean that the search queries and

25   results do not also pass through A9.com's systems, as Mr. Amacker stated in his

26   declaration.  It would certainly be anomalous for an Internet service provider to be

27

28

1   disqualified from DMCA protection because it makes use of the Internet, and Perfect 10

2   supplies no authority (nor could it) for this absurd proposition.[9]

3       Second, Plaintiff also asserts – again, contrary to the undisputed evidence – that

4   A9.com "substantially modifies the material it transmits." (Opp. at 17.) In fact, the

5   uncontroverted evidence demonstrates that A9.com does not modify search results in

6   any way, but simply transmits them to the user that formulated the search query. (See

7   Amacker Decl., ¶ 6; Amacker Depo. at 163:22-164:25 (A9.com does not add to or

8   modify search results), 173:2-15 (A9.com does not change the order of search results),

9   174:14-22 (search results "are provided as is").)

10      The fact that A9.com may also provide additional information to its users when it

11  renders the search results does not mean that A9.com modifies the *content* of the search

12  results. (Amacker Depo. at 166:1-7 (search results are provided intact, even though

13  A9.com may add additional information).) And it is the content of the search results,

14  not its formatting, look or any other extraneous material that may be added by A9.com,

15  that is at issue. *See* 17 U.S.C. § 512(a)(5); *House Commerce Committee Report on the*

16  *DMCA*, H.R. Rep. 105-551 pt. 2 at 63 (105th Cong. 2d Sess.) ("H.R. Rep.") ("An entity

17  is not disqualified from being a [§ 512(a)] 'service provider' because it alters the form

18  of the material, so long as it does not alter the content of the material.").

19      Plaintiff further asserts that A9.com *must* be modifying the search results,

20  because the results furnished directly by A9.com's search providers sometimes differ

21  from those furnished by A9.com. But there is no *evidence* that this discrepancy is due

22  to any conduct by A9.com, and in fact (contrary to Plaintiff's characterization of his

23  _____

24  [9] The case relied upon by Perfect 10, *A&M Records, Inc. v. Napster, Inc.*, 54
    U.S.P.Q.2d (BNA) 1746 (N.D. Cal. 2000), is distinguishable on its facts. In that case,

25  Section 512(a) immunity was unavailable because the defendant had expressly *denied*
    that any material was transmitted through its systems; rather, the material passed

26  directly from the user to the recipient through the Internet, bypassing Napster's system.
    *See id.* at *20-21. Here, in contrast, the undisputed evidence establishes that search

27  queries and results pass through A9.com's systems. (Amacker Decl., ¶ 6.)

28

testimony), Mr. Amacker did offer a possible explanation:

> Q.     What would those reasons be?
>
> A.     Sometimes a provider of searches [such as A9.com providers Google, Microsoft, Alexa and others] will want better results on their own site than sites they have syndicated to.  A search engine or search results provider will want better results on their own site than those they've syndicated to.

(Amacker Depo. at 126:12-127:13.)  The fact that Mr. Amacker had no foundation to testify as to why *particular* search results differed when performed on the search provider as compared with A9.com certainly does not mean that A9.com is necessarily modifying the content or the order of the results – particularly when the undisputed evidence clearly establishes that A9.com does not modify the results.

### E.     A9.com Satisfies Section 512(i), Including Implementation Of A Repeat Infringer Program

Plaintiff Perfect 10's final assertion -- again without evidentiary foundation – is that A9.com has not adopted or implemented a repeat infringer policy.  Again, Plaintiff relies on mischaracterizations of the testimony and wishful thinking, but presents the Court with no real evidence to counter A9.com's showing.

The Ninth Circuit addressed the "repeat infringer policy" requirement of the DMCA in *CCBill*:  "We hold that a service provider 'implements' a policy if it has a working notification system, a procedure for dealing with DMCA-compliant notifications, and if it does not actively prevent copyright owners from collecting information needed to issue such notifications."  488 F.3d at 1110.  "To identify and terminate repeat infringers, a service provider need not affirmatively police its users for evidence of repeat infringement."  *Id*. at 1111.[10]

---

[10] Again, Perfect 10 fails to cite or discuss this important Ninth Circuit opinion, even though it was a party to the case!

The undisputed evidence establishes that A9.com meets the "repeat infringer policy" requirement. It notifies users that it respects the intellectual property rights of others, and provides a procedure for submitting notifications under the DMCA. (Leblang Decl., ¶ 4; Amacker Decl., ¶ 11; Supp. Jansen Decl., Ex. 11.[11]) During the period when A9.com operated its Toolbar Service, it informed its account holders that it had the right to monitor activity associated with the service, investigate any reported violation of its policies, and take any appropriate action, "including terminating your access to the Toolbar Service without notice." (Amacker Decl., ¶¶ 12-13 & Ex. B; *see* Amacker Depo. at 36:18-20 ("we have a policy that allows us to terminate folks if they are doing something wrong").) The fact that A9.com never had occasion to actually terminate an account holder is irrelevant.[12] Moreover, that A9.com's policy does not use the term "repeat infringer" (Opp. at 20) is not a reason to find the policy inadequate. *See Corbis Corp. v. Amazon.com, Inc.*, 351 F. Supp. 2d 1090, 1101 (W.D. Wash. 2004) ("Although Amazon does not use the term 'repeat infringer' or precisely track the language of the DMCA, the evidence shows that Amazon has adopted a termination policy as required under § 512(i).").

Perfect 10 does not really dispute these facts, but rather, argues that the "repeat infringer policy" requirement *should* apply to A9.com's advertisers and search providers as well. (Opp. at 19.) Once again, Perfect 10's idea of what the DMCA *should* be has no bearing on whether A9.com meets the requirements for Section 512(a) safe harbor protection. The Ninth Circuit has already held that this provision does not require service providers to police their users for evidence of infringement. *CCBill*, 488 F.3d at 1111. Moreover, Perfect 10 appears to argue that "account holders and

---

[11] This document, A9.com's Terms of Use, was inadvertently omitted from Mr. Amacker's declaration.

[12] Mr. Amacker testified that A9.com has only ever received three notices of infringement. (Amacker Depo. at 41:19-20; *see* Leblang Decl., ¶ 5 & Ex. 8.)

1  subscribers" should even include websites to which its search providers link (Opp. at

2  19) – a definition that would go far beyond what Congress intended.  *See* H.R. Rep. at

3  61 n.3 ("subscribers" includes "account holders that have <u>a business relationship with</u>

4  <u>the service provider</u>") (emphasis added).

5      The undisputed evidence establishes that A9.com meets the requirements of

6  Section 512(i) by notifying its users of its copyright policy, providing a process for

7  submitting notices of infringement, and – during the period when it had subscribers and

8  account holders – making clear that they could be terminated for violation of A9.com's

9  policies.  That is all the statute requires.

10  **V.    CONCLUSION**

11      Plaintiff has not met its burden to show any genuine issue of material fact as to

12  its claims against A9.com.  For the reasons set forth above and in A9.com's opening

13  brief and evidentiary submissions, A9.com's motion for summary judgment should be

14  granted.

15  DATED:  September 29, 2008      Respectfully submitted,

16                          TOWNSEND AND TOWNSEND AND CREW LLP

17

18                          By:  ____/s/ Mark T. Jansen_____

19                              MARK T. JANSEN
                               ANTHONY J. MALUTTA

20                          Attorneys for Defendant A9.COM, INC.

21  61511164 v1

22

23

24

25

26

27

28

DEFENDANT A9.COM'S REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
Case No. CV05-4753 AHM (SHx) Consolidated with Case No. CV04-9484 AHM (SHx)

- 24 -