O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 04-9484 AHM (SHx) <br> CV 05-4753 AHM (SHx) * <br> CV 07-5156 AHM (SHx) | Date | December 22, 2008 |
|---|---|---|---|
| Title | PERFECT 10, INC. v. GOOGLE, INC., *et al.* <br> PERFECT 10, INC. v. AMAZON.COM, INC., *et al.* <br> PERFECT 10, INC. v. MICROSOFT CORPORATION | | |

| Present: The Honorable | A. HOWARD MATZ, U.S. DISTRICT JUDGE | |
|---|---|---|
| Stephen Montes | Not Reported | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys **NOT** Present for Plaintiffs:          Attorneys **NOT** Present for Defendants:

**Proceedings:**          IN CHAMBERS (No Proceedings Held)

## ORDER CONSOLIDATING CASES, STAYING *GOOGLE* AND *AMAZON* AND DIRECTING CASE MANAGEMENT FOR *MICROSOFT*

The Court directs the parties to construe and apply this Order in light of the Court's September 25, 2008 order and the various orders and hearings that have occurred thereafter. That order is attached hereto as Exhibit 1.

### A.    CONSOLIDATION

The Court consolidates these three actions for the purpose of ensuring that Google and Amazon (including A9 and Alexa) are automatically included in the Court's ECF system on all filings in *Microsoft.* The Clerk's Office is instructed to treat these cases as consolidated.

### B.    STAY PROVISIONS

1.    The Court stays *Perfect 10 v. Google* and *Perfect 10 v. Amazon.com* in their entirety. No discovery or motion practice in the two stayed cases is permitted during the stay, and no rulings will be issued on any pending motions in those cases, except that the Court will timely rule on A9's motion for summary judgment

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 04-9484 AHM (SHx)<br>CV 05-4753 AHM (SHx)<br>CV 07-5156 AHM (SHx) | Date | December 22, 2008 |
|---|---|---|---|
| Title | PERFECT 10, INC. v. GOOGLE, INC., *et al.*<br>PERFECT 10, INC. v. AMAZON.COM, INC., *et al.*<br>PERFECT 10, INC. v. MICROSOFT CORPORATION | | |

on contributory copyright infringement.[1]  It will also rule on Perfect 10's fully briefed partial summary judgment motion against Amazon and Alexa, but that motion is taken under submission and may remain so for a lengthy period.

2.   The stay will remain in place until the earliest of the following: (a) one week after the Court receives a written stipulation that *Microsoft* has settled, (b) one week after rulings on motions that resolve the last remaining copyright claims, or (c) one week after a verdict in the trial on the copyright claims.  No stay will be in effect during the pendency of an appeal from dispositive motions or trial.

3.   To ensure no prejudice to the defendants whose cases are stayed, during the pendency of the stay (a) Perfect 10 may not issue DMCA notices to those defendants; (b) Perfect 10 may not pursue any claims or damages against those defendants arising from any conduct or events during the stay period; and (c) with respect to  existing claims or claims filed for the first time in the future, Perfect 10 may not contend or establish that the defendants' actions or inactions during the stay period evidence knowledge of infringement, willfulness, or intent.  Nor may Perfect 10 point to such actions or inactions to support any claim for damages.

4.   Once the stay is lifted, Google and Amazon (including A9 and Alexa) will be permitted to argue that rulings on findings in *Microsoft* give rise to a reasonable assertion of offensive collateral estoppel or *res judicata* or both, and to seek appropriate relief.  Of course, Perfect 10 will be entitled to oppose any such argument(s).

5.   The Court makes the following findings in support of the stay.

(a) These are unusually complex cases that have posed difficult problems for all the parties and the Court, especially in discovery.  The nature, scope and scale of

---

[1] The hearing for this motion is continued from January 5, 2009 to January 12, 2009.  The opposition is due December 29, 2008 and the reply is due January 5, 2009.

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 04-9484 AHM (SHx)<br>CV 05-4753 AHM (SHx)<br>CV 07-5156 AHM (SHx) | Date | December 22, 2008 |
|---|---|---|---|
| Title | PERFECT 10, INC. v. GOOGLE, INC., *et al.*<br>PERFECT 10, INC. v. AMAZON.COM, INC., *et al.*<br>PERFECT 10, INC. v. MICROSOFT CORPORATION | | |

the infringements that Perfect 10 has alleged and the technological issues that are central to the disputes have made the cases even more complicated than such actions typically are. As evidenced by the numerous orders and status conferences since August 2008, the Court has endeavored to balance a number of considerations, including the parties', especially defendants', right to sweeping discovery, the burdens the defendants' discovery requests impose on Perfect 10, the Magistrate Judge's capacity to rule on motions involving "mega requests" (as well as this Court's capacity to rule on appeals from his rulings) and this Court's availability to rule on substantive motions and otherwise manage all these cases in light of the Court's extremely burdensome docket (exacerbated by an exploding criminal caseload). The Court has considered alternatives to this stay, including various solutions for managing these cases, such as the option of appointing a special discovery master or technical advisor.

(b) It is undisputed that the main issue in each of these cases is whether defendants may be liable for third parties' infringement of Perfect 10's copyrights. A timely resolution of the copyright claims in *Microsoft* will significantly narrow the factual and legal issues in dispute in the two stayed cases and significantly simplify the problems of proof and discovery that have complicated the resolution of all these cases. The Court selects *Microsoft* as the case to move forward first because it was already set for trial, has had fewer discovery problems, and is proceeding at a more advanced pace overall.

(c) The evolving nature of copyright law as applied to Internet service providers requires careful consideration of a wide array of factual and legal issues in all these cases, but if they proceeded simultaneously, the Court's ability to give them the timely and careful consideration each deserves would be seriously compromised. Stalled discovery notwithstanding, all the parties are preparing numerous summary judgment motions. These motions would inevitably be taken under possibly lengthy submission anyway.

(d) None of the Amazon defendants claims that a stay will prejudice its legal

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 04-9484 AHM (SHx)<br>CV 05-4753 AHM (SHx)<br>CV 07-5156 AHM (SHx) | Date | December 22, 2008 |
|----------|----------------------------------------------------------------------|------|-------------------|
| Title    | PERFECT 10, INC. v. GOOGLE, INC., *et al.*<br>PERFECT 10, INC. v. AMAZON.COM, INC., *et al.*<br>PERFECT 10, INC. v. MICROSOFT CORPORATION | | |

rights, so long as Perfect 10 is not permitted to accrue additional claims or damages against them during the stay. They only ask the Court to rule on the summary judgment motions they have already filed.

(e) Google did argue in its papers that it will be prejudiced by a delay in the determination of its legal obligations. As noted above, delay would be inevitable anyway if all three cases proceeded simultaneously. Although Perfect 10 has asserted certain unique claims against Google, with the exception of the copyright claim based on Blogger, its claims all arise from Google's search engine operations, and they pose the same or very similar analytical and discovery problems that the Court referred to above.

(f) For all these reasons, the Court finds that a stay of a reasonably short duration of both *Google* and *Amazon* will promote the fair and efficient resolution of those two cases. At the status conference on December 18, 2008, both Google and the Amazon parties conceded that a stay is a reasonable solution, given the conditions attached to the stay.

## C. **MANAGEMENT OF *MICROSOFT* CASE**

1.   Perfect 10 and Microsoft filed a Joint Status Report on November 10, 2008 detailing the significant progress that they had made toward negotiating a fair and efficient approach to the litigation. The Court agrees with and adopts Microsoft's proposal for structuring the litigation and rejects Perfect 10's opposition, criticisms or reservations. (See Joint Status Report, attached hereto and incorporated herein by reference as Exhibit 2, at 2:22-3:6.)

2.   For *Perfect 10 v. Microsoft*, the Court ORDERS that:

   (a)   Perfect 10 shall select the factual and legal combinations that it will pursue using the list in Exhibit C to the attached Joint Status Report. This must be done by not later than January 5, 2009. The following instructions apply:

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 04-9484 AHM (SHx)<br>CV 05-4753 AHM (SHx)<br>CV 07-5156 AHM (SHx) | Date | December 22, 2008 |
|---|---|---|---|
| Title | PERFECT 10, INC. v. GOOGLE, INC., *et al.*<br>PERFECT 10, INC. v. AMAZON.COM, INC., *et al.*<br>PERFECT 10, INC. v. MICROSOFT CORPORATION | | |

(i) Perfect 10 shall select at least one vicarious infringement combination.

(ii) Perfect 10 may not choose any of items N67-N70, theories of trademark infringement.  In light of the admissions it made in discovery waiving all trademark claims, Perfect 10 must seek leave from the Court to prosecute any trademark claims, state or federal.  Perfect 10 may not make such a motion until its copyright claims are resolved.

(iii) Perfect 10 may select not more than the 187,400 combinations, as it referred to in its "Answer . . . Regarding . . . Combination Scenarios" filed on December 19, 2008 and attached hereto as Exhibit 3.  The Court allows Perfect 10 to "use" such combinations only because of its assurance in Exhibit 3 that it will not designate more than 60 works to represent all these combinations.

(iv) Perfect 10 shall produce a spreadsheet listing its selected combinations using the codes in Exhibit C to the Joint Status Report.

(v) All factual and legal combinations and items from Exhibit C that Perfect 10 does not select shall be waived.  That is, as to any of the works Perfect 10 claims or in the future may claim have been infringed, Perfect 10 may not thereafter pursue any claims against Microsoft based on a waived combination.

(b)     For each combination Perfect 10 does choose to pursue, it must designate on the spreadsheet one (1) work (image) to serve as the exemplar for that combination.  Perfect 10 has represented that it will designate not more than 60 works, some or all of which can apply to or fall within more than one combination.  This designation must be provided by not later than January 20, 2009.  Microsoft may then counter-designate one work (image) for each combination selected by Perfect 10, but it is not necessarily limited to 60

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 04-9484 AHM (SHx)<br>CV 05-4753 AHM (SHx)<br>CV 07-5156 AHM (SHx) | Date | December 22, 2008 |
|---|---|---|---|
| Title | PERFECT 10, INC. v. GOOGLE, INC., *et al.*<br>PERFECT 10, INC. v. AMAZON.COM, INC., *et al.*<br>PERFECT 10, INC. v. MICROSOFT CORPORATION | | |

works, because it is not required to use a given work as an example for multiple combinations. This counter-designation must be provided by not later than February 2, 2009. These works shall serve as the basis or "sample" for later summary judgment motion practice and the basis for future extrapolation to the other works falling within that combination that Perfect 10 claims were infringed.

(c)     For each designated work, Perfect 10 must produce all the information listed in Exhibit A to the November 10, 2008 Joint Status Report, except for #13 (damages claimed). Perfect 10 shall provide this information in a spreadsheet format, preferably using the same spreadsheet referred to above, and shall provide the information to Microsoft by not later than January 20, 2009.

(d)     Unless compelling cause is shown, discovery may not take place and discovery motions may not be filed for any information other than what is required by this Section (C)(2) of this Order..

(e)     (i)     The Court sets August 11, 2009 as the trial date.

///
///
///
///
///
///
///
///
///
///

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 04-9484 AHM (SHx)<br>CV 05-4753 AHM (SHx)<br>CV 07-5156 AHM (SHx) | Date | December 22, 2008 |
|---|---|---|---|
| Title | PERFECT 10, INC. v. GOOGLE, INC., *et al.*<br>PERFECT 10, INC. v. AMAZON.COM, INC., *et al.*<br>PERFECT 10, INC. v. MICROSOFT CORPORATION | | |

(ii)    The parties shall jointly file a stipulation for the rest of the dates on the Court's "Presumptive Schedule." Their stipulation shall also include a last date by which Perfect 10 may file an amended complaint alleging and identifying additional works infringed by Microsoft. Unless modified by the Court, Perfect 10 and Microsoft must adhere strictly to this schedule. The Court is highly unlikely to grant continuances, especially if sought by Perfect 10, absent compelling reasons, such as medical emergencies. The scheduling order dated February 11, 2008 is vacated.

|  | : |  |
|---|---|---|
| Initials of Preparer | SMO | |

# Exhibit 1

O

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 04-9484 AHM (SHx) CV 05-4753 AHM (SHx) CV 07-5156 AHM (SHx) | Date | September 25, 2008 |
|---|---|---|---|
| Title | PERFECT 10, INC. v. GOOGLE, INC., *et al.* PERFECT 10, INC. v. AMAZON.COM, INC., *et al.* PERFECT 10, INC. v. MICROSOFT CORPORATION | | |

| Present: The Honorable | A. HOWARD MATZ, U.S. DISTRICT JUDGE | |
|---|---|---|
| Stephen Montes | Not Reported | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys **NOT** Present for Plaintiffs:      Attorneys **NOT** Present for Defendants:

**Proceedings:**      IN CHAMBERS (No Proceedings Held)

The Court has considered the parties' responses to the Court's minute order dated August 20, 2008 concerning discovery disputes and the appointment of a discovery master. The Court has also considered the parties' contentions and concerns regarding a variety of issues arising from the August 18, 2008 scheduling conference and the August 27, 2008 telephonic conference, including the setting of trial dates for the *Google* and *Amazon* cases. The Court does not intend to appoint either a technical advisor or a discovery master at this time.

The parties in all these cases somehow have succumbed to the all-too-frequent tendency of litigants and lawyers to get sidetracked. That is particularly regrettable in lawsuits, such as these, that are complicated, technology-driven and potentially far-reaching.[1] For the Court to manage these cases in a standard fashion, such as to treat the pending discovery motions as if they were commonplace disputes, would not advance the goal of enabling the parties either to ready these cases for Rule 56 determinations or for

---

[1] There are other considerations that compound the difficulties. Plaintiff's counsel, for example, often complains about the supposedly unfair burdens that the Goliath-like defendants subject him to. And perhaps he is right that in certain respects their strategy may be to overwhelm him. Yet Perfect 10 may have invited those problems with its sweeping claims and its own conduct in the course of discovery.

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 04-9484 AHM (SHx) CV 05-4753 AHM (SHx) CV 07-5156 AHM (SHx) | Date | September 25, 2008 |
|---|---|---|---|
| Title | PERFECT 10, INC. v. GOOGLE, INC., *et al.* PERFECT 10, INC. v. AMAZON.COM, INC., *et al.* PERFECT 10, INC. v. MICROSOFT CORPORATION | | |

meaningful settlement talks.[2]

Given the foregoing problems, as well as the enormous, ever-expanding number of the copyrighted images that Perfect 10 claims were infringed, it is necessary and appropriate for the Court to manage these cases differently. Therefore, in the exercise of its inherent and statutory authority to administer the rules of discovery in a manner that will "secure the just, speedy, and inexpensive determination of every action and proceeding," Fed. R. Civ. P. 1, the Court intends to require the parties to negotiate in good faith a method or approach that will enable them to assess the strengths and weaknesses of their respective overall "cases" and contentions based on a sample of the key pertinent facts. In other words, the parties will take an approach comparable to that of a recognized, impartial expert who uses surveys and statistical analyses to project the extent (if any) of customer satisfaction with a product or, in the trademark context, the extent of confusion among consumers as to the source or origin of goods. From the information that the parties obtain, exchange and organize, they should be able to extrapolate reliable conclusions as to where they think they can go, or want to go, from there.

Accordingly, the Court has determined that a further conference with counsel in all three cases is necessary. Accordingly, the Court ORDERS the parties in all these cases to appear for a status conference on October 6, 2008 at 1:30 p.m.. The broad purpose of the conference is to explore ways for the parties to achieve the foregoing objectives -- i.e., summary judgment and settlement readiness -- without "going the distance" via full-fledged, uncircumscribed discovery.

At the conference, the Court will invite counsel to address the following preliminary or tentative findings and proposals, which will probably be incorporated into a special Case Management Order that will issue at the same time as the scheduling

---

[2]It is highly improbable that there will be a trial in any of these cases. That is so obvious that it need not be belabored.

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 04-9484 AHM (SHx)<br>CV 05-4753 AHM (SHx)<br>CV 07-5156 AHM (SHx) | Date | September 25, 2008 |
|---|---|---|---|
| Title | PERFECT 10, INC. v. GOOGLE, INC., *et al.*<br>PERFECT 10, INC. v. AMAZON.COM, INC., *et al.*<br>PERFECT 10, INC. v. MICROSOFT CORPORATION | | |

orders for the *Google* and *Amazon* cases. The following paragraphs are numbered to facilitate discussion.

1.     Perfect 10 will have to identify each "Perfect 10  Copyrighted Work" it claims was infringed by not later than _____. Thereafter, Perfect 10 will be precluded from seeking damages for the infringement of any work not so identified.  It would, however, be entitled to injunctive relief for works identified later.

2.     In this discovery phase, the focus should be on developing information that enables the parties to assess their positions as to the secondary copyright liability claims that the Ninth Circuit addressed in *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1169-76 (9th Cir. 2007).  Among the key major factors that should be the focus of their efforts are the following:

    A.    <u>Contributory Liability</u> (see 508 F.3d at 1171-72).
        (1)    What specific infringing material did defendant learn was on or accessible through its "system"?
        (a) When?
        (b) How?
            (i)  If by way of a DMCA notice, what did the notice contain?
            (ii) Was the notice in compliance with section 512?
        (2) At the time defendant learned of the infringing image, what simple, reasonable and feasible measures, if any, did defendant have to avoid providing Internet users access to infringing images? (See 508 F.3d at 1172.) *E.g.*, what changes to its operations could defendant have made to avoid assisting infringing websites?  (See 508 F.3d at 1174-75.)

    B.    <u>Vicarious Liability</u> (see 508 F.3d at 1173-74).
        (1) At the time defendant learned of the infringing image, did defendant have a legal right to stop or limit the directly infringing conduct?
        (a) Did it have the right to terminate websites?
        (b) Did it have the right to block websites' ability to host and serve

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 04-9484 AHM (SHx)<br>CV 05-4753 AHM (SHx)<br>CV 07-5156 AHM (SHx) | Date | September 25, 2008 |
|---|---|---|---|
| Title | PERFECT 10, INC. v. GOOGLE, INC., *et al.*<br>PERFECT 10, INC. v. AMAZON.COM, INC., *et al.*<br>PERFECT 10, INC. v. MICROSOFT CORPORATION | | |

          infringing images?
       (2) Did defendant actually decline to exercise that right?
       (3) Does defendant have such a legal right currently?
       (4) At the time defendant learned of the infringing image, did defendant
have the practical ability to stop or limit infringement?
          (a) The ability to determine whether there is infringement, in the
          absence of targeted DMCA notices?
          (b) The ability to block access to infringing images?
       (5) In what manner did defendant derive a direct financial benefit from the
directly infringing conduct?  (This inquiry seeks a description; it does *not*
require a calculation of claimed damages.)

3.     In light of the large number of copyright registrations and works that Perfect 10 has placed at issue in all three cases, the Court finds that it would be both fair and feasible for Perfect 10 to create a spreadsheet along the lines contemplated by Google's Interrogatories Nos. 3 and 11, A9.com's Interrogatories Nos. 1 and 6, and Microsoft's Interrogatory No. 1 -- *but only for a selected and relatively small sample of copyrighted works.*  Such a limited spreadsheet would reduce or possibly eliminate any requirement that the parties search through all the hard drives and disorganized physical documents that Perfect 10 has provided in discovery thus far.  It also would do much to avoid or reduce further discovery disputes, promote the efficient and timely administration of these lawsuits and provide a framework for settlement.

     (a)     Based on the joint stipulations in the parties' pending motions to compel responses to those interrogatories, the Court compiled a chart, attached hereto, that displays the categories of information sought in those interrogatories, as well as the information that Perfect 10 contends it has already produced or will produce.  The Court realizes that not all those interrogatories seek identical pieces of information.  (*E.g.*, Microsoft did not request a list of infringing URLs.)  However, they all basically seek a way to enable the parties to gather and access vital identifying information about the copyrighted work in question.

O

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 04-9484 AHM (SHx)<br>CV 05-4753 AHM (SHx)<br>CV 07-5156 AHM (SHx) | Date | September 25, 2008 |
|----------|------------------------------------------------------------------------|------|---------------------|
| Title | PERFECT 10, INC. v. GOOGLE, INC., *et al.*<br>PERFECT 10, INC. v. AMAZON.COM, INC., *et al.*<br>PERFECT 10, INC. v. MICROSOFT CORPORATION | | |

(b)     The precise information required for the spreadsheet remains to be determined.  The Court doubts that all of the disputed categories reflected in the attachment need be included, but at a minimum, it would be necessary to identify the work, the registration number, chain of title information, the URL(s) of infringing websites, and the DMCA notices.  At trial Perfect 10 itself would have to introduce such information anyway, because the fact-finder would need it to determine whether the parties proved their claims (or defenses, as the case may be).  If at trial Perfect 10 sought to prove these facts through charts and summaries, it would have had to provide the underlying evidence for the charts and summaries sometime before trial.  *See* Fed. R. Evid. 1006.  The Court finds that it is "reasonable" to require it to do so at this stage, in discovery.

4.     After the entries have been made in the spreadsheet, the Court will either limit discovery to the Perfect 10 Copyrighted Works specified in the spreadsheet or require that discovery be primarily focused on those works.  In any event, the Court will order the parties to use the spreadsheet entries to extrapolate facts, based on statistically sound methods, as to the remaining works that Perfect 10 has claimed were infringed.  To implement this approach, two issues must be decided.

(a) First, what categories of information should be placed on the spreadsheet?  There are at least two ways to determine this.  The first way is for the parties to agree on what information is so vital that it should be reflected on the spreadsheet.  The second way is for the Court to make that determination.

(b) Second, which *works* will be selected for the sample that is the basis for the spreadsheet? Again, the first way to determine this is for the parties to agree.  The second is to allow Perfect 10 to select the works that will be entered on the spreadsheet, from the potentially thousands it has pointed to thus far, provided that Dr. Zada file a sworn declaration describing the methodology, including any assumptions, Perfect 10 used to select such works.

5.     What will deter Perfect 10 from skewing the designation of works in an effort to

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 04-9484 AHM (SHx)<br>CV 05-4753 AHM (SHx)<br>CV 07-5156 AHM (SHx) | | Date | September 25, 2008 |
|---|---|---|---|---|
| Title | PERFECT 10, INC. v. GOOGLE, INC., *et al.*<br>PERFECT 10, INC. v. AMAZON.COM, INC., *et al.*<br>PERFECT 10, INC. v. MICROSOFT CORPORATION | | | |

enlarge or exaggerate the number of infringements and/or damages? Simply this: Defendants will be given the opportunity to establish that the spreadsheet entries Perfect 10 chose are not fairly representative of the entire range of works in question. If they succeed, the Court likely would order Perfect 10 to develop a spreadsheet for literally every work it identified as having been infringed, and would preclude it from pursuing damages for any work not properly incorporated into such spreadsheet. In other words, the Court would return the case to conventional forms of "combat."

At the conference, the Court will also invite counsel to answer the following questions:

(a) For one copyrighted work, how much time would it take to enter all the allegedly infringing URLs onto a spreadsheet? How much time would it take to enter *all* the information tallied in the attached chart?

(b) Assume that the sample discussed above consists of 100 copyrighted works and that discovery of the facts relevant to the claims and defenses for those works has been completed. Looking at those facts in the light most favorable to Perfect 10, assume that at most Perfect 10 may succeed in proving liability for 50 works. Would such a statistical outcome help the parties resolve their dispute? What if the number were 33 out of 100?

_____ : _____

Initials of Preparer _____

**Information Sought by Defendants in Motions to Compel**

| Category | Google[1] | A9.com[2] | Microsoft[3] | Already in Perfect 10's production? |
|---|---|---|---|---|
| Unique identifier of the work | ✓ | ✓ | ✓ | |
| Copyright Registration # | ✓ | ✓ | ✓ | Y |
| Page number of document(s) containing the work | ✓ | ✓ | ✓ (just "exemplar") | |
| URLs of allegedly infringing webpage | ✓ | ✓ | | Y |
| Date of DMCA notice sent | ✓ | | ✓ | Y |
| Damages claimed | ✓ | ✓ | ✓ | |
| Date of and particular conduct constituting the infringing act | | ✓ | | Y |
| Search term and other instructions or events used to cause the infringing display | | ✓ | | |
| Indicate thumbnail or full-size image | | ✓ | | |
| Copyright registrations of compilations or derivative works incorporating the work | | | ✓ | |
| Documents showing chain of title | | | ✓ | Y |
| Date of first publication of the work | | | ✓ | Y |
| Persons depicted | | | ✓ | |

---

[1]Google's Interrogatory No. 11. See Joint Stipulation Re. Google Inc.'s Motion to Compel Further Responses to Google's Interrogatories Nos. 3 and 11, p. 52.

[2]A9.com's Interrogatories No. 1 and 6. See Joint Stipulation Re: Defendant A9.com's Motion to Compel Perect 10's Responses to A9.com's First Set of Interrogatories Nos. 1, 2, 4, 5, 6, pp. 7, 41-42.

[3]Microsoft's Interrogatory No. 1. See Joint Stipulation Re Microsoft's Motion to Compel A Response to Interrogatory No. 1 and To Determine the Sufficiency of Responses to Requests for Admission, pp. 7-8.

# Exhibit 2

Andrew P. Bridges (SBN: 122761)
abridges@winston.com
Jennifer A. Golinveaux (SBN: 203056)
jgolinveaux@winston.com
Matthew A. Scherb (SBN: 237461)
mscherb@winston.com
WINSTON & STRAWN LLP
101 California Street
San Francisco, CA  94111-5894
Telephone:   415-591-1000
Facsimile:   415-591-1400

Attorneys for Defendant
MICROSOFT CORPORATION

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PERFECT 10, INC., | **Case No. CV07-5156 AHM (SHx)** |
| Plaintiff, | **JOINT STATUS REPORT** |
| vs. | |
| MICROSOFT CORPORATION, | |
| Defendant. | |

On October 6, 2008, the Court ordered counsel for Perfect 10 and Microsoft to meet and discuss, in good faith, methods for moving this litigation forward. In particular, the Court asked the parties to discuss the possibility of gathering a useful sample set of facts and using those facts to present representative arguments to the Court, allowing the Court to make rulings that would give the parties a clear idea of their strengths and weaknesses.

Counsel for Perfect 10 and Microsoft met in person on October 23, 2008 at the Los Angeles office of Winston & Strawn. Counsel conferred for approximately six hours.

Counsel discussed two main topics: first, the kind of information or discovery Perfect 10 would need to provide about its copyrighted works in order to establish the basic elements of its case and create a meaningful sample of evidence that the parties could use in analysis of the case, possibly in motions to streamline the case, and, if need be, at trial; and second, a method for selecting representative works or types of infringement about which Perfect 10 would furnish information.

On the first topic, Perfect 10 and Microsoft were, with a few exceptions, able to agree on the kind of information Perfect 10 should provide.

Exhibit A to this Status Report is a version of a document that Microsoft's counsel created during the October 23, 2008 conference that outlines the parties' positions, agreements, and disagreements on what information Perfect 10 should provide. Both sides agreed that this document was tentative and subject to client approval and further discussions.

Microsoft has since approved this document.

Perfect 10 continues to have a few concerns. In some cases, Perfect 10 is limited as to what information it can provide. For example, for all standard DMCA notices (that is notices that appear as spreadsheets), Perfect 10 may be limited to the information that appears on the spreadsheet, which would be the URL appearing in the left column, the search term appearing in the middle column, and whatever appears in

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

the right column relating to the location of the original infringed image(s).  For later notices, which include Adobe downloads of actual infringing webpages, there would be more information available.  It would be immensely time consuming for Perfect 10 to find *all* notices covering a particular image, but Perfect 10 can specify at least one notice per image, which should be sufficient for the sample.  One of the pieces of information that Microsoft has said that it wants included is the "Microsoft URL and the URL of the underlying infringement."  Exhibit A, page 2, item 8.  The "Microsoft URL" might be non-existent, for example for linking to usenet sites or free sites, but Perfect 10 would provide the information where available, for example for image search.

Microsoft believes that Perfect 10's offer to identify only one alleged DMCA notice per work is not workable, unless Perfect 10 agrees that it is not seeking to hold Microsoft liable based on any unidentified notice, or unless Perfect 10 agrees to the representative fact scenario approach Microsoft has proposed to whittle down the legal issues in this case.  Microsoft needs the identity of all alleged DMCA notices that reference infringements of a particular work, so that it can understand the allegations in the case..

On the second topic, the method of selecting representative works or infringement claims, the parties exchanged more varied ideas.

Perfect 10 suggested allowing each side to pick a finite number of works, not to exceed 50 total works.

Microsoft believes the proper focus should be on representative scenarios that Perfect 10 alleges create liability for Microsoft, not on the number of works.  The only way to streamline the case is to for Perfect 10 to identify scenarios that it alleges create liability for Microsoft, so that the Court can apply the law to those scenarios.  The works chosen must serve the relevant factual and legal scenario the case presents.

Therefore, Microsoft proposed a structured approach in which the parties would first agree on scenarios that represent the application of Perfect 10's various legal

2

theories to Microsoft's alleged behaviors at issue in this case.  Then, for each scenario, Perfect 10 would select a particular work to serve as the evidence necessary for having the Court resolve that particular factual and legal scenario.  Microsoft could then designate one additional work for each scenario.  Finally, Perfect 10 would furnish the agreed-upon information for the set of scenarios and works identified, which should give the parties the sample of evidence necessary to test the full range of their claims.

Exhibit B to this Status Report is an email Microsoft's counsel sent to Perfect 10's counsel and Dr. Zada of Perfect 10 during the meeting in Los Angeles.  It is the result of a brainstorming session about the various combinations of factual and legal scenarios that the Court would need to address at some point.  Exhibit C to this Status Report is a proposal Microsoft has sent to Perfect 10 to facilitate the parties' selection of factual and legal scenarios.  Perfect 10 wants to point out that Exhibit C contains approximately 6,451,200,000 combinations and that it is not clear how to determine which category a work would be classified in.  Microsoft responds that the number of factual scenarios is entirely in Perfect 10's hands, and if Perfect 10 identifies which scenarios or combination of facts it relies upon, the task will likely become manageable at once.

During their October 23, 2008 meeting, the parties also discussed other possible methods of selecting works, including using various randomization methods and choosing works with various models or publication dates.  However, it appears that the key is selecting fact scenarios and representative works that will give Perfect 10 the best opportunity test its claims.

The parties also discussed the possibility of selecting scenarios and choosing representative works in phases and presenting the related issues to the Court in phases, which could reduce the immediate burden on Perfect 10   But the parties did not reach an agreement on whether or how this would happen.

Perfect 10 believes that the current motions for summary judgment regarding A9, Amazon, and Alexa are helping it and the involved defendants to focus on the

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

important issues.  Google has notified Perfect 10 that it will soon be filing a motion for summary judgment, and Perfect 10 has notified Google that it will be making a cross-motion for summary judgment on those issues.  Perfect 10 believes that these summary judgment motions are the best way to focus in on the issues that have to be decided.  It is Perfect 10's view that the letter that Microsoft sent on November 7, containing a long list of Microsoft's perceived issues and suggesting a sample with millions of factual combinations, is not the way to proceed.  Perfect 10 will discuss this further with Microsoft.  While Perfect 10 is not adverse to creating a chart for a limited number of images covering 8-12 pieces of information per image, Perfect 10 still believes that the case would be greatly simplified by focusing on the approximately 120 massive infringing websites that are responsible for 98% of the infringement of Perfect 10's copyrights, rather than individual infringing images.

Microsoft believes that any summary judgment motion from Perfect 10 concerning Microsoft's alleged liability will have to rely on evidence of real works and real infringements, and Perfect 10 has consistently avoided providing specifics. Microsoft would welcome further discussion with Perfect 10 about limiting the case to alleged infringement on certain websites and using certain related works as a paradigm for summary judgment purposes, without conceding that Perfect 10 may prove its case by using sampling techniques.  At trial, Perfect 10 must prove every infringement it alleges.

The parties believe that further discussions on these matters would be fruitful and propose that the Court order the filing of a subsequent status report after such discussions, or that the Court hold a status conference to guide the parties forward.

Perfect 10 is currently working on its Reply papers in connection with the Alexa/Amazon summary judgment motion, and is contending with an overwhelming barrage of discovery issues from Google, most of which have nothing to do with summary judgment or sampling issues, so Perfect 10 will need some time to respond to that portion of Microsoft's November 7 proposal which deals with millions of

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

1  factual combinations.

2      Finally, in Microsoft's view, as explained above,, the complexity and burden of

3  the information Microsoft seeks directly flows from the complexity and burden caused

4  by Perfect 10's own case and claims.  Shortly after the October 6, 2008 hearing,

5  Microsoft, on the Court's advice and to further help streamline the case, served a

6  number of requests for admission asking Perfect 10 to admit that it would no longer

7  pursue certain legal theories.  In its cover letter enclosing the requests, Microsoft

8  stressed the importance of a timely response.  Perfect 10's counsel, claiming

9  inundation with work, has requested a 15-day extension to respond to these requests

10  for admissions and other discovery.  Microsoft has agreed to the extension, as a

11  courtesy, but any delay on Perfect 10's part in its response to Microsoft's discovery or

12  to Microsoft's proposals for this case may delay streamlining.  Until Perfect 10

13  decides to forgo some parts of the case, Microsoft will continue to need all the

14  information set forth in its proposed framework.

15      Perfect 10 does not agree that the case is all that complicated.  Most of the

16  infringements of P10 Images are on approximately 120 massive infringing websites.

17  Rather than all of the minor issues that Microsoft raises resulting in millions of

18  combinations, Perfect 10 believes that the issues of whether Perfect10's notices are

19  compliant and whether Microsoft acts properly in response to those notices are more

20  important.  Perfect 10 will continue to work with Microsoft to shape a working

21  sampling process to allow summary judgment motions to proceed.

22

23                              Respectfully submitted,

24  Dated:  November 10,  2008      WINSTON & STRAWN LLP

25                      By:    /s/ - Matthew Scherb
26                              Andrew P. Bridges
                                Jennifer A. Golinveaux
27                              Matthew A. Scherb

28                              Attorneys for Defendant
                                Microsoft Corporation

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

5

1   Dated:  November 10,  2008          LAW OFFICES OF JEFFREY N. MAUSNER

2                                        By:   /s/ - Jeffrey N. Mausner (with permission)
                                               Jeffrey N. Mausner
3                                              Attorneys for Plaintiff
                                               Perfect 10, Inc.
4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Winston & Strawn LLP**
**101 California Street**
**San Francisco, CA  94111-5894**

6

1.      **Unique Identifier of P10's Claimed Work (old 1)**

This needs to be something static and objectively verifiable. Options under consideration are (1) URL of the image on the perfect10.com web site, as reproduced on stable media, such as CD-R or DVD-R; (2) reference to a image as it appeared in the Perfect 10 Magazine, by filepath location as P10 reproduced the magazines in its hard drive production. If Perfect 10 claims works that are neither on the website nor in the magazine, we need a reliable means of identifying them.

2.      **Copyright Registration Number (old 2)**

This should be the number of the copyright registration that Perfect 10 considers to be the principal registration for the work. It may be, but is not necessarily, the first registration of the work. (For example, if a work appeared in a compilation that received the first registration, but the work later received an individual registration, the later registration would be considered the principal registration for that work. If for some reason the same work receives multiple individual registrations, the first individual registration is likely the principal one.)

3.      **Exemplar of the Work (old 3)**

So long as an exemplar of the work is visible at a location that Perfect 10 specifies in response to no. 1 above, there is no need for a separate identification of an exemplar here.

4.      **Documents Showing Chain of Title  (old 11)**

Perfect 10 claims ownership of copyright either by virtue of "work made for hire" ownership or assignment. Perfect 10 will furnish a complete chain of title from the photographer to Perfect 10. If Perfect 10 has previously furnished the documents in the hard drive production, reference to the drive and filepath location will suffice. If Perfect 10 has not previously furnished the documents on the hard drive, Perfect 10 will furnish the documents and a handy reference to them.

5.      **Date of First Publication of the Work (old 12)**

This will usually be readily identifiable from the earliest copyright registration, but if not, Perfect 10 will provide the date.

6.      **Persons Depicted (old 13)**

This should include both the stage name (if any) and the real name of the persons depicted in the image

7.      **Copyright Registration Numbers of Derivative Works and Compilations Containing the Claimed Work (old 10)**

EXHIBIT A
Page 7

If a claimed work consists of a single image, and for example if the image appeared in two issues of Perfect 10 Magazine and on the perfect10.com website for which Perfect 10 has secured copyright registrations, then the response should include numbers of those compilation or derivative work registrations. ***THE PARTIES DISAGREE AS TO WHETHER THE RESPONSE SHOULD INCLUDE THIS INFORMATION.***

8.    **Particular Conduct Constituting the Infringing Act (old 4 and old 7)**

If an infringement consists in the storage or display of a work at a particular location on the Internet, the URL of the specific resource at issue would suffice. (For direct infringement, the Microsoft URL would be appropriate; for indirect liability, the Microsoft URL and the URL of the underlying infringement would be appropriate.) If the infringement consists in other conduct, a narrative may be necessary. If the narrative relates to particular links, both the location (URL) of the link and the object (URL) to which the link specifically points should be included. If Perfect 10 claims that Microsoft bears liability for infringement of a work even after it disabled access to a particular infringement of the work identified in a DMCA notice, Perfect 10 should give a brief explanation.

9.    **Search Queries and Other Instructions or Events Causing Alleged Infringing Display (old 8)**

To the extent Perfect 10 is aware of particular user conduct that leads to infringing consequences or infringing material/activity. Perfect 10 should specify it.

10.   **Dates of First Knowledge of Infringement and of Believed First Infringement by Microsoft (old 7)**

These would be the date when Perfect 10 first became aware of the infringement and any date that Perfect 10 believes to mark the beginning of the infringement.

11.   **Indicate Thumbnail or Full-Size Image (old 9)**

This information will be contained in the descriptions in no. 8.

12.   **Identification of Claimed DMCA Notices (By Date) Pertaining to Infringements of the Work (old 5)**

This would identify each DMCA Notice by which Perfect 10 notified Microsoft of a claimed infringement of the work. If the Notice does not indicate a URL that Perfect 10 has mentioned in no. 8 above, Perfect 10 will give a short explanation.

13.   **Damages Claimed (old 6)**

This would include any actual damages known to Perfect 10 so far.

EXHIBIT A
Page 8

*THE PARTIES DISAGREE AS TO THE WHETHER THE RESPONSE SHOULD CONTAIN THIS INFORMATION.*

EXHIBIT A
Page 9

**Scherb, Matthew A.**

| | |
|---|---|
| **From:** | Bridges, Andrew P. |
| **Sent:** | Thursday, October 23, 2008 4:31 PM |
| **To:** | Jeffrey N. Mausner (jeff@mausnerlaw.com) |
| **Cc:** | 'normanz@perfect10.com'; Golinveaux, Jennifer A.; Scherb, Matthew A.; Bridges, Andrew P. |
| **Subject:** | Categories and fairness criteria for thought and discussion |

Copying Dr. Zada at Jeff's request

Categories of fact patterns/allegations

image search v. web search
free sites v pay sites
pictures v web pages v passwords
image URLs v specific page URLs v home page URLs
complete URLs v incomplete/malformed URLs
covered by DMCA notice v not covered by notice
DMCA notices cover red all claimed infringements v DMCA notices did not cover all claimed
infringements
nothing persisted after notice v same URL persisted after notice v URL disappeared but other
instances of image persisted after notice
thumbs v framed v mere link
P10 created v non-P10 created photos
exclusive models v. nonexclusive models
registered v unregistered individual images
inclusion or not in compilations/derivative works


fairness criteria:
dates of photos and of publication spread throughout
works assorted across DMCA notices
photos across range of models
possible -- random digit in registration numbers
possible -- random feature in unique identifiers
others?

alternative method?
jury selection -- alternating selection (not randomization)

---

Andrew P. Bridges          abridges@winston.com
**Winston & Strawn LLP**
101 California Street, Suite 3900
San Francisco, CA 94111
Telephone (415) 591-1482     Facsimile (415) 591-1400
Mobile (415) 420-1482

---

EXHIBIT B
Page 10

# WINSTON & STRAWN LLP

Electronic
Letterhead

101 California Street, San Francisco, California 94111-5894
P:  (415) 591-1000     F:  (415) 591-1400

CHARLOTTE ● CHICAGO ● GENEVA ● LONDON ● LOS ANGELES ● MOSCOW ● NEW YORK ● NEWARK ● PARIS ● SAN FRANCISCO ● WASHINGTON, D.C.

WRITER'S DIRECT DIAL
415-591-1482
abridges@winston.com

November 7, 2008

Mr. Jeffrey N. Mausner
Law Offices of Jeffrey N. Mausner
21800 Oxnard Street, Suite 910
Woodland Hills, CA  91367-3640

    Re:  *Perfect 10, Inc. v. Microsoft Corporation*

Dear Jeff:

   We have diligently considered all the different fact patterns and legal theories upon which Perfect 10 appears to base its claims against Microsoft in order to come up with a framework, as the Court requested, for identifying a subset of Perfect 10's claimed copyrighted works that reflect those different fact patterns and legal theories.  The hope is that, by identifying and providing agreed-upon information for a relatively small sample of works (of the 30,000 works Perfect 10 apparently claims) that nonetheless represent the full spectrum and variety of alleged infringements or fact patterns in the case, both the Court and the parties can evaluate the case realistically and also devise ways to streamline it.

   Using the Court's chart in its September 25, 2008 order as a starting point, we modified and clarified that chart, subject to client approval, during out October 23, 2008 discussion in Los Angeles.  It seems we are close to agreeing on the nature of the chart and the types of information that Perfect 10 will provide about its works and claims.  For your reference, I attach a version of the document we discussed during our October 23, 2008 meeting that outlines the parties' positions, agreements, and disagreements on what information Perfect 10 should provide.  Microsoft has approved this version.

   Microsoft believes that the chart that Perfect 10 will furnish should contain information for one or two Perfect 10 copyrighted works that correspond to each different combination of the facts and legal theories.  To arrive at the list of works, Microsoft proposes that Perfect 10 identify a work that it believes reflects Perfect 10's representative case for each particular combination (recognizing that it is also possible that one work might be used for more than one fact pattern, but we ask that the full set of information be given for each fact pattern).  Microsoft also proposes that it be permitted, at its option, to select a particular example for each

EXHIBIT C
Page 11

Jeffrey N. Mausner
November 7, 2008
Page 2

combination in addition to the work Perfect 10 has identified, and have Perfect 10 provide information for those examples on its chart as well.  The total number of works that Perfect 10 will have to include in a chart of required information will depend upon how many different combinations of facts and legal theories Perfect 10 wishes to pursue in the case.

The extensive list below reflects, and evidences, how complex the case appears to be, unless Perfect 10 declines to pursue certain fact patterns or legal theories.  To date, Perfect 10 has declined to identify any fact pattern or legal theory that it will not pursue.

It seems our task is to reduce both the apparent complexity of the case and the burden upon Perfect 10 in furnishing the required information by eliminating any fact patterns or legal theories that Perfect 10 does not intend to pursue at trial.  We ask that you indicate which variables that P10 does not intend to include in its case.  (For example, we expect that Perfect 10 may wish to eliminate all legal theories that pertain to alleged violations of section 106(4) and 106(6).  It may also wish to eliminate from the case claims regarding infringements where Perfect 10 acknowledges that Microsoft responded to a DMCA notice expeditiously.)  Of course we will want to obtain a stipulation to give binding effect to any limitations by Perfect 10 so that Microsoft may have comfort in the fact that it will not be blindsided by a misunderstanding of the scope of the case.  Moreover, in order to ensure that we can get information about each fact pattern and type of claim that P10 intends to prove, we ask that you supply any relevant variables that we may have missed.

After Perfect 10 eliminates unnecessary variables and legal theories from the list below, Microsoft asks that Perfect 10 identify one relevant Perfect 10 work for each possible different combination of the remaining applicable variables and legal theories, which may (but need not always) include one numbered item for each different letter in the list below.  Thus, for example, one combination would be  A1,B1,C1,D1,E1,F1,G1,H1,J1,K1,L1,M1,N1.    Where Perfect 10 will not press claims for a particular combination of facts and legal theories, it may clarify that point.  Microsoft will, of course, want a stipulation to confirm that the combination is not an issue in the case.

Please review this carefully and help us to identify the variables and legal theories that are genuinely at issue -- and streamline the information that Perfect 10 must produce -- appropriately.  We are open to any suggestions that Perfect 10 has for improving and streamlining the selection of representative works and fact patterns in order to enable us to evaluate the case or to consider dispositive motions.

### *First Owner of Copyright*

A1:     P10
A2:     Amy Weber/her company
A3:     Other Models/their companies
A3:     Petter Hegre/his company
A4:     Other non-US photographers

EXHIBIT C
Page 12

Jeffrey N. Mausner
November 7, 2008
Page 3

    A5:    Other US photographer

*Model Celebrity and Exclusivity Status*

B1:    Model a famous celebrity and exclusive to P10
B2:    Model a famous celebrity and exclusive to P10 only for topless or nude images
B3:    Model a famous celebrity and not exclusive to P10
B4:    Model not a famous celebrity; exclusive to P10
B5:    Model not a famous celebrity; exclusive to P10 only for topless or nude images
B6:    Model not a famous celebrity; not exclusive to P10

*Compilation / Group Work Membership Status*

C1:    Work is an individual work and has appeared by authority of copyright owner in P10 magazine but not on P10 web site
C2:    Work is an individual work and has appeared by authority of copyright owner on P10 web site but not in P10 magazine
C3:    Work is an individual work and has appeared by authority of copyright owner both on P10 web site and in P10 magazine
C4:    Work is an individual work that has appeared by authority of copyright owner in a non-P10 magazine
C5:    Work is an individual work that has appeared by authority of copyright owner on a non-P10 web site
C6:    Work is an individual work that has never appeared by authority of a copyright owner in a compilation or derivative work (magazine or web site)
C7:    Work is a compilation
C8:    Work is a derivative work but not a compilation

*Registration*

    *Nature of registration*

D1:    The work was registered as a single, individual item
D2:    The work was registered as a serial
D3:    The work was registered as part of a group registration
D4:    The work was not registered as a single individual item, a serial, or part of a group registration but was contained in a work registered as a compilation or derivative work
D5:    The work has never been registered

EXHIBIT C
Page 13

Jeffrey N. Mausner
November 7, 2008
Page 4

### *Publication status in registration*

E1:   The work was registered as an unpublished work
E2:   The work was registered as a published work

### *Date of registration*

F1:   The work was registered, other than as a derivative work or compilation, within three months of the first publication of the work
F2:   A derivative work or compilation containing the work was first registered within three months of the first publication of the work
F3:   A derivative work or compilation containing the work was first registered within three months of the first publication of the derivative work or compilation but not within three months of the first publication of the work
F4:   The work was not registered in any manner within three months of the first publication of the work in any manner

### *Image Search Actions by Microsoft*

G1:   Storing thumbnail images of alleged infringements of P10 images
G2:   Transmitting thumbnail images of alleged infringements of P10 images
G3:   Enabling the framing of a third-party page with alleged infringements of P10 images
G4:   Deep linking to files constituting alleged infringements of P10 images
G5:   Linking to web sites on which infringements reside, where link was not to a specific infringing file or to a specific page other than the home or landing page of the web site

### *Web Search Actions by Microsoft*

G6:   Storing html files of pages that refer to infringing image files
G7:   Providing links in search results to the home pages of pay sites that charge for access to alleged infringements of P10 images
G8:   Providing links in search results to pages of free sites on which third-parties reference alleged infringements of P10 images
G9:   Providing sponsored links to the home pages of pay sites that charge for access to alleged infringements of P10 images
G10:  Providing sponsored links to pages of free sites on which third-parties reference alleged infringements of P10 images
G11:  Providing links in search results to websites with passwords.
G12:  Providing links in sponsored links to websites with passwords
G13:  Providing Perfect 10 user IDs and/or passwords in search results "excerpts"

EXHIBIT C
Page 14

Jeffrey N. Mausner
November 7, 2008
Page 5

G14:   Storing html files that contain Perfect 10 user IDs and/or passwords
G14:   Transmitting cached html files of pages containing Perfect 10 user IDs and/or passwords
G15:   Transmitting cached html files of pages that contain references or links to allegedly infringing images


*Nature of Identification of Alleged Infringements*

H1:    Complete image file URL
H2:    Complete page URL
H3:    Complete web site home or landing page URL
H4:    Incomplete / Broken URL
H5:    No URL given, but P10 gave instructions on how to specifically locate the allegedly infringing file.
H6:    No URL given, but P10 gave instructions on how generally to locate infringements of a specific image that P10 identified to Microsoft.
H7:    No URL given, but P10 gave instructions on how to locate infringements of P10 works depicting a specific model
H8:    No URL given, but P10 gave instructions on how generally to locate images infringing upon P10 copyrights.
H9:    No URL given, but P10 gave instructions on how generally to locate infringing images (not to locate images infringing specifically upon P10 copyrights)
H10:   No notice


*Whether P10's Notice Was for Exact or Similar Match*

J1:    Noticed source of infringement was a URL that pertained to the exact alleged infringement at issue
J2:    Noticed source of infringement was a URL that pertained to a duplicate file of the alleged infringement at issue
J3:    Noticed source of infringement was a URL that pertained to a near-duplicate file of the alleged infringement at issue
J4:    Noticed source of infringement was a URL that pertained to another image of the person depicted in the alleged infringement at issue


*P10's Identification of Allegedly Infringed P10 Works*

K1:    P10 gave specific issue and page nos. to ID works
K2:    P10 gave only an invitation to view website or magazine given to ID works
[Add other variables of how P10 identified its works???]

Jeffrey N. Mausner
November 7, 2008
Page 6

*Microsoft's Response to Notices:*

L1:    Microsoft removed or disabled access to the exact alleged infringement at issue identified specifically by the URL.

L2:    There was no infringement at the exact URL in the notice, and Microsoft removed or disabled access to one or more infringements associated in some way with the URL in the notice.

L3:    There was no infringement at the exact URL in the notice, and Microsoft did not remove or disable access to one or more infringements located at URLs associated in some way with the URL in the notice.

L4:    Microsoft did not act on the notice.

*Timing of Microsoft's Response to Notice*

M1:    Microsoft responded to the notice expeditiously.

M2:     Microsoft did not respond to the notice expeditiously.

[Other variables???]

*Legal Theories*

N1:    Direct copyright infringement – section 106(1) reproduction on server
N2:    Direct copyright infringement – section 106(1) other reproduction
N3:    Direct copyright infringement – section 106(2) thumbnail creation
N4:    Direct copyright infringement – section 106(2) other derivative work
N5:    Direct copyright infringement – section 106(3) MS server as source of image
N6:    Direct copyright infringement – section 106 (3) MS linking without use of image by MS
N7:    Direct copyright infringement – section 106(3) framing without transmission of image by MS
N8:    Direct copyright infringement – section 106(4) public performance
N9:    Direct copyright infringement – section 106(5) MS server as source of image
N10:   Direct copyright infringement – section 106 (5) MS linking without use of image by MS
N11:   Direct copyright infringement – section 106(5) framing without transmission of image by MS
N12:   Direct copyright infringement – section 106(6) public performance

N13:   Contributory copyright infringement – search user as direct infringer:  section 106(1)
N14:   Contributory copyright infringement – search user as direct infringer:  section 106(2)
N15:   Contributory copyright infringement – search user as direct infringer:  section 106(3)

EXHIBIT C
Page 16

Jeffrey N. Mausner
November 7, 2008
Page 7

N16:   Contributory copyright infringement – search user as direct infringer:  section 106(4)
N17:   Contributory copyright infringement – search user as direct infringer:  section 106(5)
N18:   Contributory copyright infringement – search user as direct infringer:  section 106(6)

N19:   Contributory copyright infringement – indexed site operator as direct infringer: section 106(1)
N20:   Contributory copyright infringement – indexed site operator as direct infringer: section 106(2)
N21:   Contributory copyright infringement – indexed site operator as direct infringer: section 106(3)
N22:   Contributory copyright infringement – indexed site operator as direct infringer: section 106(4)
N23:   Contributory copyright infringement – indexed site operator as direct infringer: section 106(5)
N24:   Contributory copyright infringement – indexed site operator as direct infringer: section 106(6)
N25:   Contributory copyright infringement – advertiser as direct infringer:  section 106(1)
N26:   Contributory copyright infringement – advertiser as direct infringer:  section 106(2)
N27:   Contributory copyright infringement – advertiser as direct infringer:  section 106(3)
N28:   Contributory copyright infringement – advertiser as direct infringer:  section 106(4)
N29:   Contributory copyright infringement – advertiser as direct infringer:  section 106(5)
N30:   Contributory copyright infringement – advertiser as direct infringer:  section 106(6)

N31:   Inducing copyright infringement – search user as direct infringer:  section 106(1)
N32:   Inducing copyright infringement – search user as direct infringer:  section 106(2)
N33:   Inducing copyright infringement – search user as direct infringer:  section 106(3)
N34:   Inducing copyright infringement – search user as direct infringer:  section 106(4)
N35:   Inducing copyright infringement – search user as direct infringer:  section 106(5)
N36:   Inducing copyright infringement – search user as direct infringer:  section 106(6)

N37:   Inducing copyright infringement – indexed site operator as direct infringer: section 106(1)
N38:   Inducing copyright infringement – indexed site operator as direct infringer: section 106(2)

EXHIBIT C
Page 17

Jeffrey N. Mausner
November 7, 2008
Page 8

N39:   Inducing copyright infringement – indexed site operator as direct infringer:
         section 106(3)
N40:   Inducing copyright infringement – indexed site operator as direct infringer:
         section 106(4)
N41:   Inducing copyright infringement – indexed site operator as direct infringer:
         section 106(5)
N42:   Inducing copyright infringement – indexed site operator as direct infringer:
         section 106(6)

N43:   Inducing copyright infringement – advertiser as direct infringer:  section 106(1)
N44:   Inducing copyright infringement – advertiser as direct infringer:  section 106(2)
N45:   Inducing copyright infringement – advertiser as direct infringer:  section 106(3)
N46:   Inducing copyright infringement – advertiser as direct infringer:  section 106(4)
N47:   Inducing copyright infringement – advertiser as direct infringer:  section 106(5)
N48:   Inducing copyright infringement – advertiser as direct infringer:  section 106(6)

N49:   Vicarious liability for  copyright infringement – search user as direct infringer:
         section 106(1)
N50:   Vicarious liability for copyright infringement – search user as direct infringer:
         section 106(2)
N51:   Vicarious liability for copyright infringement – search user as direct infringer:
         section 106(3)
N52:   Vicarious liability for copyright infringement – search user as direct infringer:
         section 106(4)
N53:   Vicarious liability for copyright infringement – search user as direct infringer:
         section 106(5)
N54:   Vicarious liability for copyright infringement – search user as direct infringer:
         section 106(6)

N55:   Vicarious liability for copyright infringement – indexed site operator as direct
         infringer:  section 106(1)
N56:   Vicarious liability for copyright infringement – indexed site operator as direct
         infringer:  section 106(2)
N57:   Vicarious liability for copyright infringement – indexed site operator as direct
         infringer:  section 106(3)
N58:   Vicarious liability for copyright infringement – indexed site operator as direct
         infringer:  section 106(4)
N59:   Vicarious liability for copyright infringement – indexed site operator as direct
         infringer:  section 106(5)
N60:   Vicarious liability for copyright infringement – indexed site operator as direct
         infringer:  section 106(6)

EXHIBIT C
Page 18

Jeffrey N. Mausner
November 7, 2008
Page 9

N61:   Vicarious liability for  copyright infringement – advertiser as direct infringer:
       section 106(1)
N62:   Vicarious liability for copyright infringement – advertiser as direct infringer:
       section 106(2)
N63:   Vicarious liability for copyright infringement – advertiser as direct infringer:
       section 106(3)
N64:   Vicarious liability for copyright infringement – advertiser as direct infringer:
       section 106(4)
N65:   Vicarious liability for copyright infringement – advertiser as direct infringer:
       section 106(5)
N66:   Vicarious liability for copyright infringement – advertiser as direct infringer:
       section 106

N67:   Direct trademark infringement
N68:   Contributory trademark Infringement – search user as direct infringer
N69:   Contributory trademark infringement – indexed site operator as direct infringer
N70:   Contributory trademark infringement – advertiser as direct infringer
N68:   Vicarious liability for trademark Infringement – search user as direct infringer
N69:   Vicarious liability for trademark infringement – indexed site operator as direct
       infringer
N70:   Vicarious liability for trademark infringement – advertiser as direct infringer


       I look forward to your response.

                              Sincerely,



                              /s/
                              Andrew P. Bridges

APB:pb

EXHIBIT C
Page 19

# Exhibit 3

1  JEFFREY N. MAUSNER (State Bar No. 122385)
2  Law Offices of Jeffrey N. Mausner
   Warner Center Towers, Suite 910
3  21800 Oxnard Street
4  Woodland Hills, California 91367-3640
   Telephone: (310) 617-8100, (818) 992-7500
5  Facsimile: (818) 716-2773

6  Attorneys for Plaintiff Perfect 10, Inc.

7
                  UNITED STATES DISTRICT COURT
8
                 CENTRAL DISTRICT OF CALIFORNIA
9

10  PERFECT 10, INC., a California          CASE NO. CV 07-5156 AHM (SHx)
11  corporation,
                                            **ANSWER TO JUDGE MATZ'S**
12               Plaintiff,                  **QUESTION REGARDING NUMBER**
                                            **OF COMBINATIONS/SCENARIOS**
13        v.
14  MICROSOFT, INC., a corporation,        Date:  December 18, 2008
                                           Time:  3:00 P.M.
15               Defendant.                Place: Courtroom 14, Courtroom of the
                                                  Honorable A. Howard Matz
16

17

18        Perfect 10 will be able to eliminate well over half of the lettered/numbered

19  items on Microsoft's Exhibit C.  However, the number of scenarios, if one

20  computes the number of combinations by multiplying the number of items in A

21  (6), times the number of alternatives for B (even reduced from 6 to 3), times the

22  number of alternatives for C (even reduced from 8 to 4), etc., is still a very large

23  number.  By concentrating on the four broad categories of infringement, namely

24  Image Search, Web Search, Unauthorized Display of P10 passwords, and Usenet

25  infringements (sponsored advertising links), Perfect 10 will be able to cut down

26  very substantially on the number of images and URL-verifications for a sample

27  that will cover most of the relevant combinations.

28        Specifically, Perfect 10 believes it can cover the combinations set forth in

1  Microsoft's Exhibit C that it will pursue in this lawsuit by using a sample of no

2  more than 60 Perfect 10 copyrighted images ("P10 Images"), and no more than

3  135 URL-verifications. By "URL-verification," Perfect 10 means that it would

4  provide either a URL from a Perfect 10 DCMA notice in spreadsheet format or that

5  URL with the infringed image or infringing web page from a notice in which

6  actual copies of infringing images were attached, and show that Microsoft did not

7  expeditiously take action.

8       Because each such URL-verification could cover many combinations, the

9  number of actual combinations would still be very large but the actual amount of

10 work required by the Court would be far less, closer to the time required to go

11 through 135 URLs and show that Microsoft did not expeditiously remove the

12 infringing material. For example, an image for which Perfect 10 was the first

13 owner (A1), for which the model was not a famous celebrity and not exclusive to

14 P10 (B6), the work appeared by authority of the copyright owner both on the P10

15 website and in P10 magazine (C3), the work was registered as part of the magazine

16 (D4), the work was registered as a published work (E2), and the date of registration

17 was within three months of the first publication of the work (F2), could fall within

18 several categories of each of G, H, J, K, L, and N and thus cover many different

19 combinations. Perfect 10 will attempt to select its sample of images to streamline

20 this process as much as possible.

21      Therefore, to answer the Court's question, Perfect 10 believes that based on

22 Microsoft's Ex. C, there are about 187,400 combinations, but most of those can be

23 covered by a sample of not more than 60 images and 135 URL verifications,

24 because each image and URL verification could cover multiple combinations.

25 Dated: December 19, 2008          Respectfully submitted,

26                                   *Jeffrey N. Mausner*
                                     By:_____

27                                       Jeffrey N. Mausner
                                         Attorney for Plaintiff Perfect 10, Inc.

28