O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-4753 AHM (SHx) | Date | May 12, 2009 |
|---|---|---|---|
| Title | PERFECT 10, INC. v. AMAZON.COM, INC., *et al.* | | |

| Present: The Honorable | A. HOWARD MATZ, U.S. DISTRICT JUDGE | | |
|---|---|---|---|
| Stephen Montes | Not Reported | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys **NOT** Present for Plaintiffs:    Attorneys **NOT** Present for Defendants:

**Proceedings:**    IN CHAMBERS (No Proceedings Held)

## ORDER GRANTING A9.COM'S MOTION FOR SUMMARY JUDGMENT ON CONTRIBUTORY INFRINGEMENT

**I.    INTRODUCTION**

On October 27, 2008, the Court granted summary judgment in favor of Defendant A9.com, Inc. on Plaintiff Perfect 10, Inc.'s claims of direct copyright infringement and vicarious copyright infringement. On November 4, 2008, the Court denied summary judgment as to A9's defense under 17 U.S.C. § 512(a). In the latter order, the Court held that although A9 did have a repeat infringer policy that satisfies § 512(i), it had no occasion to determine whether A9 actually terminated repeat infringers, because Perfect 10 had not shown that A9 had knowledge of infringement. Order, Nov. 4, 2008 at 5, 7-8. In doing so, the Court relied on the fact that Perfect 10 had not sent any copyright notices to A9, but rather had sent them to A9's parent company, Amazon.com, Inc. *See* Order, Nov. 4, 2008 at 8.

A9 now moves for summary judgment on the remaining claim against it, contributory infringement, on the ground that it is entitled to a safe harbor under 17 U.S.C. § 512(c) because it is undisputed that Perfect 10 sent its notices to Amazon, instead of to A9. Perfect 10 opposes the motion, making four arguments. First, Perfect 10 contends, contrary to what this Court found on November 4, 2008, A9 did have actual knowledge of infringement, thus disqualifying it from the § 512(c) safe harbor. *Id.* § 512(c)(1)(A)(i)). Second, Perfect 10 argues, A9 is equitably estopped from asserting that Perfect 10 improperly sent its notices to Amazon, because it held itself out as an Amazon.com company and failed to comply with 17 U.S.C. § 512(c)(2) and because

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-4753 AHM (SHx) | Date | May 12, 2009 |
|---|---|---|---|
| Title | PERFECT 10, INC. v. AMAZON.COM, INC., *et al.* | | |

Amazon made representations that led Perfect 10 to believe that it was able to handle copyright notices on A9's behalf. Third, Perfect 10 points to the notices that it sent directly to A9 in November 2008 as proof of A9's knowledge, after the Court had already found that Perfect 10 had sent its notices to the wrong recipient.

Although Perfect 10 has provided some evidence that it had not provided in the previous motion, its evidence is not sufficient to establish a genuine dispute that A9 had "actual knowledge that specific infringing material [was] available using its system." *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1172 (9th Cir. 2007). Nor has Perfect 10 submitted evidence of actions by A9 that could be the basis to apply equitable estoppel against A9. Thus, the Court GRANTS A9's motion for summary judgment on the claim of contributory infringement.[1]

## II.    FACTUAL BACKGROUND[2]

### A.    A9's and Amazon's Designated Copyright Agents

A9 is a wholly-owned subsidiary of Amazon. A9's website, <www.a9.com>, was launched to the public in September 2004. It offers users search results from numerous information sources. Declaration of Jonathan Leblang ("Leblang Decl."), Aug. 22, 2005, ¶¶ 2-3 (attached as Ex. 3 to Declaration of Anthony J. Malutta).

A9's Conditions of Use, and within that a Notice and Procedure for Making Claims of Copyright Infringement, were published on its website from its inception. Leblang Decl. ¶ 4, Ex. A, p. 14 (showing that A9's Conditions of Use was updated "26 February 2004"). There is a link to the Conditions of Use on the bottom of every page on the A9 website. *See* Zada Decl., Ex. 9. The Notice and Procedure for Making Claims of Copyright Infringement instructed users that A9's Copyright Agent for notice of claims of copyright infringement could be reached at an address and telephone number in Palo Alto, California or by clicking on a link that takes the user to an online complaint form.

---

[1] Docket No. 247.

[2] These facts are undisputed and are drawn primarily from the declarations that Jonathan Leblang and Karen Ressmeyer submitted for the preliminary injunction proceedings in August 2005, and Dr. Zada's declaration submitted for this motion.

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-4753 AHM (SHx) | Date | May 12, 2009 |
|---|---|---|---|
| Title | PERFECT 10, INC. v. AMAZON.COM, INC., *et al.* | | |

Malutta Decl., Ex. 3 at 42; Declaration of Norman Zada ("Zada Decl.") ¶ 7. In June 2004, A9 filed a designation of agent with the U.S. Copyright Office, indicating the same address and telephone number, as well as a fax number and the name of the designated agent, Jonathan Leblang. The Copyright Office designation also included, in lieu of an email address for the agent, the URL for the aforementioned online complaint form. Zada Decl, Ex. 5 at 1.

Meanwhile, on Amazon's website, Amazon's Notice and Procedure for Making Claims of Copyright Infringement instructed users to contact Amazon's copyright agent in Seattle, Washington "for notifying Amazon.com *and its affiliates* that your copyrighted material has been infringed." Malutta Decl., Ex. 2 at 22 (emphasis added). Amazon's Conditions of Use referred repeatedly to Amazon's "affiliates" and "subsidiaries," but did not identify the entities that were those affiliates or subsidiaries. Malutta Decl., Ex. 2 at 16-23. The designation that Amazon filed with the Copyright Office did not expressly define "affiliates," but did list as "alternative names of service provider" a number of Amazon-owned entities, such as Amazon.ca, Askville.com, and Endless.com. Zada Decl., Ex. 1 at 2. Because A9 was not among the listed entities, Amazon's copyright agent was not designated to receive notices on behalf of A9.

### B. Dr. Zada's DMCA Notices

On or about November 15, 2004, Perfect 10's President, Dr. Zada, sent his first DMCA notice to Amazon's copyright agent concerning alleged infringements in the search results of A9's search engine (Declaration of Karen Ressmeyer, Aug. 18, 2005, ¶ 5 (attached as Ex. 2 to Malutta Decl.). Dr. Zada states that he sent his first notice to Amazon because he "first found out about Amazon's involvement in the infringement of Perfect 10's copyrights by doing searches using a search box [labeled A9 Web Search] on the amazon.com website." Zada Decl. ¶ 3, Ex. 1, p. 1. He believed that Amazon was responsible because users were getting A9 search results by going to the amazon.com website. Moreover, on almost every page of A9's website was a logo stating "An amazon.com company." *Id.* Thus, Dr. Zada sent a letter on or about November 15, 2004 to Amazon, complaining that infringing third-party websites appeared in the results of searches done through the A9 search box. Ressmeyer Decl. ¶ 5.

Although Dr. Zada states that he did go onto A9's website and found allegedly

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-4753 AHM (SHx) | Date | May 12, 2009 |
|---|---|---|---|
| Title | PERFECT 10, INC. v. AMAZON.COM, INC., *et al.* | | |

infringing search results on it, Zada Decl. ¶ 3, he is silent on whether he saw or clicked on the Conditions of Use link displayed on the bottom of each page, not far from the "amazon.com" logo. *See id.*, Ex. 9 (Dr. Zada's printouts from A9.com showing allegedly infringing search results).

Shortly after receiving Dr. Zada's letter, Amazon's corporate counsel in charge of copyright matters, Karen Ressmeyer, called Dr. Zada on the telephone. Ressmeyer Decl. ¶ 8. Ressmeyer informed him "that Google, not Amazon or A9, provided the search results and that there was nothing Amazon could do about his complaints." Dr. Zada informed her that he had already sued Google. Ressmeyer asked for a copy of the complaint.

From January 2005 to April 2005, Dr. Zada sent Amazon six more DMCA letters (for a total of seven). Ressmeyer Decl. ¶¶ 9-13. Twice, in response to his letters, Ressmeyer called Dr. Zada, informed him that Amazon and A9 had no control over the search results, and requested a copy of the complaint against Google. *Id.* ¶¶ 10, 12. In March 2005, Ressmeyer decided to contact Google herself to seek its help in dealing with Dr. Zada's notices. *Id.* ¶ 14. On April 6, 2005, she talked with Michael Kwun in Google's legal department. He told her to forward Dr. Zada's letters to Google for Google to handle. Accordingly, she had her assistant email copies of all seven letters to Google. *Id.*

A couple of days later, Ressmeyer responded in writing to Dr. Zada for the first time. She informed him that she "had forwarded his letters to Google for handling." Ressmeyer Decl. ¶ 15; Malutta Decl., Ex. 2 at 15. Dated April 8, 2005, this letter stated, in part: "To address your concerns, we have discussed the matter with Google and forwarded your correspondence to them for appropriate handling. We trust you will find this approach reasonable. If you would like to discuss the matter further, please feel free to contact me." At the bottom of the letter, Ressmeyer indicated that she sent a copy of the letter to Jonathan Leblang. Leblang is the individual whom A9 had identified as its copyright agent in June 2004 in its filing at the Copyright Office.

Dr. Zada did not respond to this letter and he has introduced no evidence showing he attempted to find out who Leblang was. Instead, Perfect 10 filed the complaint in this action on June 29, 2005, naming both Amazon and A9. Shortly after, it filed a motion for

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-4753 AHM (SHx) | Date | May 12, 2009 |
|---|---|---|---|
| Title | PERFECT 10, INC. v. AMAZON.COM, INC., *et al.* | | |

a preliminary injunction. In August 2005, Amazon and A9 responded together with one set of opposition papers, which included declarations from Leblang and Ressmeyer. Leblang noted that he was personally responsible on behalf of A9 for handling complaints of alleged infringement. Leblang Decl. ¶ 5. He stated, "Perfect 10 and Dr. Zada never contacted A9 with any complaints. If they had, their complaints would have been directed to me for action." *Id.* ¶ 6. His declaration was silent on whether he had any actual knowledge of the notices that were sent to Amazon concerning A9. Ressmeyer's declaration was also silent as to whether she had any communications with Leblang concerning Dr. Zada's notices, but she did attach her April 8, 2005 letter in order to document how she handled Dr. Zada's notices. Ressmeyer Decl. ¶ 15.

On November 21, 2005, Dr. Zada faxed a DMCA notice to Amazon concerning A9's search results, even though Leblang had expressly identified himself as A9's copyright agent in his August 2005 declaration. *See* Zada Decl. ¶ 3, Ex. 1, p. 4. On December 23, 2005, Ressmeyer responded in writing to Dr. Zada to inform him that she forwarded the notice to Google, using almost verbatim the same language as her April 2005 letter.

In sum, from November 2004 to November 2005, Dr. Zada sent a total of eight notices concerning A9, not to A9's copyright agent in Palo Alto, but to Amazon. It was not until after this Court's November 2008 ruling that Dr. Zada sent a DMCA notice directly to A9. Despite all of his correspondence with Ressmeyer, Amazon never told Zada that he had to send such notices to A9 directly. No one at Amazon told him that the notices were not being forwarded to A9 or that it was not sufficient to send them to Amazon. Zada Decl. ¶ 3.

## III. LEGAL STANDARDS FOR A MOTION FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c) provides for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The moving party bears the initial burden of demonstrating the absence of a "genuine issue of material fact for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). A fact is material if it could affect the outcome of the suit under the governing substantive law. *Id.* at 248. The

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-4753 AHM (SHx) | Date | May 12, 2009 |
|---|---|---|---|
| Title | PERFECT 10, INC. v. AMAZON.COM, INC., *et al.* | | |

burden then shifts to the nonmoving party to establish, beyond the pleadings, that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

"When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co., Inc. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted). In contrast, when the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden by pointing out the absence of evidence from the non-moving party. The moving party need not disprove the other party's case. *See Celotex*, 477 U.S. at 325. Thus, "[s]ummary judgment for a defendant is appropriate when the plaintiff 'fails to make a showing sufficient to establish the existence of an element essential to [his] case, and on which [he] will bear the burden of proof at trial.'" *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 805-06 (1999) (citing *Celotex*, 477 U.S. at 322).

When the moving party meets its burden, the "opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e). Summary judgment will be entered against the opposing party if that party does not present such specific facts. *Id*. Only admissible evidence may be considered in deciding a motion for summary judgment. *Id.*; *Beyene v. Coleman Sec. Serv., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988).

"[I]n ruling on a motion for summary judgment, the nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'" *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999) (quoting *Anderson*, 477 U.S. at 255). But the non-moving party must come forward with more than "the mere existence of a scintilla of evidence." *Anderson*, 477 U.S. at 252. Thus, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

## IV.   DISCUSSION

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-4753 AHM (SHx) | Date | May 12, 2009 |
|---|---|---|---|
| Title | PERFECT 10, INC. v. AMAZON.COM, INC., *et al.* | | |

    A9 seeks a summary determination that it is entitled to the safe harbor of § 512(c) of the DMCA. A9's motion is based solely on the admitted fact that Perfect 10 sent notifications of claimed infringements in A9's search results to Amazon's designated copyright agent, instead of A9's. Perfect 10's opposition argues that A9 had actual knowledge of infringement and that it should be equitably estopped from seeking a safe harbor, and that the notices it did send directly to A9 in November 2008 bar A9 from the safe harbor.

### A. A9's Actual Knowledge

    Perfect 10 contends that A9 is not entitled to the safe harbor because it did in fact receive Perfect 10's DMCA notices, and therefore had actual knowledge of infringement. An ISP is not entitled to the § 512(c) safe harbor if it has "actual knowledge that *the material* or an activity using the material on the system or network is infringing." 17 U.S.C. § 512(c)(1)(A)(i) (emphasis added). The ISP must know that "*specific* infringing material is available using its system," *Amazon.com*, 508 F.3d at 1172 (emphasis in original).

    Perfect 10 argues that its DMCA notices conferred actual knowledge of infringement. *See id.* at 1176. In part, Perfect 10 relies on the notices that it produced during discovery in this litigation and those notices that it sent to A9's copyright agent in November 2008. These post-litigation instances of A9 receiving information of claimed infringements do not constitute notifications within the meaning of § 512(c)(3), with respect to infringements claimed in the original complaint. They are legally irrelevant. The absurd result otherwise would be that the complaint or any other pleading that contains sufficient identification of the alleged infringement could count as a DMCA notification.

    Perfect 10 does cite one pre-litigation piece of evidence, Ressmeyer's letter dated April 8, 2005. That letter was copied to A9's Leblang. Both parties attached this letter to their declarations. The surrounding circumstances of this letter are explained by Ressmeyer in her August 2005 declaration, which A9 attached to its papers. The letter does not indicate that Amazon forwarded any DMCA notices to A9 and does not provide any information about the infringing material, so the letter alone does not establish either

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-4753 AHM (SHx) | Date | May 12, 2009 |
|---|---|---|---|
| Title | PERFECT 10, INC. v. AMAZON.COM, INC., *et al.* | | |

that A9 received any of Perfect 10's notices or that it had actual knowledge of specific infringing activities available using its system.

### B. Equitable Estoppel

Perfect 10 argues that A9 should be equitably estopped from asserting that Perfect 10 improperly sent its notices to Amazon. Estoppel requires the following:

> (1) the Party to be estopped must know the facts; (2) he must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended; (3) the latter must be ignorant of the true facts; and (4) he must rely on the former's conduct to his injury.

*Shin v. Mukasey*, 547 F.3d 1019, 1025 (9th Cir. 2008) (quoting *Watkins v. United States Army*, 875 F.2d 699, 709 (9th Cir. 1989) (en banc)). As explained below, there is no evidence of conduct by A9 or of any reliance on such conduct on Perfect 10's part that would support an application of estoppel against A9, and there is no evidence that Dr. Zada was in fact unaware that A9 had designated its own copyright agent.

Perfect 10 first argues that Amazon instructed copyright owners to send DMCA notices regarding its affiliates directly to Amazon, relying on the Conditions of Use posted on Amazon's website. But nowhere in those Conditions of Use does Amazon purport to include A9 among its "affiliates" and Amazon's filing with the Copyright Office identifying the subsidiary entities for which Amazon's copyright agent would accept complaints did not include A9. Moreover, it was clear on A9's website that A9 had its own Conditions of Use, which Dr. Zada either inexplicably failed to read or chose to ignore in 2004 and 2005, when he sent multiple notices concerning A9 to Amazon. In any event, Perfect 10 provides no basis to hold A9 responsible for what it alleges to be Amazon's unclear instructions.

Next, Perfect 10 blames Amazon for holding itself out as an authorized agent for A9, because Amazon's counsel, Ressmeyer, responded to the notices that Dr. Zada sent, apparently on behalf of both Amazon and A9. It also argues that A9 provided Amazon with actual or apparent authority to receive notices on its behalf by holding itself out as an Amazon.com company. Perfect 10 also emphasizes the April 8, 2005 letter that

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-4753 AHM (SHx) | Date | May 12, 2009 |
|---|---|---|---|
| Title | PERFECT 10, INC. v. AMAZON.COM, INC., *et al.* | | |

Ressmeyer sent to Dr. Zada that was copied to Jonathan Leblang. However, the fact that Leblang was copied on that letter is insufficient to support the conclusion that A9 permitted Amazon to act on its behalf. This is especially so in light of A9's publication of its own copyright agent information on its website and through the Copyright Office.

Perfect 10 makes two more arguments directed at Amazon. It contends that Amazon was the proper recipient because the infringing activity took place on its website (that is, through the A9 search box that was on the Amazon website). This argument is rather disingenuous. Perfect 10 sued A9 because the search results appeared on A9's website. Perfect 10 knew A9 had its own website and on that website A9 had conspicuously placed its own Conditions of Use. Dr. Zada's silence on whether he was aware of A9's Conditions of Use is telling. The fact that Dr. Zada first came upon A9 through a search box on Amazon's website does not make Amazon the proper recipient, because A9 had designated its own copyright agent and Dr. Zada obviously knew that A9 was a separate corporate entity.

Perfect 10 also contends that Amazon was obligated to notify A9 of the alleged infringements because it owns and hosts A9. A9 objects to the evidence that Perfect 10 provided in support of its assertion that Amazon hosts A9. The Court need not resolve this evidentiary matter, however. Perfect 10 cites no authority that would require one ISP, by virtue of its ownership or hosting of another ISP, to pass along a DMCA notice, where the two ISPs are distinct corporate entities and, more importantly, have each properly designated its own copyright agent. That Amazon's representations may have been misleading does not mean A9 failed to comply with the DMCA's requirements for designating a copyright agent or that Dr. Zada could ignore A9's designation. *See* 17 U.S.C. § 512(c)(3)(A) ("To be effective. . ., a notification of claimed infringement must be a written communication provided to the designated agent of a service provider. . . ") (emphasis added).

*Ellison v. Robertson*, 357 F.3d 1072, 1077 (9th Cir. 2004), does not support Perfect 10's argument that A9 should be held responsible for Amazon's representations or Amazon's failure to direct or forward its notices to A9. In *Ellison*, AOL inexplicably failed to update the e-mail address it had on file at the Copyright Office, and, when the plaintiff called AOL's customer service department, AOL's representatives did not transfer him to an employee with knowledge of AOL's copyright infringement policies.

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-4753 AHM (SHx) | Date | May 12, 2009 |
|---|---|---|---|
| Title | PERFECT 10, INC. v. AMAZON.COM, INC., *et al.* | | |

*Ellison v. Robertson*, 189 F.Supp.2d 1051, 1058 (C.D. Cal. 2002) (Cooper, J.), *rev'd on other grounds*, 357 F.3d 1072 (9th Cir. 2004) (affirming the district court's conclusion concerning AOL's knowledge, citing "evidence that AOL changed its e-mail address in an unreasonable manner and that AOL should have been on notice of infringing activity."). Although it was not clear whether the plaintiff conveyed specific information concerning the claimed infringements in the phone call with customer service, the court nevertheless concluded that AOL had enough notice to at least direct the plaintiff to the right place within its organization. *Ellison*, 189 F.Supp.2d at 1058. On that basis, the court found that the copyright owner had offered sufficient evidence of AOL's knowledge of infringement to survive summary judgment. *Id.* at 1058 ("If AOL could avoid the knowledge requirement through this oversight or deliberate action, then it would encourage other ISPs to remain willfully ignorant in order to avoid contributory copyright infringement liability.") In *Ellison*, therefore, it was AOL's failure to facilitate copyright owner's access to the responsible employee or department within AOL that led the court to determine that there was a genuine issue of AOL's knowledge of infringement. *Ellison* said nothing and had nothing to do with whether a subsidiary could be held responsible for the parent company's actions or inactions.

Perfect 10 does make one estoppel argument predicated on A9's conduct. It argues that A9 failed to satisfy the DMCA's requirements for the designation of a copyright agent to receive notifications of claimed infringement. The Court disagrees. A9 substantially complied with the requirements of § 512(c)(2).

Subsection 512(c)(2) requires the service provider to designate a copyright agent "by making available through its service, including on its website in a location accessible to the public, and by providing to the Copyright Office, substantially the following information: the name, address, phone number, and electronic mail address of the agent." If the service provider receives notification of claimed infringement, has "actual knowledge that the material or an activity using the material on [its] system or network is infringing," or is aware of facts or circumstances from which infringing activity is apparent, it is required to expeditiously remove or disable access to infringing material. 17 U.S.C. § 512(c)(1); *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1111 (9th Cir. 2007). To prevail at trial, the service provider has the burden of proving that it properly designated a copyright agent and that it responded to notifications as required.

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-4753 AHM (SHx) | Date | May 12, 2009 |
|---|---|---|---|
| Title | PERFECT 10, INC. v. AMAZON.COM, INC., *et al.* | | |

    Only substantial compliance with the enumerated requirements is required by subsection 512(c)(2), as is also the case with subsection (c)(3) (pertaining to the copyright owner's notification of claimed infringement). *See* H.R. REP. 105-551 (II) (1998), at 55-56. As examples of insubstantial departures from the requirements of these two provisions, the legislative history cites "misspelling a name, supplying an outdated area code if the phone number is accompanied by an accurate address, supplying an outdated name if accompanied by an e-mail address that remains valid for the successor of the prior designated agent or agent of a copyright owner." *See id.* at 56; S. REP. 105-190 (1998), at 47; 3 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 12B.04[4][a] (2008) (citing same). These inaccuracies are insubstantial, the legislative history goes on to explain, because they would not prevent a copyright owner from efficiently communicating with the designated agent and vice versa.

    Perfect 10 does not dispute that A9 had posted the requisite information on its website, in its "Conditions of Use," since it launched its website in 2004. It does argue that A9 did not substantially comply with the designation requirements because of inaccuracies in its listing with the Copyright Office: A9 provided not an email address for its copyright agent, but a URL for the online complaint form, <http://a9.com/-/feedback/A9?type=Copyright>. Moreover, Perfect 10 argues, the name of the agent, Jonathan Leblang, became outdated because Leblang left A9 in January 2007. *See* Zada Decl. ¶ 7, Ex. 5. The latter argument is irrelevant to whether the Copyright Office listing was accurate during the period before the start of this litigation when Perfect 10 purported to send notices to A9. In any event, these are precisely the sort of technical departures from the listed requirements that Congress believed were inconsequential. There is no genuine dispute that the Copyright Office designation was valid and accurate and enabled anyone who saw it to contact A9's designated agent, through mail, fax, telephone, or the online complaint form. Hence, A9's Copyright Office listing substantially complies with § 512(c)(2).

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-4753 AHM (SHx) | Date | May 12, 2009 |
|---|---|---|---|
| Title | PERFECT 10, INC. v. AMAZON.COM, INC., *et al.* | | |

## V. CONCLUSION

For the reasons stated above, A9 is entitled to a finding that it is entitled to a safe harbor under § 512(c) and the Court GRANTS A9's motion for summary judgment as to contributory copyright infringement based on § 512(c) of the DMCA. No hearing is necessary. Fed. R. Civ. P. 78; L. R. 7-15.[3]

|   | : |   |
|---|---|---|
| Initials of Preparer | | SMO |

---

[3] Ordinarily, the Court is reluctant to grant summary judgment without offering the parties an opportunity to appear at a hearing. This situation is different. Perfect 10 and its counsel have appeared often before the Court, and the Court is convinced that oral argument would not result in Perfect 10 being able to properly proffer arguments or supposed "facts" that the extensive briefs did not contain.